IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ROGER P. JACKSON, M.D., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 21-53 (RGA) |
| | ) | |
| NUVASIVE, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**ROGER P. JACKSON, M.D.'S OPENING BRIEF IN SUPPORT OF
MOTION TO DISMISS NUVASIVE'S INEQUITABLE CONDUCT COUNTERCLAIM
AND TO STRIKE EQUITABLE AFFIRMATIVE DEFENSES**

OF COUNSEL:

Thomas L. Gemmell
Luke T. Shannon
POLSINELLI PC
150 N. Riverside Plaza, Suite 3000
Chicago, IL 60606
Phone: (312) 819-1900
Fax: (312) 819-1910
tgemmell@polsinelli.com
lshannon@polsinelli.com

Darren E. Donnelly
POLSINELLI LLP
Three Embarcadero Center, Suite 2400
San Francisco, CA  94111
Phone: (650) 461-7700
Fax: (415) 248-2101
ddonnelly@polsinelli.com

Aaron M. Levine
POLSINELLI PC
1000 Louisiana St., 64th Floor
Houston, TX 77002
Phone: (713) 374-1600
Fax: (713) 374-1601
alevine@polsinelli.com

January 10, 2023

POLSINELLI PC
Stephen J. Kraftschik (#5623)
222 Delaware Avenue, Suite 1101
Wilmington, DE 19801
(302) 252-0920
skraftschik@polsinelli.com
*Attorneys for Plaintiff Roger P. Jackson, M.D.*

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................ 1

NATURE AND STAGE OF PROCEEDING .................................................................... 1

SUMMARY OF THE ARGUMENT .................................................................................. 2

STATEMENT OF THE FACTS ......................................................................................... 3

ARGUMENT ...................................................................................................................... 4

    I.    LEGAL STANDARDS ......................................................................................... 4

        A.    Motion to Dismiss Under Rule 12(b)(6) .................................................. 4

            1.    Inequitable conduct counterclaims must satisfy the heightened pleading standard........................................................... 5

            2.    The heightened pleading standard for inequitable conduct requires allegation of facts from which the Court may reasonably infer that the purported omission was "but-for material" to patentability............................................................. 5

            3.    The heightened pleading standard for inequitable conduct requires allegation of facts from which the Court may reasonably infer that a specific individual knowingly withheld material information with specific intent to deceive the PTO................................................................................. 6

        B.    Motion to Strike an Affirmative Defense Under Rule 12(f) ...................... 7

    II.    NUVASIVE'S ALLEGATIONS LACK THE FACTUAL DETAIL REQUIRED FOR PLEADING INEQUITABLE CONDUCT.............................. 8

        A.    NuVasive's Purcell '923 Patent Theory Fails to Sufficiently Plead that the Asserted Patents are Unenforceable Due to Inequitable Conduct ..................................................................................................... 9

            1.    NuVasive fails to adequately plead materiality of the '923 patent......................................................................................... 9

            2.    NuVasive fails to adequately pled knowledge of the withheld information................................................................. 11

            3.    NuVasive fails to adequately plead specific intent to deceive. ..................................................................................... 12

i

4.      NuVasive's "burying" allegation is insufficient as a matter of law. ........................................................................... 13

B.      The '869 Patent Theory Fails to Sufficiently Plead that the Asserted Patents are Unenforceable Due to Inequitable Conduct ........... 14

1.      NuVasive does not allege facts plausibly demonstrating that the '869 patent or '864 provisional are prior art. ................... 15

2.      NuVasive fails to adequately plead but-for materiality. .............. 16

3.      NuVasive fails to adequately plead specific intent to deceive. ....................................................................... 17

III.    INFECTIOUS UNENFORCEABILITY IS NOT APPLICABLE ...................... 18

IV.     THE FOURTH, FIFTH, AND SIXTH AFFIRMATIVE DEFENSES SHOULD BE STRICKEN.................................................................. 19

V.      CONCLUSION ................................................................ 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Agfa Corp. v. Creo Prods., Inc.*,
   451 F.3d 1366 (Fed. Cir. 2006)........................................................................19

*Allergan USA, Inc. v. Prollenium US Inc.*,
   2019 WL 7298569 (D. Del. Dec. 30, 2019) *report and recommendation*
   *adopted*, 2020 WL 409684 (D. Del. Jan. 24, 2020)............................................7, 15

*Analog Devices, Inc. v. Xilinx, Inc.*,
   2021 WL 466859 (D. Del. Feb. 9, 2021) ................................................................6

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)........................................................................................5

*Avitia v. Metro Club of Chicago, Inc.*,
   49 F.3d 1219 (7th Cir. 1995) ...........................................................................21

*Bayer Cropscience AG v. Dow Agrosciences LLC*,
   2012 WL 1253047 (D. Del. Apr. 12, 2012)..........................................................18

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)........................................................................................5

*Bench Walk Lighting LLC v. Everlight Elecs. Co.*,
   2020 WL 5128086 (D. Del. Aug. 31, 2020) ............................................2, 3, 8, 20

*In re City of Philadelphia Litigation*,
   158 F.3d 711 (3d Cir. 1998)............................................................................21

*Correct Craft IP Holdings, LLC v. Malibu Boats, LLC*,
   2010 WL 598693 (M.D. Fla. Feb. 17, 2010) ........................................................8

*eSpeed, Inc. v. Brokertec USA, L.L.C.*,
   417 F. Supp. 2d 580 (D. Del. 2006), *aff'd*, 480 F.3d 1129 (Fed. Cir. 2007) ...........19

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
   575 F.3d 1312 (Fed. Cir. 2009)........................2, 5, 6, 7, 9, 11, 12, 13, 14, 17, 18

*Fiskars, Inc. v. Hunt Mfg. Co.*,
   221 F.3d 1318 (Fed. Cir. 2000)........................................................................15

*Flypsi, Inc. v. Dialpad, Inc.*,
   2022 WL 3593132 (W.D. Tex. Aug. 22, 2022)......................................................9

*Front Row Techs., LLC v. NBA Media Ventures, LLC*,
    163 F. Supp. 3d 938 (D.N.M. 2016) ...................................................................17

*Fulfillium, Inc. v. ReShape Med*,
    2018 LEXIS 228281 (C.D. Cal. May 23, 2018) .................................................7

*Int'l Bus. Machines Corp. v. Priceline Grp. Inc.*,
    2017 WL 1349175 (D. Del. Apr. 10, 2017)...................................................9, 19

*Milwaukee Elec. Tool Corp. v. Hitachi Koki Co., Ltd.*,
    2012 WL 1952977 (E.D. Wisc. May 29, 2012).............................................11, 12

*Nalco Co. v. Turner Designs, Inc.*,
    2014 U.S. Dist. LEXIS 21362 (N.D. Cal. Feb. 19, 2014) ....................................7

*Nilssen v. Osram Sylvania, Inc.*,
    440 F. Supp. 2d 884 (N.D. Ill. 2006) .................................................................20

*Optium Corp. v. Emcore Corp.*,
    603 F.3d 1313 (Fed. Cir. 2010)......................................................................7, 18

*Power Integrations, Inc. v. Fairchild Semiconductor Intern., Inc.*,
    2009 WL 4928024 (D. Del. Dec. 18, 2009).......................................................20

*Radiancy, Inc. v. Viatek Consumer Prods. Grp. Inc.*,
    138 F. Supp. 3d 303 (S.D.N.Y. 2014) ...............................................................15

*Robocast, Inc. v. Apple Inc.*,
    39 F. Supp. 3d 552 (D. Del. 2014).....................................................................19

*SK Innovation, Co. v. LG Chem, Ltd.*,
    C.A. No. 19-1637, slip op. (D. Del. July 24, 2020) ............................................21

*St. Jude Med., Cardiology Div., Inc. v. Volcano Corp.*,
    2014 WL 2622240 (D. Del. June 11, 2014).............................................8, 12, 18

*Sun Microsystems, Inc. v. Versata Enters., Inc.*,
    630 F. Supp. 2d 395 (D. Del. 2009)...............................................................8, 21

*Symbol Techs., Inc. v. Aruba Networks, Inc.*,
    609 F. Supp. 2d 353 (D. Del. 2009)...................................................................15

*SynQor, Inc. v. Artesyn Techs., Inc.*,
    2010 WL 3860131, at *9 (E.D. Tex. Sept. 10, 2010) ..........................................8

*Techshell, Inc. v. Max Interactive, Inc.*,
    2019 WL 4422682 (C.D. Cal. Aug. 5, 2019)........................................................8

*Therasense, Inc. v. Becton, Dickinson & Co.*,
  649 F.3d 1276 (Fed. Cir. 2011)............................................................2, 5, 6, 10, 16

*Truth Hardware Corp. v. Ashland Prods., Inc.*,
  2003 WL 22005839 (D. Del. Aug. 19, 2003) ..........................................................19

*Twinstrand Biosciences, Inc. v. Guardant Health, Inc.*,
  No. 21-1126-GBW-SRF (D. Del. Oct. 28, 2022) ....................................................10

*Wyeth Holdings Corp. v. Sandoz, Inc.*,
  2012 WL 600715 (D. Del. Feb. 3, 2012) ..................................................................8

**Statutes**

35 U.S.C. § 271(f)........................................................................................................2

**Other Authorities**

37 C.F.R. § 1.56 .....................................................................................................10, 17

## INTRODUCTION

In its Answer and Counterclaims to Plaintiff/Counterclaim-Defendant Roger P. Jackson, M.D.'s ("Dr. Jackson") Second Amended Complaint (DI 77) Defendant/Counterclaim-Plaintiff NuVasive, Inc. ("NuVasive") asserts a conclusory and bare-bones counterclaim of inequitable conduct (Fifth Counterclaim) that fails to identify with particularity, as legally required, the "what, when, where, how, or why" of the alleged inequitable conduct, and further fails to allege facts from which the Court may reasonably infer any specific intent to deceive the USPTO. DI 89 at Fifth Counterclaim, ¶¶ 111–115; *see also* ¶¶ 56–74.

Similarly, NuVasive's equitable affirmative defenses of waiver, estoppel, and unclean hands (Fourth, Fifth, and Sixth Affirmative Defenses) fail to meet the pleading requirements of Rule 9(b), as NuVasive does not support these defenses with any facts. DI 89 ¶¶ 201–03.

Because its allegations are deficiently pled, NuVasive's Fifth Counterclaim should be dismissed and its Fourth, Fifth, and Sixth equitable affirmative defenses should be stricken.

## NATURE AND STAGE OF PROCEEDING

Dr. Jackson filed this patent infringement lawsuit on January 19, 2021 (DI 1) and filed a First Amended Complaint (DI 9) on July 21, 2021. NuVasive moved to dismiss the Amended Complaint (DI 21), which the Court denied on February 11, 2022. (DI 37). NuVasive answered the First Amended Complaint (raising numerous defenses) and counterclaimed on March 11, 2022 (DI 41). Neither its defenses nor counterclaims alleged any inequitable conduct occurred. Dr. Jackson filed an Answer to NuVasive's counterclaims on April 1, 2022 (DI 43). On October 21, 2022, Dr. Jackson filed a Second Amended Complaint, which removed one previously-asserted patent and added allegations of liability via 35 U.S.C. § 271(f) for previously-asserted patents. (DI 77). NuVasive filed an Answer and Counterclaims to the Second Amended Complaint on December 5, 2022, raising for the first time the inequitable conduct counterclaim. (DI 89).

## SUMMARY OF THE ARGUMENT

NuVasive's counterclaim of inequitable conduct and its equitable affirmative defenses of waiver, estoppel, and unclean hands do not meet the strict pleading standards of Rule 9(b) that require detailed factual averments and not merely notice pleading. *See, e.g.*, *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1290–91 (Fed. Cir. 2011) (inequitable conduct claims must meet Rule 9(b) pleading requirements); *Bench Walk Lighting LLC v. Everlight Elecs. Co.*, 2020 WL 5128086, at *1 (D. Del. Aug. 31, 2020) (equitable affirmative defenses of waiver, estoppel, and unclean hands must meet Rule 9(b) pleading standard).

NuVasive's inequitable conduct allegations are solely based on supposed failure to disclose two "prior art" references to the Patent Office. Its allegations for the first of those references (the "Purcell '923 patent") are deficient because they lack facts to support a reasonable inference that the Purcell '923 patent was "but-for" material to patentability of the '866 and '292 patents-in-suit. NuVasive alleges neither (1) any specific claim in either patent that would be deemed unpatentable in light of the Purcell '923 patent nor (2) what allegedly-material information from the Purcell '923 patent was not cumulative with other information of record in the prosecution of the '866 and '292 patents. NuVasive also avers intent to deceive solely "on information and belief," without pleading facts establishing that "information" or any plausible reasons for the resulting "belief." Because pleading inequitable conduct requires far greater particularity than NuVasive alleges, its inequitable conduct counterclaim is fatally deficient. *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1328–29 (Fed. Cir. 2009) (identification of the "what, when, where, how, and why" of the alleged inequitable conduct required with requisite particularity).

NuVasive's allegations for the second of those references (the "'869 patent/application") are also deficient. NuVasive contends Dr. Jackson failed to disclose the '869 patent/application during prosecution of the '866, '292, '200, '444, and '856 patents-in-suit. But NuVasive does not

plead facts from which one could plausibly conclude the '869 patent/application is prior art to any of those patents and, without that, it cannot be material prior art and there was no duty to disclose it. NuVasive also fails to plead with any level of particularly how this information was but-for material to the patentability of specific claims in the '866, '292, '200,'444, and '856 patents, regarding which it was allegedly withheld. Further, its lone conclusory allegation of intent to deceive in ¶ 74 of its counterclaim falls far short of the particularity required. Accordingly, NuVasive's inequitable conduct counterclaim must be dismissed.

NuVasive, similarly, does not plead facts with the particularly required to support its equitable waiver, estoppel, and unclean hands defenses. *Bench Walk Lighting*, 2020 WL 5128086, at *1 (striking equitable defenses). If NuVasive were to argue those defenses arise from its allegations related to an assignment theory, this Court has already rejected that theory. DI 36. Therefore, the Court should strike NuVasive's Fourth, Fifth, and Sixth affirmative defenses.

## STATEMENT OF THE FACTS

Dr. Jackson alleges that several NuVasive products infringe U.S. Patent Nos. 8,353,932 (the "'932 patent"); 8,696,711 (the "'711 patent"); 9,788,866 (the "'866 patent"); 10,335,200 (the "'200 patent"); 10,561,444 (the "'444 patent"); 10,722,273 (the "'273 patent"); 9,808,292 (the "'292 patent"); and 11,051,856 (the "'856 patent") (the "Asserted Patents"). The Asserted Patents relate to distinct and separate inventions. While some of the Asserted Patents share certain priority claims, the Asserted Patents are not part of a single patent family, collectively. The '866 patent claims priority to a May 27, 2005 application, the '292 patent to a June 18, 2003 application, the '200 and '444 patents both claim priority to a September 17, 2007 application, and the '856 patent claims priority to an October 30, 2007 application.

In its Answer and Counterclaims to Dr. Jackson's Second Amended Complaint NuVasive raises for the first time a counterclaim of inequitable conduct. The counterclaim is solely based on

alleged "failure to disclose references material to patentability." DI 89 ¶¶ 56–74, 111-115. First, NuVasive alleges "Dr. Jackson and his patent prosecution counsel were aware of, but failed to disclose to the USPTO, U.S. Patent No. 7,377,923" (the "Purcell '923 patent theory"). *Id.* ¶ 57. Second, NuVasive alleges that Dr. Jackson and his attorneys failed to disclose U.S. Patent No. 8,876,869 and U.S. Patent Application No. 61/218,864 (the "'864 application") during prosecution of the '866, '292, '200, '444, and '856 patents (the "'869 patent theory"). *Id.* ¶ 68. The '869 patent claims priority to two continuation applications, one of which is the '864 application, which NuVasive alleges was filed on June 19, 2009. *Id.*

The Purcell '923 patent theory is limited to those applications that matured into the '866 and '292 patents. DI 89 ¶¶ 57–66, 112–113. The '869 patent theory is limited to those applications that matured into the '866, '292, '200, '444, and '856 patents. DI 89 ¶¶ 68–73, 112–113. Thus, even if successful, NuVasive's theory of inequitable conduct could not reach the '932, '711, or '273 patents. Moreover, NuVasive alleges that Dr. Jackson *did* disclose the '923 patent during the prosecution of the '932 patent-in-suit. *Id.* ¶ 59. Despite this, and while limiting its inequitable conduct counterclaim to these patents without alleging any immediate and necessary relationship between any of the patents, NuVasive avers that *all* eight Asserted Patents are unenforceable.

## ARGUMENT

## I.   LEGAL STANDARDS

### A.   Motion to Dismiss Under Rule 12(b)(6)

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a pleading must contain sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The facts pled must present more than "the mere possibility of misconduct," and courts need not accept legal conclusions couched as factual allegations. *See Iqbal*, 556 U.S. at 678–79; *Twombly*,

550 U.S. at 555. A pleading alleging fraud or mistake must "state with particularity the circumstances constituting fraud or mistake" and pleading the bare elements of a claim is insufficient to survive a motion to dismiss. *See* Fed. R. Civ. P. 9(b); *Iqbal*, 556 U.S. at 678–79.

### 1.   Inequitable conduct counterclaims must satisfy the heightened pleading standard.

The Federal Circuit has characterized inequitable conduct as the "atomic bomb" of patent law, and observed that it has "plagued not only the courts but also the entire system[,] [b]ecause allegations of inequitable conduct are routinely brought on the slenderest grounds." *Therasense,* 649 F.3d at 1288–89. The Federal Circuit thus requires parties asserting inequitable conduct to meet Rule 9(b)'s heightened pleading standard. *See id.* at 1288; *Exergen*, 575 F.3d at 1327.  The proponent must allege facts from which a court may reasonably infer that a specific individual had (a) "knowledge of the withheld material information or of the falsity of the material misrepresentation; and (b) specific intent to deceive the PTO." *Exergen*, 575 F.3d at 1327. This requires allegation of sufficient facts to "identify the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." *Id.* at 1328. To survive a motion to dismiss, the pleading must include facts that (1) identify a person associated with filing or prosecuting the patent that knew of the material information and deliberately withheld or misrepresented it; (2) explain what claims, and what limitations in those claims, the withheld references are relevant to, and where in those references the material information is found; and (3) explain why the withheld information is material and how an examiner would have used this information in assessing the patentability of the claims. *Id.* at 1329–30.

### 2.   The heightened pleading standard for inequitable conduct requires allegation of facts from which the Court may reasonably infer that the purported omission was "but-for material" to patentability.

Inequitable conduct requires "but-for materiality," which means the omission of

information was so important that the PTO "would not have allowed a claim had it been aware." *Therasense*, 649 F.3d at 1291. As such, a party asserting inequitable conduct must allege facts creating a reasonable inference that the PTO would not have allowed a claim if the information had not been withheld. *Id.* "A reasonable inference is one that is plausible and that flows logically from the facts alleged, including any objective indications of candor and good faith." *Exergen*, 575 F.3d at 1329 n.5. District courts have consistently dismissed inequitable conduct claims that fail to plead sufficient facts to create a reasonable inference regarding the "but-for materiality" of a purported omission. *See, e.g.*, *Analog Devices, Inc. v. Xilinx, Inc.*, 2021 WL 466859, at *3 (D. Del. Feb. 9, 2021) (conclusory allegation of 'but for' materiality insufficient to satisfy pleading standard for inequitable conduct defense); *Fulfillium, Inc. v. ReShape Med.*, Inc., No. 2:17-cv-08419-RGK-PLA, 2018 U.S. Dist. LEXIS 228281, at *14 (C.D. Cal. May 23, 2018) (granting motion to dismiss inequitable conduct claim where party failed to plead sufficient facts to establish a "but-for material" omission or misrepresentation); *Nalco Co. v. Turner Designs, Inc.*, 2014 U.S. Dist. LEXIS 21362, at *25 (N.D. Cal. Feb. 19, 2014) (granting dismissal for lack of "but-for materiality" where facts pled did not create a reasonable inference that a purportedly withheld reference was not cumulative of information already disclosed to the USPTO).

> **3.** **The heightened pleading standard for inequitable conduct requires allegation of facts from which the Court may reasonably infer that a specific individual knowingly withheld material information with specific intent to deceive the PTO.**

Inequitable conduct also requires alleging facts that create a reasonable inference that a specific individual knew that a misrepresentation or omission was material and acted with intent to deceive the PTO. *See Exergen*, 575 F.3d at 1328–29. Crucially, "[i]ntent to deceive cannot be inferred solely from the fact that information was not disclosed." *See Optium Corp. v. Emcore Corp.*, 603 F.3d 1313, 1321 (Fed. Cir. 2010) (citation omitted).

Failure to allege sufficient facts regarding the "who, what, when, where, and how" of the purported omission for a Court to reasonably infer knowledge and intent to deceive *is fatal* to an inequitable conduct counterclaim or affirmative defense. *Exergen*, 575 F.3d at 1328–30. District courts have consistently dismissed inequitable conduct claims that fail to plead sufficient facts regarding knowledge and intent to deceive. *See, e.g.*, *Allergan USA, Inc. v. Prollenium US Inc.*, 2019 WL 7298569, at *8 (D. Del. Dec. 30, 2019) *report and recommendation adopted*, 2020 WL 409684 (D. Del. Jan. 24, 2020) (recommending dismissal of inequitable conduct claim where allegations failed to support a reasonable inference of specific intent to deceive the PTO); *St. Jude Med., Cardiology Div., Inc. v. Volcano Corp.*, 2014 WL 2622240, at *2 (D. Del. June 11, 2014) (dismissing inequitable conduct claim for failure to plead sufficient facts to create a reasonable inference of knowledge or intent to deceive); *Techshell, Inc. v. Max Interactive, Inc.*, 2019 WL 4422682, at *3–*4 (C.D. Cal. Aug. 5, 2019) (dismissing inequitable conduct counterclaim and affirmative defense for failure to plead sufficient facts to create a reasonable inference of intent); *SynQor, Inc. v. Artesyn Techs., Inc.*, 2010 WL 3860131, at *9 (E.D. Tex. Sept. 10, 2010) (dismissing inequitable conduct counterclaims where the facts pled showed only that a prior art reference was cited by the inventor during an earlier patent prosecution, but not disclosed some years later during prosecution of the patents-in-suit); *Correct Craft IP Holdings, LLC v. Malibu Boats, LLC*, 2010 WL 598693, at *4 (M.D. Fla. Feb. 17, 2010) (dismissing where only facts alleged from which to infer intent to deceive were that a prior art reference was disclosed in another patent application).

### B. Motion to Strike an Affirmative Defense Under Rule 12(f)

Courts may "strike from a pleading any insufficient defense" under Rule 12(f). *Wyeth Holdings Corp. v. Sandoz, Inc.*, 2012 WL 600715, at *4 (D. Del. Feb. 3, 2012). Courts need not "accept affirmative defenses that are mere 'bare bones conclusory allegations.'" *Sun*

*Microsystems, Inc. v. Versata Enters., Inc.*, 630 F. Supp. 2d 395, 402 (D. Del. 2009). "[E]quitable affirmative defenses of waiver, estoppel, and unclean hands must be plead with particularity under Rule 9(b)." *Bench Walk Lighting*, 2020 WL 5128086, at *1 (citing *Sonos, Inc. v. D&M Holdings Inc.*, 2016 WL 4249493, at *4–5 (D. Del. Aug. 10, 2016)).

## II.   NUVASIVE'S ALLEGATIONS LACK THE FACTUAL DETAIL REQUIRED FOR PLEADING INEQUITABLE CONDUCT

Each NuVasive theory fails to allege facts from which a reasonable inference could be drawn that specific individuals intentionally withheld "but for" material prior art. Neither theory is sufficiently plead, and each independently fails to meet the heightened pleading standard. *See Int'l Bus. Machines Corp. v. Priceline Grp. Inc.*, 2017 WL 1349175, at *6 (D. Del. Apr. 10, 2017) (explaining that a court must "address each of Defendants' disparate inequitable conduct 'theories' separately, despite the fact that they are all lumped together").[1]

As stated above, "to plead the 'circumstances' of inequitable conduct with the requisite 'particularity' under Rule 9(b), the pleading must identify the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." *Exergen*, 575 F.3d at 1328. "Most pleadings successfully allege 'who' was responsible for misleading the USPTO and 'when' the alleged acts occurred;" the other "requirements pose the greater challenge." *Flypsi, Inc. v. Dialpad, Inc.*, 2022 WL 3593132, at *6 (W.D. Tex. Aug. 22, 2022) (quoting *Front Row Techs., LLC v. NBA Media Ventures, LLC*, 163 F. Supp. 3d 938, 981 (D.N.M. 2016)). The same can be said in this case. Both theories fail to identify to which claims, and to which limitations in those claims, the withheld references are relevant, or where in those references the material information is found. They also fail to identify the particular claim limitations, or

---

[1] Finding only one of the theories sufficiently pled is insufficient to allow the other to move forward. *See Int'l Bus. Machines Corp.*, 2017 WL 1349175, at *6.

combination of claim limitations, that are supposedly absent from the information of record to explain both 'why' the withheld information is material and not cumulative, and 'how' an examiner would have used this information in assessing the patentability of the claims. Each theory also fails to meet the intent pleading requirement to state a claim for inequitable conduct. The inequitable conduct counterclaim should be dismissed for each of these independent reasons.

### A.    NuVasive's Purcell '923 Patent Theory Fails to Sufficiently Plead that the Asserted Patents are Unenforceable Due to Inequitable Conduct

The Purcell '923 patent theory of inequitable conduct, that Dr. Jackson failed to disclose the '923 patent during prosecution of the '866 and '292 patents, fails to plausibly allege that the '923 patent was "but-for" material to patentability of the '866 or '292 patents. NuVasive also fails to allege facts that would support a conclusion that anyone involved in prosecuting the '866 or '292 patents intentionally withheld a known material reference from the PTO.

### 1.    NuVasive fails to adequately plead materiality of the '923 patent.

Prior art is only "but-for" material "if the PTO would not have allowed a claim had it been aware of the undisclosed prior art" and "[h]ence, in assessing the materiality of a withheld reference, the court must determine whether the PTO would have allowed the claim if it had been aware of the undisclosed reference." *Therasense*, 649 F.3d at 1291.

As an initial matter, NuVasive's "materiality allegations are not directed towards but-for materiality, as required, but instead rely on the materiality standard referenced in 37 C.F.R. § 1.56," which is not coextensive with the standard of "but-for" materiality employed by the courts. *See* DI 89 ¶ 111; *Therasense*, 649 F. 3d at 1294–95 ("This court declines to adopt the current version of Rule 56 in defining inequitable conduct"); *Twinstrand Biosciences, Inc. v. Guardant Health, Inc.*, No. 21-1126-GBW-SRF (D. Del. Oct. 28, 2022) (Exhibit A) (finding allegations insufficient to establish *per se* materiality of alleged omissions under inequitable conduct standard) (citing *Flypsi*,

2022 WL 3593132, at *7). NuVasive's pleading does not meet the "but-for" materiality threshold because it does not sufficiently identify "which claims, and which limitations in those claims, the withheld references are relevant to, and where in those references the material information is found — *i.e.*, the 'what' and 'where' of the material omissions." *Exergen*, 575 F.3d at 1329. Further, NuVasive does not allege that the PTO examiner would have rejected the applications that resulted in the '866 or '292 patents had the examiner been aware of the '923 patent.

The only allegations regarding the purported materiality of the '923 patent NuVasive makes relate to the "specification and figures of the '923 patent," which, according to NuVasive, "concern '[a] spinal screw assembly providing an adjustable securement of a fixation rod across at least two vertebrae.'" DI 89 ¶ 58. (quoting '923 patent, Abstract). NuVasive asserts that this establishes "a *prima facie* case of the unpatentability of the Asserted Patents and are inconsistent with positions taken by Dr. Jackson during the prosecution of the Asserted Patents." *Id.* ¶ 64; *see also* ¶ 66 ("The '923 patent [] includes disclosures that are highly material to the patentability of the Asserted Patents."). These allegations, however, fail to specify any of the required details. The allegations generally refer to the Asserted Patents — of which there are eight — without identifying a single claim, or limitation in those claims, to which the withheld reference is purportedly relevant. Moreover, they fail to specify where in the '923 patent the supposedly material information is found beyond a general and uninformative reference to the "specification and figures." NuVasive fails to specify how the unidentified aspects of the '923 patent are inconsistent with unidentified positions Dr. Jackson took during prosecution of the unspecified Asserted Patents. By not citing specific claims in specific patents "that would be deemed unpatentable in light of undisclosed information," NuVasive failed to sufficiently allege materiality to enable the Court "to determine whether undisclosed information is material and non-

cumulative." *Milwaukee Elec. Tool Corp. v. Hitachi Koki Co., Ltd.*, 2012 WL 1952977, at *8 (E.D. Wisc. May 29, 2012).

Even if a particular prior art reference might be material in isolation, a reference that is cumulative with others before the Patent Office is not, and consequently is not capable of resulting in inequitable conduct. Pleading inequitable conduct requires showing "that the omitted information is not cumulative of the information already on the record by identifying the particular claim limitations that are absent from the record." *St. Jude Medical*, 2014 WL 2622240, at *1 (citing *Exergen*, 575 F.3d at 1329–30). NuVasive asserts that the '923 patent was 'material', but it fails to allege facts plausibly establishing the '923 patent was not cumulative of the information already on the record for the examiner for particular limitation(s). DI 89 ¶¶ 59, 60, 66, 111–113. "Such allegations are necessary to explain both 'why' the withheld information is material and not cumulative, and 'how' an examiner would have used this information in assessing the patentability of the claims." *Exergen*, 575 F.3d at 1329–30 (citing *Larson Mfg. Co. v. Aluminart Prods. Ltd.*, 559 F.3d 1317, 1333 (Fed. Cir. 2009) (finding information cumulative to art of record that taught the "same combination" of claim limitations taught in withheld reference)); *see also Milwaukee*, 2012 WL 1952977, at *8 (finding "defendants fail[ed] to meet the 'how' and 'why' requirements of the *Exergen* test"). These factual deficiencies are fatal under Rule 9(b).

## 2. NuVasive fails to adequately pled knowledge of the withheld information.

Further, while NuVasive generally alleges that "Dr. Jackson and his patent prosecution counsel . . . were aware of" the '923 patent since at least August 18, 2008 when Dr. Jackson, in prosecuting the '932 patent, submitted an Information Disclosure Statement to the PTO that listed the '923 patent's corresponding publication — U.S. Patent Publication No. 2004/0236330 (DI 89 ¶¶ 57, 59), NuVasive does not provide any factual basis to infer that Dr. Jackson "knew of the

specific information in the ['923 patent] that is alleged to be material to the claims of the [Asserted Patents]." *Exergen*, 575 F.3d at 1330. In *Exergen*, the pleading stated that the patentee was aware of the allegedly withheld references. The Federal Circuit held that was insufficient, reasoning a "reference may be many pages long, and its various teachings may be relevant to different applications for different reasons. Thus, one cannot assume that an individual, who generally knew that a reference existed, also knew of the specific material *information* contained in that reference." *Id.* (citing *FMC Corp. v. Manitowoc Co., Inc.*, 835 F.2d 1411, 1415 (Fed. Cir. 1987) (requiring actual knowledge of the existence of the *information* alleged to be material). The same is true here.

NuVasive alleges, "[o]n information and belief," that Dr. Jackson entered an agreement with Alphatec, the original assignee of the '923 patent, to acquire from Alphatec the exclusive right to grant licenses under the '923 patent and to prosecute continuation and continuation-in-part applications that claim priority from the application that led to the '923 patent. DI 89 ¶ 60–63. NuVasive alleges the Alphatec agreement is thus somehow "evidence that Dr. Jackson recognized and appreciated the materiality of the '923 patent." *Id.* ¶ 60. The allegations are insufficient to reasonably infer any such knowledge. As NuVasive would have it, by virtue of licensing a patent, one apparently *ipso facto* is charged with knowing it is material to any other invention in the same general field such that one commits inequitable conduct if the licensed patent is not disclosed. *Id.* ¶ 59. This type of overreach is why the Federal Circuit requires pleading facts that reasonably support the conclusion the applicant was aware a particular disclosure was material to the patentability of specific claim features — *i.e.*, what is missing in NuVasive's pleading.

### 3.   NuVasive fails to adequately plead specific intent to deceive.

NuVasive also alleges deceptive intent solely on "information and belief." DI 89 ¶¶ 56, 60, 62, 63. "Pleading on 'information and belief' is permitted under Rule 9(b) when essential information lies uniquely within another party's control, but only if the pleading sets forth the

specific facts upon which the belief is reasonably based." *Exergen*, 575 F.3d at 1330. Here, NuVasive's pleading provides neither the 'information' on which it relies nor any plausible reasons for its 'belief.' *Id.* at 1330–31. The circumstances that NuVasive has alleged, even if true, do not plausibly suggest any "deliberate decision to withhold a known material reference," a necessary predicate for relying on "information and belief" and inferring deceptive intent. *Id.* (quoting *Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1181 (Fed. Cir. 1995) (stating that the evidence "must show that the applicant made a deliberate decision to withhold a known material reference")).

NuVasive's purported basis for inferring deceptive intent is that Dr. Jackson cited the '923 patent when prosecuting the '932 patent but did not cite it when prosecuting the '866 and '292 patents. DI 89 ¶¶ 65, 67. *Exergen* forecloses that basis, however. "The mere fact that an applicant disclosed a reference during prosecution of one application, but did not disclose it during prosecution of a related application, is insufficient to meet the threshold level of deceptive intent required to support an allegation of inequitable conduct." 575 F.3d at 1331. NuVasive's "pleading does not contain specific factual allegations to show that the individual who had previously cited the ['923] patent knew of the specific information that is alleged to be material to the ['866 or '292 patents] and then decided to deliberately withhold it from the relevant examiner." *Id.* In the absence of such allegations, the Court should not "draw any permissive inference of deceptive intent with regard to the ['923] patent, lest inequitable conduct devolve into 'a magic incantation to be asserted against every patentee' and its 'allegation established upon a mere showing that art or information having some degree of materiality was not disclosed.'" *Id.* (quoting *FMC*, 835 F.2d at 1415).

### 4.    NuVasive's "burying" allegation is insufficient as a matter of law.

Recognizing that, in fact, "Dr. Jackson or his counsel did disclose the '923 patent" in the prosecution files of several Asserted Patents, NuVasive avers, nonetheless, that those disclosures were insufficient because they were "effectively buried under reams of less relevant art." DI 89 ¶

66. But such allegations are inadequate as a matter of law to support NuVasive's claim because "[a]n applicant cannot be guilty of inequitable conduct if the reference was cited to the examiner." *Symbol Techs., Inc. v. Aruba Networks, Inc.*, 609 F. Supp. 2d 353, 358 (D. Del. 2009) (citing *Fiskars, Inc. v. Hunt Mfg. Co.*, 221 F.3d 1318, 1327 (Fed. Cir. 2000)); *see also Radiancy, Inc. v. Viatek Consumer Prods. Grp. Inc.*, 138 F. Supp. 3d 303, 317–18 (S.D.N.Y. 2014) ("[C]ourts have generally rejected the claim that a reference, if submitted to the PTO Examiner, can be buried for the purposes of establishing inequitable conduct."). In *Symbol Techs.*, this Court granted the patentee's motion to strike the accused infringer's inequitable conduct defense based on the alleged "burying" of a reference, ruling that as a matter of law "burying" cannot support a defense of inequitable conduct. 609 F. Supp. 2d at 358. *See also Allergan USA*, 2019 WL 7298569, at *8 (concluding that the disclosure of a prior art refence in an IDS indicated a lack of specific intent to deceive the USPTO). Accordingly, NuVasive's theory of inequitable conduct based on a purported "burying" of the '923 patent should be rejected as a matter of law.

**B.    The '869 Patent Theory Fails to Sufficiently Plead that the Asserted Patents are Unenforceable Due to Inequitable Conduct**

NuVasive alleges Dr. Jackson failed to disclose the '869 patent/application during prosecution of the '866, '292, '200, '444, and '856 patents, but it fails to allege facts that could plausibly establish that the '869 patent is prior art to any of those patents. DI 89 ¶ 73. If a reference is not prior art, of course, it generally cannot establish unpatentability or be information material to the patentability of a claim. The '869 patent theory thus fails for not adequately pleading that "but for" material information was withheld from the Patent Office. Further, like the Purcell '923 patent theory, the '869 patent theory fails to plead the "what, where, how, and why" of the alleged material omission. NuVasive also fails to allege facts that would support a conclusion that anyone involved in prosecuting the '866, '292, '200, '444, and '856 patents knew of any purported

materiality, and intentionally withheld a known material reference from the PTO.

> **1.    NuVasive does not allege facts plausibly demonstrating that the '869 patent or '864 provisional are prior art.**

NuVasive alleges the '869 patent claims priority to two prior applications, the earliest of which is the '864 provisional, "filed on June 19, 2009." DI 89 ¶ 68. NuVasive alleges Dr. Jackson failed to disclose the '869 patent during prosecution of the '866, '292, '200, '444, and '856 patents, but fails to allege facts that plausibly establish that the '869 patent is prior art to those patents. DI 89 ¶ 73. The '200 patent claims priority to an application filed in 2007. DI 79-3 (Ex. 4). The '444 patent is a continuation of the '200 patent, claiming the same priority. *Id.* (Ex. 5). The '856 patent claims priority to a different application also filed in 2007. DI 79-7 (Ex. 27). The '866 patent claims priority to an application filed in 2005. DI 79-3 (Ex. 3). The '292 patent claims priority to an application filed in 2003. *Id.* (Ex. 7). While the priority chains of most of these patents include continuation-in-part applications such that the effective filing date of each claim may not be the earliest date for which the benefit of priority is claimed, NuVasive makes no attempt to analyze priority.[2] Dr. Jackson did not have a duty to disclose the '869 patent or the '864 application if they are not prior art. *See Therasense*, 649 F.3d at 1291 (applicant need only disclose known, material, and non-cumulative prior art). NuVasive pleads no facts from which one could plausibly conclude that *any* of the '866, '292, '200, '444, and '856 patents are only entitled to priority dates that are

---

[2] It is noteworthy that NuVasive's Preliminary Invalidity Contentions, filed in the *SeaSpine* case as Exhibit B to docket no. 83-1, list priority dates for the '866, '292, '200, '444, and '856 patents that pre-date the priority dates of the '869 patent and the '864 application but does not contend they are invalidating. Exhibit B. While the Court need not rely on NuVasive's Invalidity Contentions to conclude that NuVasive failed to plead facts that could plausibly show that the '869 patent or '864 application are prior art to the patents at issue, the Contentions tellingly highlight NuVasive's failure to plead prior art status of the '869 patent or the '864 application. The Court may take judicial notice of the content of pleadings in other cases. *Genentech, Inc. v. U.S. Intern. Trade Com'n*, 122 F.3d 1409, 1417 n.7 (Fed. Cir. 1997) ("The most frequent use of judicial notice of ascertainable facts is in noticing the content of court records.") (citations and quotations omitted); *United States v. Payne*, 964 F.3d 652, 656 (7th Cir. 2020) ("[I]t is well-settled that we may judicially notice court records.").

late enough so that the '869 patent or the '864 provisional are prior art. NuVasive thus fails to adequately plead inequitable conduct based on those references.

### 2.    NuVasive fails to adequately plead but-for materiality.

NuVasive's '869 patent theory also fails to allege facts to support a reasonable inference that the '869 patent or '864 application are but-for material to patentability. Apart from not directing its materiality allegations towards but-for materiality and instead relying on the materiality standard referenced in 37 C.F.R. § 1.56, NuVasive's pleading fails to meet the materiality threshold because NuVasive does not identify "which claims, and which limitations in those claims, the withheld references are relevant to, and where in those references the material information is found — *i.e.*, the 'what' and 'where' of the material omissions." *Exergen*, 575 F.3d at 1329. NuVasive does not allege that the PTO examiner would have rejected the applications that resulted in the '866, '292, '200, '444, and '856 patents had the examiner been aware of the '869 patent or '864 application. Again, NuVasive's only allegations regarding materiality are that the general and uninformative reference to "specification and figures of the '869 patent and the '864 provisional," which purportedly "disclose a polyaxial bone screw assembly with a receiver assembly for engagement of a bone screw," establish "a *prima facie* case of unpatentability of the Asserted Patents and are inconsistent with positions taken by Dr. Jackson during the prosecution of the Asserted Patents." DI 89 ¶¶ 69, 72. The allegations generally refer to the eight Asserted Patents without identifying a single claim, or limitation in those claims, to which the withheld references are purportedly relevant. The allegations also fail to identify where in the '869 patent or '864 application the material information is found, or how the '923 patent is inconsistent with any specific positions Dr. Jackson took during prosecution of the Asserted Patents. Because NuVasive has failed "to cite specific claims in specific patents 'that would be deemed unpatentable in light of undisclosed information,' [it has] failed to allege materiality." *Front Row*, 163 F. Supp.

3d at 986 (quoting *Milwaukee*, 2012 WL 1952977, at *8).

NuVasive also fails to allege that the '869 patent or '864 application were non-cumulative in light of the other references the examiner considered. As noted above, a claim of inequitable conduct must explain why "the withheld information is material and not cumulative." *Exergen*, 575 F.3d at 1329–30. While NuVasive conclusively alleges that the '869 patent and '864 application "establish a *prima facie* case of unpatentability," NuVasive fails to identify the particular claim limitations, or combination of claim limitations, that are supposedly absent from the information of record. ¶¶ 68–74, 111–113; *see Exergen*, 575 F.3d at 1329–30 ("Such allegations are necessary to explain both 'why' the withheld information is material and not cumulative, and 'how' an examiner would have used this information in assessing the patentability of the claims."). Again, these factual deficiencies are fatal under Rule 9(b). *Id.*

### 3.   NuVasive fails to adequately plead specific intent to deceive.

NuVasive also fails to adequately plead intent to deceive. NuVasive's '869 patent theory merely alleges that "Dr. Jackson and his patent counsel acted with an intent to deceive the USPTO when they withheld and failed to disclose the '869 patent and the '864 provisional." DI ¶ 74. The allegation falls far short of meeting the heightened pleading standard to show deceptive intent. *See St. Jude Med.*, 2014 WL 2622240, at *2. Moreover, courts have repeatedly held that alleging knowledge of the existence of prior art is insufficient as a matter of law to show intent for the purpose of pleading inequitable conduct. *See id.*; *Optium Corp.*, 603 F.3d at 1321 ("[i]ntent to deceive cannot be inferred solely from the fact that information was not disclosed"); *Bayer Cropscience AG v. Dow Agrosciences LLC*, 2012 WL 1253047, at *4 (D. Del. Apr. 12, 2012) (The "mere fact that Timmis had this knowledge is not in and of itself sufficient to justify the inference that 'Timmis deliberately withheld this information with a specific intent to deceive.'"). Thus, NuVasive's inequitable conduct counterclaim based on purported withholding the '869 patent and

17

the '864 application is insufficiently particularized under Rule 9(b) and should be dismissed.

## III.   INFECTIOUS UNENFORCEABILITY IS NOT APPLICABLE

If NuVasive has attempted to aver infectious unenforceability, the attempt fails because NuVasive does not identify any immediate and necessary relationship between the purported inequitable conduct and the patents sought to be held unenforceable. As such, any suggestion that the Purcell '923 patent theory of inequitable conduct with respect to the '866 and '292 patents, or the '869 patent theory of inequitable conduct with respect to the '866, '292, '200, '444, and '856 patents, could "infect" and render all eight Asserted Patents unenforceable is unsupported and fails. *See* DI 89 ¶¶ 114–115.

Inequitable conduct in a patent application does not automatically render unenforceable all claims of all later issued patents in the same chain. *See eSpeed, Inc. v. Brokertec USA, L.L.C.,* 417 F. Supp. 2d 580, 595 (D. Del. 2006), *aff'd*, 480 F.3d 1129, (Fed. Cir. 2007). Instead, "infectious unenforceability occurs when inequitable conduct renders unenforceable claims in a related application" having an immediate and necessary relation to the inequitable conduct. *Robocast, Inc. v. Apple Inc.*, 39 F. Supp. 3d 552, 570 (D. Del. 2014) (*citing Agfa Corp. v. Creo Prods., Inc.*, 451 F.3d 1366, 1379 (Fed. Cir. 2006); *Truth Hardware Corp. v. Ashland Prods., Inc.*, 2003 WL 22005839, at *1 (D. Del. Aug. 19, 2003)). An "immediate and necessary relation" only arises when the "the inequitable conduct that occurred earlier in the chain" is "related to the targeted claims of the ultimately-issued patent or patents sought to be enforced." *eSpeed,* 417 F. Supp. 2d at 595 (citations omitted). Sharing a parent application, sharing similarities in subject matter, and containing a citation to an unenforceable patent are insufficient bases upon which to allege a patent is invalid due to infectious unenforceability. *See IBM v. Priceline Grp., Inc.*, C.A. No. 15-137-LPS-CJB, 2017 WL 1349175, at *20 (D. Del. Apr. 10, 2017); *Nilssen v. Osram Sylvania, Inc*., 440 F. Supp. 2d 884, 900 (N.D. Ill. 2006).

NuVasive fails to allege any "immediate and necessary relation" between any of the patents. Courts in Delaware have granted motions to dismiss allegations of inequitable conduct based on a theory of infectious unenforceability where, as here, the accused infringer failed to plead the necessary facts to show a sufficient relationship between the prior patents that were allegedly procured with the pled acts of inequitable conduct and the challenged patent. *See Power Integrations, Inc. v. Fairchild Semiconductor Intern., Inc*., 2009 WL 4928024, at \*9 (D. Del. Dec. 18, 2009) (recommending striking allegations of infectious inequitable conduct where pleading merely asserted connections among the three patents, reasoning that such connections "are not sufficient to establish the required 'immediate and necessary relation'"). NuVasive does not allege that the Asserted Patents are all part of the same patent family, nor does it allege any other facts that could support infectious unenforceability. Thus, even if one of NuVasive's theories of inequitable conduct were to survive this motion (neither theory should), the doctrine of infectious unenforceability is insufficiently particularized under Rule 9(b) and should be dismissed.

## IV.   THE FOURTH, FIFTH, AND SIXTH AFFIRMATIVE DEFENSES SHOULD BE STRICKEN

NuVasive has not pled sufficient facts in support of waiver, estoppel, or unclean hands, which are equitable defenses that must be pled with particularity under Rule 9(b). *See Bench Walk Lighting*, 2020 WL 5128086, at \*1 ("equitable affirmative defenses of waiver, estoppel, and unclean hands must be plead with particularity under Rule 9(b)"). NuVasive has not alleged *any* facts to support its Fourth Defense of wavier, its Fifth Defense of estoppel, or its Sixth Defense of unclean hands. DI ¶¶ 201–203. *See id.* (striking equitable defenses of wavier, estoppel, and unclean hands for failure to plead sufficient facts under Rule 9(b)).

Were NuVasive to argue that its equitable defenses relate to the purported sale or assignment of certain of the Asserted Patents by Dr. Jackson to NuVasive, such contentions cannot

now save its deficient defenses. This Court previously heard and rejected NuVasive's arguments that Dr. Jackson sold or assigned to NuVasive any of the Asserted Patents. DI 36. Because the Court has already rejected the foundational theories behind these defenses, repleading this theory as affirmative defenses represents an attempt by NuVasive to avoid the requirements for filing a motion for reconsideration. *See Avitia v. Metro Club of Chicago, Inc.*, 49 F.3d 1219, 1227 (7th Cir. 1995) ("The doctrine of law of the case establishes a presumption that a ruling made at one stage of a lawsuit will be adhered to throughout the suit."); *In re City of Philadelphia Litigation*, 158 F.3d 711, 717-18 (3d Cir. 1998) ("The doctrine [of law of the case] is designed to protect traditional ideals such as finality, judicial economy and jurisprudential integrity.").

The Court should thus strike the inadequately plead equitable defenses because it will not only "clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters," but will avoid prejudicing Dr. Jackson. *Sun Microsystems,* 630 F. Supp. 2d at 402; *see also SK Innovation, Co. v. LG Chem, Ltd.*, C.A. No. 19-1637, slip op. at 12 (D. Del. July 24, 2020) (Exhibit C) (finding that failure to strike insufficient unclean hands defense would prejudice plaintiff).

## V.      CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant its motion and: (1) dismiss NuVasive's Fifth Counterclaim; (2) strike NuVasive's Fourth Affirmative Defense; (3) strike NuVasive's Fifth Affirmative Defense; (4) strike NuVasive's Sixth Affirmative Defense; and (5) for all other appropriate relief.

POLSINELLI PC

OF COUNSEL:

*/s/ Stephen J. Kraftschik*
Stephen J. Kraftschik (#5623)
222 Delaware Avenue, Suite 1101
Wilmington, DE 19801
(302) 252-0920
skraftschik@polsinelli.com
*Attorneys for Plaintiff Roger P. Jackson, M.D.*

Thomas L. Gemmell
Luke T. Shannon
POLSINELLI PC
150 N. Riverside Plaza, Suite 3000
Chicago, IL 60606
Phone: (312) 819-1900
Fax: (312) 819-1910
tgemmell@polsinelli.com
lshannon@polsinelli.com

Darren E. Donnelly
POLSINELLI LLP
Three Embarcadero Center, Suite 2400
San Francisco, CA  94111
Phone: (650) 461-7700
Fax: (415) 248-2101
ddonnelly@polsinelli.com

Aaron M. Levine
POLSINELLI PC
1000 Louisiana St., 64th Floor
Houston, TX 77002
Phone: (713) 374-1600
Fax: (713) 374-1601
alevine@polsinelli.com

January 10, 2023

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 10, 2023, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on January 10, 2023, upon the following in the manner indicated:

| | |
|---|---|
| Daniel M. Silver | *BY ELECTRONIC MAIL* |
| Alexandra M. Joyce | |
| MCCARTER & ENGLISH, LLP | |
| Renaissance Centre | |
| 405 N. King Street, 8th Floor | |
| Wilmington, Delaware 19801 | |
| (302) 984-6300 | |
| dsilver@mccarter.com | |
| ajoyce@mccarter.com | |
| *Attorneys for Defendant NuVasive, Inc.* | |

| | |
|---|---|
| Colin G. Cabral | *BY ELECTRONIC MAIL* |
| James R. Anderson | |
| PROSKAUER ROSE LLP | |
| One International Place | |
| Boston, MA  02110-2600 | |
| (617) 526-9600 | |
| ccabral@proskauer.com | |
| jaanderson@proskauer.com | |
| *Attorneys for Defendant NuVasive, Inc.* | |

| | |
|---|---|
| Jessica M. Griffith | *BY ELECTRONIC MAIL* |
| PROSKAUER ROSE LLP | |
| 2029 Century Park East, Suite 2400 | |
| Los Angeles, CA  90067-3010 | |
| (310) 284-4563 | |
| jgriffith@proskauer.com | |
| *Attorneys for Defendant NuVasive, Inc.* | |

*/s/ Stephen J. Kraftschik*

Stephen J. Kraftschik (#5623)