# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| TWINSTRAND BIOSCIENCES, INC. & UNIVERSITY OF WASHINGTON, | ) ) ) | |
| Plaintiffs and Counterclaim Defendants, | ) ) ) ) | |
| v. | ) ) | Civil Action No. 21-1126-GBW-SRF |
| GUARDANT HEALTH, INC., | ) ) | |
| Defendant and Counterclaim Plaintiff. | ) ) ) | |

### REPORT AND RECOMMENDATION

Presently before the court in this patent infringement action are the following motions filed by plaintiffs Twinstrand Biosciences, Inc. ("Twinstrand") and University of Washington ("UW;" together, "Plaintiffs"): (1) a partial motion to dismiss Counterclaims V to VIII for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) and strike related affirmative defenses under Rule 12(f), (D.I. 38);[1] and (2) a motion to sever and stay Counterclaims I to IV, (D.I. 75).[2] Briefing on the motions is complete, and the court held oral argument on October 27, 2022. For the following reasons, I recommend that the court GRANT-IN-PART the motion to dismiss and strike, and DENY without prejudice the motion to sever and stay.

---

[1] The briefing associated with the pending motion to dismiss is found at D.I. 39, D.I. 43, and D.I. 48.

[2] The briefing and related filings associated with the pending motion to sever and stay are found at D.I. 76, D.I. 82, D.I. 83, and D.I. 86.

## I.   BACKGROUND

### A.  Plaintiffs' Infringement Claims

Plaintiffs filed this action on August 3, 2021, asserting infringement of U.S. Patent Nos. 10,287, 631 ("the '631 patent"); 10,689,699 ("the '699 patent"); 10,752,951 ("the '951 patent"); and 10,760,127 ("the '127 patent;" collectively, the "Asserted Patents").  (D.I. 1)  The Asserted Patents claim duplex sequencing methods that allow reliable, early, non-invasive cancer detection and post-treatment cancer monitoring in patients by analyzing blood plasma.  (*Id.* at ¶¶ 13, 22)  Jesse Salk, M.D., Ph.D, and his co-inventors conceived of these inventions through their work at UW and subsequently founded TwinStrand, which exclusively licenses the Asserted Patents from UW to make the technology available to clinicians and researchers under the TwinStrand Duplex Sequencing™ technology platform.  (*Id.* at ¶¶ 13-14, 25-26; D.I. 30 at ¶¶ 122-23)  The Asserted Patents issued between May 2019 and September 2020.  (D.I. 1 at ¶¶ 9-12)

The complaint alleges that defendant Guardant Health, Inc. ("Guardant") sells sequencing method products and services that infringe the Asserted Patents, including the Guardant360 lab developed test, Guardant360 CDx, GuardantOMNI, Guardant Reveal, Guardant LUNAR-2, Guardant360 Response, and Guardant360 TissueNext (collectively, the "Guardant Kits" or "Accused Products").  (D.I. 1 at ¶¶ 27-28)  Guardant's customers use the Guardant Kits to collect tissue samples and return them to Guardant for sequencing using an allegedly infringing digital sequencing method.  (*Id.* at ¶ 28)

### B.  Guardant's Counterclaims

Guardant filed an answer to the complaint on October 1, 2021, (D.I. 10), and filed an amended answer and counterclaims on January 12, 2022, (D.I. 30).  Counterclaims I to IV allege

2

that TwinStrand's Duplex Sequencing™ kits and methods infringe Guardant's U.S. Patent Nos. 10,801,063 ("the '063 patent"), 10,889,858 ("the '858 patent"), 11,118,221 ("the '221 patent"), and 11,149,306 ("the '306 patent; collectively, the "Counterclaim Patents"). (D.I. 30 at ¶¶ 134-39, 149-225)  The Counterclaim Patents are directed to methods and systems for detecting genetic variants using liquid biopsy cancer assays, which are less painful, less expensive, quicker, and more comprehensive than traditional tumor-based genotyping assays. (*Id.* at ¶¶ 116-20, 130-33)  The '063, '221, and '306 patents name Helmy Eltoukhy, AmirAli Talasaz, and Stefanie Ann Ward Mortimer as inventors, and the '858 patent names Mr. Talasaz and Ms. Mortimer as inventors. (D.I. 30, Exs. A-D)  The Counterclaim Patents issued between October 2020 and October 2021. (*Id.* at ¶¶ 130-33)  Guardant was assigned all rights, title, and interest to the Counterclaim Patents. (*Id.*, Exs. A-D)

Counterclaims V and VI seek declarations of unpatentability of Plaintiffs' '699 and '951 patents under 35 U.S.C. §§ 101, 115, and/or 135(b). (D.I. 30 at ¶¶ 226-43)  According to Guardant, TwinStrand copied certain claims of the '699 and '951 patents from Guardant's U.S. Patent No. 9,834,822 ("the '822 patent") and Application No. WO2015/100427 ("the '427 application"), respectively. (*Id.* at ¶¶ 141, 145)  As a result, Guardant alleges that Plaintiffs' '699 and '951 patents do not name the actual inventors of the claimed subject matter. (*Id.* at ¶¶ 228, 238)

Counterclaim VII alleges that the '699 patent is unenforceable due to TwinStrand's inequitable conduct during prosecution of the application leading to the patent's issuance. (*Id.* at ¶¶ 143, 147, 245-47, 271-73)  On May 13, 2019, TwinStrand filed Application No. 16/411,066 ("the '066 application"), which later issued as the '699 patent. (*Id.* at ¶ 248)  The '066 application names Jesse Salk, Lawrence Loeb, and Michael Schmitt as inventors and claims

3

priority to Provisional Application No. 61/613,413, which was filed on March 20, 2012. (*Id.*) The counterclaims allege that claims 37-39 and 41-43 of the '066 application were exact copies of claims 1-3, 6-7, and 10 of Guardant's '822 patent, which issued on December 5, 2017. (*Id.* at ¶ 250) The named inventors of the '066 application cited Guardant's '822 patent in the Information Disclosure Statement ("IDS") they filed on June 18, 2019. (*Id.* at ¶ 252) However, they did not notify the United States Patent and Trademark Office ("USPTO") that certain claims of the '066 application were copied from the '822 patent. (*Id.* at 257)

Similarly, Counterclaim VIII alleges that the '951 patent is unenforceable due to TwinStrand's inequitable conduct during prosecution of Application No. 16/514,931 ("the '931 application"), which was filed on July 17, 2019, and led to the issuance of the '951 patent. (D.I. 30 at ¶ 274) The '931 application also names Jesse Salk, Lawrence Loeb, and Michael Schmitt as inventors and claims priority to Provisional Application No. 61/613,413, which was filed on March 20, 2012. (*Id.*) The counterclaims allege that claims 1 to 2 of the '931 application are near copies of claims 77 to 78 of Guardant's '427 application, which was published on July 7, 2015. (*Id.* at ¶ 275) The named inventors of the '931 application cited Guardant's '427 application in a different application, WO2017/100441, confirming their awareness of the reference two years before they filed the '931 application. (*Id.* at ¶ 277) Nonetheless, Counterclaim VIII alleges they did not notify the USPTO that claims 1 to 2 of the '931 application were effectively copied from the '427 application. (*Id.* at ¶ 282)

**C. The Illumina Action**

Two months after Guardant filed its answer and counterclaims, Illumina, Inc. ("Illumina") sued Guardant, Eltoukhy, and Talasaz in this court for correction of inventorship, trade secret misappropriation, and breach of contract (the "Illumina Action"). *Illumina, Inc. v.*

4

*Guardant Health, Inc. et al.*, C.A. No. 22-334-GBW-CJB, D.I. 1 (D. Del. Mar. 17, 2022). The complaint states that Eltoukhy and Talasaz co-founded Guardant while they were still employed by Illumina. (D.I. 76, Ex. 1 at ¶¶ 2-3, 20-26) Eltoukhy and Talasaz allegedly misappropriated Illumina's confidential information and trade secrets to develop Guardant's technology and prepare the patent applications that subsequently issued as a number of patents, including the Counterclaim Patents. (*Id.* at ¶¶ 50, 54, 57, 62, 66, 91) Illumina seeks a declaratory judgment to name Illumina as at least a co-owner of the Counterclaim Patents based on Eltoukhy's alleged assignments to Illumina. (*Id.* at ¶ 100)

A motion to dismiss Illumina's complaint, which was filed on May 25, 2022, remains pending. (C.A. No. 22-334-GBW-CJB, D.I. 29) A motion to transfer filed on the same date was subsequently withdrawn. (*Id.*, D.I. 26; D.I. 69) On August 17, 2022, the court entered a scheduling order in the Illumina Action setting a fact discovery deadline of October 13, 2023, an expert discovery deadline of March 28, 2024, a dispositive motion deadline of April 10, 2024, and a trial date in September 2024. (*Id.*, D.I. 55)

### D. The IPR Proceedings

Plaintiffs and Guardant have each filed five petitions for *inter partes* review ("IPR") before the Patent Trial and Appeal Board ("PTAB") challenging the Counterclaim Patents and the Asserted Patents, respectively. (D.I. 83 at ¶¶ 9-10) Institution decisions on Plaintiffs' IPRs are expected between October 2022 and January 2023, and institution decisions on Guardant's IPR petitions are anticipated between August and December 2022. (*Id.*)

### E. The Foundation Medicine Actions

On November 9, 2017, Guardant sued its competitor, Foundation Medicine, Inc. ("FMI"), for infringement of four of Guardant's patents (the "FMI I Action"). (C.A. No. 17-1616-LPS-

CJB, D.I. 1)  In response, FMI asserted counterclaims against Guardant for inequitable conduct by Eltoukhy and Talasaz, who allegedly made material misrepresentations to the USPTO regarding the inventorship of certain Guardant patents by omitting Eltoukhy as an inventor because he was still subject to an assignment agreement with Illumina.  (*Id.*, D.I. 168 at ¶¶ 57-75, 82-84, 91-93, 100-02, 109-11)  Shortly before the case was to proceed to trial in November of 2020, a spoliation issue arose based on allegations that Eltoukhy deleted certain data.  (*Id.*, D.I. 505)  As a result of the spoliation issue, the court continued the trial indefinitely, and the parties subsequently reached a settlement agreement.  (*Id.*, D.I. 513; D.I. 583)

Three years later, shortly after the spoliation allegations came to light in the FMI I Action, Guardant brought another suit against FMI for infringement of another set of related Guardant patents (the "FMI II Action"), including the '063 patent at issue in Guardant's counterclaims in the present action.  (C.A. No. 20-1580-LPS, D.I. 1)  FMI again brought inequitable conduct counterclaims for each of the patents-in-suit, alleging that Eltoukhy and Talasaz made material misrepresentations regarding the inventorship of the patents to the USPTO during prosecution.  (*Id.*, D.I. 22 at ¶¶ 146-48, 155-57, 164-66, 173-75, 182-84, 191-93, 200-02)

## II.  DISCUSSION

### A.  Motion to Dismiss Counterclaims V to VIII

Rule 12(b)(6) permits a party to move to dismiss a complaint for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  When considering a Rule 12(b)(6) motion to dismiss, the court must accept as true all factual allegations in the complaint and view them in the light most favorable to the plaintiff.  *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 790-91 (3d Cir. 2016).  "Courts use the same standard in ruling on a motion to dismiss a

6

counterclaim under Rule 12(b)(6) as they do in assessing a claim in a complaint." *Goddard Sys.,*

*Inc. v. Gondal*, C.A. No. 17-1003-CJB, 2018 WL 1513018, at *4 (D. Del. Mar. 27, 2018).

To state a claim upon which relief can be granted pursuant to Rule 12(b)(6), a complaint

must contain a "short and plain statement of the claim showing that the pleader is entitled to

relief." Fed. R. Civ. P. 8(a)(2). Although detailed factual allegations are not required, the

complaint must set forth sufficient factual matter, accepted as true, to "state a claim to relief that

is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft*

*v. Iqbal*, 556 U.S. 662, 663 (2009). A claim is facially plausible when the factual allegations

allow the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged. *Iqbal*, 556 U.S. at 663; *Twombly*, 550 U.S. at 555-56.

The court's determination is not whether the non-moving party "will ultimately prevail,"

but whether that party is "entitled to offer evidence to support the claims." *In re Burlington Coat*

*Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal citations and quotation marks

omitted). This "does not impose a probability requirement at the pleading stage," but instead

"simply calls for enough facts to raise a reasonable expectation that discovery will reveal

evidence of [the necessary element]." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir.

2008) (quoting *Twombly*, 550 U.S. at 556). The court's analysis is a context-specific task

requiring the court "to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at

663-64.

### 1. Inequitable conduct

An individual associated with the filing and prosecution of a patent application engages

in inequitable conduct when he or she makes an affirmative misrepresentation of a material fact,

fails to disclose material information, or submits false material information to the USPTO, with a

specific intent to deceive the USPTO. *See Star Sci., Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1365 (Fed. Cir. 2008). Allegations for each of these requirements must be pled with particularity pursuant to Federal Rule of Civil Procedure 9(b). *See Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1328-29 (Fed. Cir. 2009).

> [T]o plead the "circumstances" of inequitable conduct with the requisite "particularity" under Rule 9(b), the pleading must identify the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO. Moreover, although "knowledge" and "intent" may be averred generally, a pleading of inequitable conduct under Rule 9(b) must include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO.

*Id.* Although a party may plead facts upon "information and belief," it must also set forth the "specific facts upon which the belief is reasonably based." *Id.* at 1330.

### a. Omissions

The parties do not meaningfully dispute that Guardant's inequitable conduct counterclaims identify omissions with sufficient particularity. Specifically, Counts VII and VIII allege that named inventors Jesse Salk, Lawrence Loeb, Michael Schmitt, and patent attorney Lara J. Dueppen did not notify the USPTO that claims 37 to 39 and 41 to 43 of the '066 application were copied from Guardant's '822 patent (D.I. 30 at ¶ 257), and claims 1-2 of the '931 application were copied from Guardant's '427 application (*id.* at ¶ 282). These facts are pled with sufficient particularity to identify the alleged omissions.

### b. Materiality

Guardant's inequitable conduct counterclaims fail to satisfy the materiality requirement under either a per se or but-for standard. Counterclaims VII and VIII assert a per se materiality standard, alleging that the failure to notify the USPTO of copied patent claims amounts to

8

affirmative egregious misconduct.  (D.I. 30 at ¶¶ 260-61, 285-86)  In support of this contention,
the counterclaims recite provisions pertaining to the inventors' duty to disclose under the Code
of Federal Regulations and the Manual of Patent Examining Procedure ("MPEP").  (*Id.* at ¶¶
254-59; 279-84)  For instance, MPEP § 2001.06(d) requires an applicant to identify claims that
are copied are substantially copied from a patent because the source of the copied claims is
material information under 37 C.F.R. § 1.56.  MPEP § 2001.06(d).  Section 1.56 requires
individuals associated with the filing and prosecution of a patent application to disclose to the
USPTO "all information known to that individual to be material to patentability[.]"  37 C.F.R. §
1.56(a).

 These allegations are insufficient to establish the per se materiality of the alleged
omissions for purposes of the inequitable conduct standard.  The Federal Circuit has expressly
declined to adopt the definition of materiality set forth in 37 C.F.R. § 1.56 in analyzing claims
for inequitable conduct.  *See Therasense*, 649 F.3d at 1293-94 (rejecting definition of materiality
in 37 C.F.R. § 1.56 for purposes of inequitable conduct because it sets a low bar for materiality
and "would inevitably result in . . . patent litigators continuing to charge inequitable conduct in
nearly every case as a litigation strategy.").  Accordingly, a violation of the duty to disclose
claim copying under MPEP § 2001.06(d) cannot form the basis for materiality on a cause of
action for inequitable conduct.  *See Flypsi, Inc. v. Dialpad, Inc.*, 2022 WL 3593132, at *5 (W.D.
Tex. Aug. 22, 2022) (rejecting application of materiality test under MPEP § 2001.06(c) to the
materiality inquiry on a claim for inequitable conduct).

 Moreover, well-pleaded allegations of per se materiality must be based on affirmative
acts of egregious misconduct, such as the submission of a false affidavit or declaration to the
USPTO.  *See Therasense*, 649 F.3d at 1292 (explaining that the per se materiality standard is an

exception applied only in cases of affirmative egregious misconduct); *Outside the Box Innovations, LLC v. Travel Caddy, Inc.*, 695 F.3d 1285, 1294 (Fed. Cir. 2012). Here, the parties do not dispute that the foundation of Guardant's inequitable conduct counterclaims is the alleged omission of claim copying information. Guardant cites no authority to suggest that per se materiality can be based on alleged omissions, as opposed to affirmative acts, in support of a claim for inequitable conduct. To the extent that Counterclaims VII and VIII are based on allegations of per se materiality, those claims cannot survive Plaintiffs' motion to dismiss.

Guardant's inequitable conduct counterclaims likewise fail to satisfy the but-for materiality standard. To assess the materiality of a withheld reference under the but-for standard, "the court must determine whether the PTO would have allowed the claim if it had been aware of the undisclosed reference." *Therasense*, 649 F.3d at 1291. Plaintiffs argue that Counterclaims VII and VIII lack factual allegations leading to a plausible inference that an interference would have been triggered or the USPTO would have rejected the claims if they had notified the examiner of the claim copying. (D.I. 39 at 13-14) A review of the counterclaims supports Plaintiffs' position.

In the pleading, Guardant identifies the claims of the '699 and '951 patents that were allegedly copied from Guardant's '822 patent and '427 application, respectively, and states that the '699 and '951 patents would not have issued if Plaintiffs disclosed this alleged claim copying to the USPTO. (D.I. 30 at ¶¶ 257, 263, 282, 288) In support of this contention, Guardant explains that the named inventors and patent attorney Lara Dueppen disclosed claim copying in another instance, and no patent issued from U.S. Application No. 16/118,305 after the claim copying was disclosed. (*Id.* at ¶¶ 266-68, 291-93) The court takes judicial notice that this factual allegation was subsequently rendered false. *See Secured Mail Sols. LLC v. Universal*

*Wilde, Inc.*, 873 F.3d 905, 913 (Fed. Cir. 2017) ("[A] court need not accept as true allegations that contradict matters properly subject to judicial notice or by exhibit, such as the claims and the patent specification.") (internal quotation marks and citations omitted).  On February 8, 2022, about a month after Guardant filed its inequitable conduct counterclaims, the claims of U.S. Application No. 16/118,305 issued without amendment as U.S. Patent No. 11,242,562.  (D.I. 39, Ex. CC)

Counterclaims VII and VIII also state that identifying the copied claims of the '699 and '951 patents would have triggered an interference, leading to "a much more thorough and in-depth examination as to whether the claims" should be issued.  (D.I. 30 at ¶¶ 262, 287)  Plaintiffs challenge the likelihood that an interference would have been declared because the copied claims were later amended, and the '699 and '951 patents claim priority to a pre-AIA provisional application.  (D.I. 39 at 14; D.I. 48 at 4-5)  But the court need not delve into the significance of priority issues and claim amendments to determine that the interference allegations are insufficient to establish the materiality of the alleged claim copying.  Counterclaims VII and VIII do not allege that Plaintiffs were likely to lose a potential interference, or that the claims of the '699 and '951 patents would not have issued as a result of an interference.  On this record, Guardant has failed to plead that a potential interference would have adversely impacted the patentability of the '699 and '951 patent claims.

At oral argument on October 27, 2022, Guardant argued that Plaintiffs' undisclosed claim copying was but-for material because it occurred more than one year after the '822 patent had issued, thus, falling outside of the timeframe for triggering an interference proceeding. (10/27/2022 Tr.)  Counterclaim VII alleges that Plaintiffs "deliberately and improperly copied claims from the '822 Patent more than one year after issuance of the '822 Patent in violation of

11

35 U.S.C. § 135(b)," and "[b]y doing so outside of the one-year timeframe, [Plaintiffs] attempted to evade an interference proceeding." (D.I. 30 at ¶¶ 246, 272)  But the pleading does not allege that the '699 and '951 patents would not have issued if the untimely claim copying had been disclosed or otherwise explain how the alleged violation of § 135(b) would have adversely impacted the issuance of the '699 and '951 patent claims.

Guardant's reliance on *Diebold Nixdorf, Inc. v. Hyosung Tns, Inc.* does not change the court's analysis.  C.A. No. 19-1695-LPS, 2021 WL 861734, at *4 (D. Del. Mar. 4, 2021).  In *Diebold*, the court found that the defendant adequately pleaded the but-for materiality of a prior art reference where "[t]he pleadings contain[ed] specific allegations" that the prior art reference "describes numerous reasons and motivations that would lead a person having ordinary skill in the art to the alleged inventions of the [asserted patent] with predictable results and expected success." *Id.*  Unlike in *Diebold*, the inequitable conduct allegations here are not based on an alleged failure to disclose a prior art reference.  Guardant fails to explain how the alleged fact of undisclosed copying is analogous to an undisclosed prior art reference in a but-for materiality analysis.  Unlike in *Diebold*, Guardant's factual allegations in Counterclaims VII and VIII stop at the likelihood that an interference proceeding would have been triggered, without suggesting that the ultimate outcome of any interference proceeding would negatively affect the issuance of the '699 and '951 patents.  Absent allegations regarding the outcome of the interference proceeding, Guardant cannot show that Plaintiffs' claim copying would have adversely impacted the issuance of any claims in the '699 and '951 patents.

Because Guardant's inequitable conduct counterclaims do not adequately establish the materiality of the alleged omissions, I recommend that the court grant Plaintiffs' motion to dismiss Counterclaims VII and VIII.

12

### c. Specific intent

Plaintiffs also challenge the sufficiency of Guardant's deceptive intent allegations in Counterclaims VII and VIII.  (D.I. 39 at 10-12)  At the pleading stage, Guardant "need only allege facts from which the Court could reasonably infer that the patent applicant made a deliberate decision to deceive the PTO." *Natera, Inc. v. Genosity Inc.*, C.A. No. 20-1352-LPS, 2022 WL 767602, at *5 (D. Del. Mar. 14, 2022) (quoting *Wyeth Holdings Corp. v. Sandoz, Inc.*, C.A. No. 09-955-LPS-CJB, 2012 WL 600715, at *7 (D. Del. Feb. 3, 2012)).  But the facts alleged in Guardant's counterclaims cannot sustain a reasonable inference that the named inventors and prosecution counsel made a deliberate decision to deceive the USPTO during the prosecution of the '699 and '951 patents by concealing their claim copying activities. *See Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1330-31 (Fed. Cir. 2009) (explaining that specific intent allegations must identify a specific individual who owed a duty of disclosure, knew of the specific material information, and made a deliberate decision to withhold it).

Guardant's inequitable conduct counterclaims allege that the named inventors and prosecution counsel engaged in a "practice of copying claims into their own applications without disclosing that the claims are copied," citing five instances of alleged claim copying.[3]  (D.I. 30 at ¶¶ 265, 290)  This asserted pattern of conduct forms the basis for Guardant's position that the inventors engaged in a purposeful effort to copy claims without disclosing to the USPTO that

_____

[3] Guardant also contends that the inventors' disclosure of claim copying in connection with the '305 application shows they "engaged in a systemic practice of copying claims" and had an incentive to withhold the information in subsequent prosecutions once the '305 application did not issue as a patent.  (D.I. 43 at 7)  As explained at § II.A.1.b, *supra*, the '305 application ultimately issued as U.S. Patent No. 11,242,562.  (D.I. 39, Ex. CC)  Because Plaintiffs suffered no adverse consequences from their disclosure of claim copying during prosecution of the '305 application, there is no reason to infer that the claim copying disclosure in that prosecution dissuaded the inventors from disclosing claim copying in connection with prosecution of the '699 and '951 patents.

those claims were copied. (D.I. 43 at 6-7)  However, Guardant's own pleaded allegations

undercut the inference it seeks to draw.  In four of the five claim copying examples cited by

Guardant, the pleading confirms that the allegedly copied references were disclosed to the

examiner in an information disclosure statement ("IDS").  (D.I. 30 at ¶¶ 265, 290)  Plaintiffs'

pattern of disclosing the allegedly copied references in the IDS forecloses a reasonable inference

that Plaintiffs sought to conceal the copying of those references.  *See Allergan USA, Inc. v.*

*Prollenium US Inc.*, C.A. No. 19-126-CFC-SRF, 2019 WL 7298569, at *8 (D. Del. Dec. 30,

2019) (concluding that the disclosure of a prior art reference in an IDS indicated a lack of

specific intent to deceive the USPTO).

      Guardant's allegations of the inventors' specific intent to conceal claim copying in the

'699 patent are also implausible.  Counterclaim VII states that Plaintiffs submitted exact copies

of claims 1-3, 6-7, and 10 from Guardant's '822 patent in claims 37-39 and 41-43 of the '066

application, which led to the issuance of the '699 patent.  (D.I. 30 at ¶ 250)  In the briefing,

Guardant concedes that the '699 patent claims are not exact copies of the '822 patent claims and

offers to amend the pleaded allegation to correct the inaccuracy.  (D.I. 43 at 8 n.1)  Nonetheless,

Guardant maintains that the claims are near-exact copies with immaterial differences, creating a

strong inference that the claims were copied.  (*Id.* at 8-10)

      Accepting as true the substantial similarity of the copied claims in the '699 patent,

Guardant's pleaded allegations still do not give rise to a reasonable inference that Plaintiffs

intended to deceive the USPTO.  Counterclaim VII expressly states that the '822 patent was

disclosed in an IDS during prosecution of the '699 patent.  (D.I. 30 at ¶ 252)  The disclosure of

the '822 patent in the IDS "points away from an intent to deceive," despite the fact that Plaintiffs

did not specifically identify the allegedly copied claims for the examiner.  *Pixion, Inc. v. Citrix*

*Sys., Inc.*, 2012 WL 762005, at *6 (N.D. Cal. Mar. 8, 2012) (quoting *Akron Polymer Container Corp. v. Exxel Container, Inc.*, 148 F.3d 1380, 1384 (Fed. Cir. 1998)).

Guardant's claim copying allegations in Counterclaim VIII also fail to give rise to a reasonable inference that the named inventors and prosecuting attorney specifically intended to conceal their claim copying during prosecution of the '951 patent.  There is no averment that the prosecuting attorney had knowledge of the '427 application.  The pleading alleges that the inventors were aware of Guardant's '427 application because they cited it in their own patent application filed two years before they submitted the application leading to the '951 patent.  (D.I. 30 at ¶ 277)  But "[a] reference may be many pages long, and its various teachings may be relevant to different applications for different reasons.  Thus, one cannot assume that an individual, who generally knew that a reference existed, also knew of the specific material *information* contained in that reference." *Exergen*, 575 F.3d at 1330.

Such is the case here.  Counterclaim VIII states that the inventors did not notify the USPTO that claims 1 and 2 of the '951 patent were copied from the '427 application, but it fails to suggest that the inventors were specifically aware of claims 77 and 78 from the '427 application or that they knew those claims were substantially similar to claims 1 and 2 of the '951 patent.  (D.I. 30 at ¶¶ 275, 282)  As a result, these allegations lack sufficient underlying facts to support a reasonable inference that the inventors of the '951 patent withheld claim copying information with a specific intent to deceive the USPTO. *See Exergen*, 575 F.3d at 1330 (explaining that, although knowledge and intent may be averred generally, an inequitable conduct claim must still set forth specific facts on which the averments are based).

Because Guardant has failed to adequately plead the materiality and intent prongs of their counterclaims for inequitable conduct, I recommend that the court dismiss Counterclaims VII and VIII of Guardant's pleading without prejudice.

### 2. Inventorship

Plaintiffs also seek dismissal of Guardant's Counterclaims V and VI, which aver that the '699 and '951 patents are unpatentable under 35 U.S.C. §§ 101, 115, and 135(b) for failure to name the actual inventors of the claimed subject matter. (D.I. 39 at 15-18)  For the following reasons, I recommend that the court grant-in-part Plaintiffs' motion to dismiss Counterclaims V and VI.  Specifically, I recommend that the court deny the motion to the extent that it seeks dismissal of Counterclaims V and VI under 35 U.S.C. §§ 101 and 115, and grant the motion to the extent that it seeks dismissal of Counterclaim V under 35 U.S.C. § 135(b).

### a.  Unpatentability under 35 U.S.C. §§ 101 and 115

The Federal Circuit has explained that "[a] patent is invalid if more or less than the true inventors are named," *Trovan, Ltd. v. Sokymat SA, Irori*, 299 F.3d 1292, 1301 (Fed. Cir. 2002), and "[c]onception is the touchstone of inventorship," *CODA Dev. S.R.O. v. Goodyear Tire & Rubber Co.*, 916 F.3d 1350, 1359 (Fed. Cir. 2019) (quoting *Acromed Corp. v. Sofamor Danek Grp., Inc.*, 253 F.3d 1371, 1379 (Fed. Cir. 2001)).  The sufficiency of a cause of action for patent invalidity pursuant to 35 U.S.C. §§ 101 and 115 at the pleading stage is governed by Rule 8, as opposed to the heightened pleading standard of Rule 9(b).  *See Belcher Pharms., LLC v. Hospira, Inc.*, C.A. No. 17-775-LPS, 2019 WL 2503159, at *1 (D. Del. June 5, 2019).  Here, the parties dispute whether Counterclaims V and VI should be dismissed for failure to allege facts regarding the conception of the '699 and '951 patents.  (D.I. 39 at 16-17; D.I. 43 at 12-13)

16

Counterclaims V and VI plausibly allege improper inventorship of the '699 and '951 patents. *See Belcher Pharms., LLC v. Hospira, Inc.*, C.A. No. 17-775-LPS, 2019 WL 2503159, at *1 n.1 (D. Del. June 5, 2019) (explaining that a patent may be invalid under 35 U.S.C. §§ 101 and 115 if it names the wrong inventors). The pleading avers that the inventions of the '699 and '951 patents were not made by the named inventors; instead, those claims were copied from Guardant's '822 patent and '427 application, respectively. (D.I. 30 at ¶¶ 141-42, 145-46, 233-34, 242) Guardant accuses TwinStrand of "shamelessly attack[ing] Guardant's patent portfolio by copying Guardant's own patent claims into TwinStrand patent applications—misrepresenting TwinStrand employees and founders as the true inventors of the claimed inventions[.]" (*Id.* at ¶ 124) While Plaintiffs accurately report that the pleading does not expressly refer to the "conception" of the '699 and '951 patents, the pleaded allegations give rise to a plausible inference that the named inventors of those patents did not conceive of the claimed inventions, which were instead copied from other references. (*Id.* at ¶¶ 124, 141, 145, 233-34, 242) Counterclaims V and VI also give rise to a plausible inference that the named inventors of Guardant's '822 patent and '427 application conceived of the claimed inventions in the '699 and '951 patents because those references are identified as the source of the copied claims. (*Id.* at ¶¶ 141-42, 145-46, 234, 242) Therefore, I recommend that the court deny Plaintiffs' motion to dismiss Counterclaims V and VI for unpatentability under 35 U.S.C. §§ 101 and 115.

Because portions of Counterclaims V and VI remain viable, I further recommend that the court deny Plaintiffs' request to dismiss UW as a counterclaim defendant. (D.I. 39 at 18)

### b. Unpatentability under 35 U.S.C. § 135(b)

For purposes of the pending motion, the parties agree that the pre-America Invents Act ("AIA") version of 35 U.S.C. § 135(b) applies to the analysis of whether the '699 patent is

unpatentable as alleged in Counterclaim V.  (D.I. 39 at 17-18; D.I. 43 at 14)  Pre-AIA § 135(b)
provides that "[a] claim which is the same as, or for the same or substantially the same subject
matter as, a claim of an issued patent may not be made in any application unless such a claim is
made prior to one year from the date on which the patent was granted."  35 U.S.C. § 135(b).  The
parties dispute whether § 135(b) provides a cause of action for invalidity.  (D.I. 39 at 18; D.I. 43
at 15-16)

      Plaintiffs correctly argue that § 135(b) does not provide a cause of action for invalidity.
(D.I. 39 at 18)  The Federal Circuit has explained that "[b]oth the plain language of that
provision and the relevant legislative history make clear that [§ 135] was intended to be a statute
of repose, limiting the time during which an interference may be declared 'so that the patentee
might be more secure in his property right.'"  *Berman v. Housey*, 291 F.3d 1345, 1351 (Fed. Cir.
2002) (quoting *Corbett v. Chisholm*, 568 F.2d 759, 765 (C.C.P.A. 1977)); *see also Regents of
Univ. of Cal. v. Univ. of Iowa Research Found.*, 455 F.3d 1371, 1376 (Fed. Cir. 2006) ("[I]n
order to serve as a statute of repose, section 135(b)(1) operates in conjunction with the PTO's
duty to declare interferences.").  Consequently, "a determination that the claims involved in an
interference are not barred by § 135(b) is a condition precedent . . . that should be resolved
before issues of priority and patentability are addressed."  *Id.* at 1352; *see Chiron Corp. v.
Genentech, Inc.*, 268 F. Supp. 2d 1148, 1171 (E.D. Cal. 2002) (rejecting a claim that a patent was
invalid under § 135(b) because the statute "is a procedural bar to interference proceedings, not a
substantive basis upon which to declare the claims of a patent invalid.").

      Guardant cites the Federal Circuit's decision in *Quantum Corp. v. Rodime, PLC*, 65 F.3d
1577, 1584 (Fed. Cir. 1995), for the proposition that 35 U.S.C. § 282 should be read broadly to
include invalidity defenses not expressly identified in the statute.  According to Guardant, the

18

Federal Circuit's determination in *Quantum* that § 282 encompasses violations of 35 U.S.C. § 305 should be further extended to include violations of 35 U.S.C. § 135 in this case. (D.I. 43 at 15-16) Guardant's reasoning is inapplicable here because the cases are clear that § 135(b) is concerned with time limitations for declaring an interference and not a substantive basis for invalidity. *See Berman*, 291 F.3d at 1351; *Regents of Univ. of Cal.*, 455 F.3d at 1376; *Chiron Corp.*, 268 F. Supp. 2d at 1171. Therefore, I recommend that the court dismiss Counterclaim V for unpatentability of the '699 patent under 35 U.S.C. § 135(b).

### B. Motion to Strike Guardant's Fourth, Eighth, and Twelfth Affirmative Defenses

Plaintiffs also ask the court to strike Guardant's Fourth, Eighth, and Twelfth Affirmative Defenses. Rule 12(f) permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions under Rule 12(f) are generally disfavored. *Fesnak & Assocs., LLP v. U.S. Bank Nat'l Ass'n*, 722 F. Supp. 2d 496, 502 (D. Del. 2010). On a motion to strike, the court should construe all facts in favor of the nonmoving party and "should not grant a motion to strike a defense unless the insufficiency of the defense is clearly apparent." *Symbol Techs., Inc. v. Aruba Networks, Inc.*, 609 F. Supp. 2d 353, 356 (D. Del. 2009) (internal quotation marks and citation omitted). However, "a court is not required to accept affirmative defenses that are mere bare bones conclusory allegations, and may strike such inadequately pleaded defenses." *Sun Microsystems, Inc. v. Versata Enters., Inc.*, 630 F. Supp. 2d 395, 408 (D. Del. 2009). Rule 12(f) "has been used in this jurisdiction to strike affirmative defenses where a party has failed to state a corresponding claim upon which relief can be granted" under Rule 12(b)(6). *Wyeth Holdings*, 2012 WL 600715, at *4 (citing *Power Integrations, Inc. v. Fairchild Semiconductor Int'l Inc.*, C.A. No. 08-309-JJF-LPS, 2009 WL 4928024, at *8-10 (D. Del. Dec. 18, 2009)).

19

### 1. Fourth and Twelfth Affirmative Defenses

Guardant's Fourth and Twelfth Affirmative Defenses are coextensive with Counterclaims V and VI.  For the reasons previously stated at § II.A.2.a, *supra*, I recommend that the court deny Plaintiffs' motion to strike Guardant's Fourth Affirmative Defense for failure to name the correct inventors and derivation.  For the reasons previously stated at § II.A.2.b, *supra*, I recommend that the court grant Plaintiffs' motion to strike Guardant's Twelfth Affirmative Defense for failure to comply with the requirements of 35 U.S.C. § 135.

### 2. Eighth Affirmative Defense

In a footnote, Plaintiffs state that Guardant's Eighth Affirmative Defense for unclean hands "appears to cover (if not be co-extensive with) Guardant's inequitable-conduct counterclaims[.]"  (D.I. 39 at 1 n.1)  "[A]rguments raised in passing (such as, in a footnote), but not squarely argued, are considered waived." *John Wyeth & Brother Ltd. v. Cigna Int'l Corp.*, 119 F.3d 1070, 1076, n.6 (3d Cir. 1997).  The defense of unclean hands is governed by a different standard than inequitable conduct. *See Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1287 (Fed. Cir. 2011).  Plaintiffs' arguments are directed to inequitable conduct. Therefore, I recommend that the court deny Plaintiffs' motion to strike Guardant's Eighth Affirmative Defense for unclean hands. *See Samsung Elecs. Co. v. Netlist, Inc.*, C.A. No. 21-1453-RGA, 2022 WL 3027312, at *5 (D. Del. Aug. 1, 2022) (finding argument to strike affirmative defense of unclean hands was waived where it was raised in a footnote and based on arguments pertaining to inequitable conduct).

### C. Motion to Stay Counterclaims I to IV

Plaintiffs move this court to stay litigation on Counterclaims I to IV.  (D.I. 76 at 1)  A court has discretionary authority to grant a motion to stay. *See Landis v. N. Am. Co.*, 299 U.S.

248, 254-55 (1936); *Dentsply Int'l Inc. v. Kerr Mfg. Co.*, 734 F. Supp. 656, 658 (D. Del. 1990).

Courts consider three factors in deciding how to exercise this discretion: (1) whether a stay will

simplify the issues for trial; (2) the status of the litigation, particularly whether discovery is

complete and a trial date has been set; and (3) whether a stay would cause the non-movant to

suffer undue prejudice from any delay or allow the movant to gain a clear tactical advantage.

*See Am. Axle & Manuf., Inc. v. Neapco Holdings LLC*, C.A. No. 15-1168-LPS, 2021 WL

616992, at *2 (D. Del. Feb. 17, 2021) (citing *Ethicon LLC v. Intuitive Surgical, Inc.*, C.A. No.

17-871-LPS, 2019 WL 1276029, at *1 (D. Del. Mar. 20, 2019)).  On balance, these factors weigh

against a stay in this case at this time.

## 1.  Simplification of the issues for trial

Plaintiffs identify two ways in which a stay of litigation on Counterclaims I to IV is likely

to simplify the issues for trial in this matter.  First, Plaintiffs argue that ownership challenges to

the Counterclaim Patents in the Illumina Action have the potential to impact Guardant's standing

to assert the Counterclaim Patents in this action.  (D.I. 76 at 8)  Second, Plaintiffs suggest that a

stay would allow the IPR proceedings on the Counterclaim Patents to proceed to institution

decisions and possible invalidity determinations, which would narrow the asserted claims of

those patents.  (D.I. 76 at 11-12; D.I. 86 at 6)

Plaintiffs' first basis for simplification weighs somewhat in favor of granting a stay at this

stage because a determination regarding the ownership of the Counterclaim Patents in the

Illumina Action could be dispositive of Counterclaims I to IV in this action.  But as Guardant

explains, this result is not the only possible outcome.  (D.I. 82 at 10-11)  A motion to dismiss

remains pending in the Illumina Action which could nullify Illumina's ownership challenges to

Guardant's patents if it is granted.  (C.A. No. 22-334-GBW-CJB, D.I. 29)  At this juncture, it is

also speculative to assume that Illumina's claims will reach a judgment. For these reasons, the simplification factor does not weigh strongly in favor of staying the case.

Plaintiffs cite a number of cases for the proposition that a stay should be granted when challenges to patent ownership are pending in another case. (D.I. 76 at 9)  But as Guardant explains, decisions on patent ownership were imminent in each of those cases, whereas the Illumina Action was filed well after this case and is not expected to go to trial until nearly a year after the scheduled trial in this case. (*See, e.g.*, D.I. 20; C.A. No. 22-334-GBW-CJB, D.I. 55); *see Optimal Golf Sols., Inc. v. Altex Corp.*, 2009 WL 10733424, at *1 (N.D. Tex. Sept. 30, 2009) (staying case where ownership of patent-in-suit was expected to be addressed by the bankruptcy court "in the coming weeks"); *Innovative Patented Tech., LLC v. Samsung Elecs. Co.*, 2008 WL 2726914, at *1 (S.D. Fla. July 10, 2008) (finding a stay appropriate where an earlier-filed case in another district makes a determination of patent ownership).

Plaintiffs' second basis for simplification does not weigh in favor of a stay at this stage because the PTAB has not yet decided whether to institute IPR proceedings on the Counterclaim Patents. *See Invensas Corp. v. Samsung Elecs. Co.*, C.A. No. 17-1363-MN-SRF, 2018 WL 4762957, at *3 (D. Del. Oct. 2, 2018) (concluding that the issue simplification factor weighs against a stay before the PTAB issues an institution decision).

### 2. Status of the litigation

The stage of the litigation is a neutral factor in this case. "Stays are favored when the 'most burdensome stages of the case—completing discovery, preparing expert reports, filing and responding to pretrial motions, preparing for trial, going through the trial process, and engaging in post-trial motions practice—all lie in the future.'" *Bio-Rad Lab'ys Inc. v. 10x Genomics, Inc.*, C.A. No. 18-1679-RGA, 2020 WL 2849989, at *1 (D. Del. June 2, 2020).  Although expert

22

discovery and pretrial preparations still lie in the future, fact discovery is well underway, experts have been retained, and briefing on claim construction is complete.  (D.I. 20 at ¶ 8(f)(i); 9/14/2022 Oral Order)  Because the requested stay of this case is occasioned by the issues before the court in the Illumina Action, the comparatively early stage of that case also weighs against a stay.  *See Dentsply Int'l, Inc. v. Kerr Mfg. Co.*, 734 F. Supp. 656, 658 (D. Del. 1990) (explaining that "[t]he disposition of the earlier case should not be delayed by the later filed litigation." (quoting *La Chemise Lacoste v. Alligator Co., Inc.*, 60 F.R.D. 164, 176 (D. Del. 1973)).

### 3. Prejudice

The third and final factor weighs against a stay because courts generally recognize that staying proceedings between two direct competitors can result in prejudice to the nonmoving party, including the potential for lost market share and the erosion of goodwill.  *See FMC Corp. v. Summit Agro USA, LLC*, C.A. No. 14-51-LPS-CJB, 2014 WL 3703629, at *5 (D. Del. July 21, 2014) (quoting *ImageVision.Net, Inc. v. Internet Payment Exch., Inc.*, C.A. No. 12-54-GMS-MPT, 2013 WL 663535, at *6 (D. Del. Feb. 25, 2013)); *SenoRx, Inc. v. Hologic, Inc.*, C.A. No. 12-173-LPS-CJB, 2013 WL 144255, at *9 (D. Del. Jan. 11, 2013).  The fact that Plaintiffs and Guardant are not the only participants in the relevant market does not negate this prejudice.  "[E]ven in cases where there [are] some number of other competitors in the market, so long as plaintiff and defendant [are] joint market participants and engaged in some level of competition, our Court has tended to find that some amount of potential prejudice is at play."  *FMC*, 2014 WL 3703629, at *6.

Guardant also persuasively argues that Plaintiffs will have a clear tactical advantage if their infringement claims on the Asserted Patents proceed to trial while Counterclaims I to IV remain paused.  (D.I. 82 at 7)  If the Illumina Action terminates in a manner favorable to

23

Guardant, or if the claims in the Illumina Action proceed past the pleading stage, a lengthy stay would prejudice Guardant due to the lost opportunity to enforce its patents and the delay in any potential recovery. *See Align Tech., Inc. v. 3Shape A/S*, C.A. no. 17-1646-LPS-CJB, 2018 WL 4292675, at *3 (D. Del. Sept. 7, 2018). Such prejudice outweighs the other factors for a stay.

On balance, the stay factors weigh against staying the proceedings with respect to Counterclaims I to IV. Therefore, I recommend that the court deny Plaintiffs' motion to stay, without prejudice to renew the request in the event that IPR proceedings are instituted or determinations of patent ownership are reached in the Illumina Action.

### D. Motion to Sever Counterclaims I to IV

During the oral argument on October 27, 2022, counsel for Plaintiffs confirmed that the motion to sever rises and falls with the outcome of the motion to stay. (10/27/2022 Tr.) Having recommended that the court deny Plaintiffs' motion to stay for the reasons set forth at § II.C, *supra*, I further recommend denying Plaintiffs' motion to sever Counterclaims I to IV.

## III.   CONCLUSION

For the foregoing reasons, I recommend that the court GRANT-IN-PART Plaintiffs' Rule 12(b)(6) motion to dismiss Counterclaims V to VIII. (D.I. 38) Specifically, I recommend that the court DENY the motion to dismiss Counterclaims V and VI to the extent that those counterclaims are based on a failure to name the correct inventors under 35 U.S.C. §§ 101 and 115. I recommend that the court GRANT the motion to dismiss Counterclaim V to the extent that it is based on 35 U.S.C. § 135(b), and GRANT the motion to dismiss Counterclaims VII and VIII. I further recommend that the court GRANT Plaintiffs' motion to strike Guardant's Eighth and Twelfth Affirmative Defenses and DENY the motion to strike Guardant's Fourth

Affirmative Defense.  Finally, I recommend that the court DENY Plaintiffs' motion to sever and stay Counterclaims I to IV without prejudice.  (D.I. 75)

Given that the court has relied upon material that technically remains under seal, the court is releasing this Report and Recommendation under seal, pending review by the parties.  In the unlikely event that the parties believe that certain material in this Report and Recommendation should be redacted, the parties shall jointly submit a proposed redacted version by no later than **November 4, 2022**, for review by the court, along with a motion supported by a declaration that includes a clear, factually detailed explanation as to why disclosure of any proposed redacted material would "work a clearly defined and serious injury to the party seeking closure."  *See In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*, 924 F.3d 662, 672 (3d Cir. 2019) (quoting *Miller v. Ind. Hosp.*, 16 F.3d 549, 551 (3d Cir. 1994) (internal quotation marks omitted)).  If the parties do not file a proposed redacted version and corresponding motion, or if the court determines the motion lacks a meritorious basis, the documents will be unsealed within thirty (30) days of the date the Report and Recommendation issued.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1.  The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2).  The objections and responses to the objections are limited to ten (10) pages each.  The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the District Court.  *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987).

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R.

Civ. P. 72, dated March 7, 2022, a copy of which is available on the court's website,

http://www.ded.uscourts.gov.

Dated: October 28, 2022

Sherry R. Fallon
UNITED STATES MAGISTRATE JUDGE

# EXHIBIT B

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ROGER P. JACKSON, M.D.,<br><br>Plaintiff,<br><br>v.<br><br>NUVASIVE, INC.,<br><br>Defendant. | C.A. No. 21-53 (RGA) |

## NUVASIVE, INC.'S PRELIMINARY INVALIDITY CONTENTIONS

Pursuant to the parties' agreed schedule (D.I. 67), and paragraph 4(d) of the Default Standard for Discovery, Defendant NuVasive, Inc. ("NuVasive"), hereby serves the following Preliminary Invalidity Contentions for U.S. Patent Nos. 8,353,932 (the "'932 patent"); 8,696,711 (the "'711 patent"); 9,788,866 (the "'866 patent"); 10,335,200 (the "'200 patent"); 10,561,444 (the "'444 patent"); 10,722,273 (the "'273 patent"); 9,808,292 (the "'292 patent"); and 11,051,856 (the "'856 patent"). Invalidating references that are not publicly available or already in Plaintiff Dr. Jackson's possession will be produced by NuVasive.

## I. Introduction

These Preliminary Contentions are based on information currently available to NuVasive. Continuing investigation and discovery may alter this disclosure. NuVasive reserves the right to supplement or amend these Preliminary Contentions if necessary based on developments in this action, including, without limitation, by identifying additional prior art and additional theories of invalidity, or in response to the assertion of additional claims. NuVasive also reserves the right to object to any assertion of additional claims.

## A.    Asserted Patents and Asserted Claims

Dr. Jackson asserted the following claims in his Preliminary Infringement Contentions:

| Asserted Patent | Asserted Claim(s) |
|-----------------|-------------------|
| '932 patent | 1, 22, 31, 32 |
| '711 patent | 1 |
| '866 patent | 1, 9 |
| '200 patent | 1, 18 |
| '444 patent | 1 |
| '273 patent | 1, 12, 35 |
| '292 patent | 1, 25 |
| '856 patent | 1 |

These Preliminary Invalidity Contentions address only those claims asserted by Dr. Jackson in the Preliminary Infringement Contentions. NuVasive intends to supplement these Preliminary Invalidity Contentions in the event Dr. Jackson is allowed to assert additional claims.

## B.    Priority of Asserted Claims

To date, Dr. Jackson has not disclosed the priority date for each of the Asserted Claims. The table below summarizes the earliest priority date to which the Asserted Claims could claim priority, based on NuVasive's investigation to date. Nothing herein should be construed to imply that each of the Asserted Claims has written description support in the Asserted Patents. Rather, the following priority dates are based on NuVasive's ongoing investigation and current analysis of the presence or absence of new matter in each of the applications.

| Asserted Patent | Asserted Claim(s) | Earliest Priority Date | Reason |
|---|---|---|---|
| '932 patent | 1, 22, 31, 32 | 9/17/2007 | The '932 patent claims priority to various provisional and non-provisional applications, beginning with U.S. Provisional App. No. 60/722,300, filed on September 30, 2005.<br><br>Claims 1, 22, 31, and 32 of the '932 patent include a compression insert, is new matter not disclosed in the '300 Provisional Application.<br><br>The earliest priority application that does not appear to include new matter with respect to the disclosure of the compression insert, is U.S. Provisional App. No. 60/944,083, which was filed on September 17, 2007. |
| '711 patent | 1 | 9/17/2007 | The '711 patent claims priority to various provisional and non-provisional applications, beginning with U.S. Provisional App. No. 60/722,300, filed on September 30, 2005.<br><br>Claim 1 of the '711 patent includes a compression insert, which is new matter not disclosed in the '300 Provisional Application.<br><br>The earliest priority application that does not appear to include new matter with respect to the disclosure of the compression insert, is U.S. Provisional App. No. 60/944,083, which was filed on September 17, 2007. |
| '866 patent | 1, 9 | 5/27/2005 | The '866 patent claims priority to various non-provisional applications, beginning with U.S. App. No. 11/140,343 (issued as U.S. Pat. No. 7,776,067), which was filed on May 27, 2005. |

| Asserted Patent | Asserted Claim(s) | Earliest Priority Date | Reason |
|---|---|---|---|
| '200 patent | 1, 18 | 9/17/2007 | The '200 patent claims priority to various provisional and non-provisional applications. The earliest application is U.S. Provisional App. No. 60/994,083, filed on Sep. 17, 2007. |
| '444 patent | 1 | 9/17/2007 | The '444 patent claims priority to various provisional and non-provisional applications, beginning with U.S. Provisional App. No. 60/994,083, filed on September 17, 2007.. |
| '273 patent | 1, 12, 35 | 5/27/2005 | The '273 patent claims priority to various non-provisional applications, beginning with U.S. App. No. 11/140,343 (issued as U.S. Pat. No. 7,776,067), which was filed on May 27, 2005. |
| '292 patent | 1, 25 | 6/18/2003 | The '292 patent claims priority to various non-provisional applications, beginning with U.S. App. No. 10/464,633 (issued as U.S. Pat. No. 6,716,214), filed on June 18, 2003. |
| '856 patent | 1 | 10/30/2007 | The '856 patent claims priority to various applications with the earliest application, U.S. Provisional App. No. 60/000,964, filed on October 30, 2007. |

NuVasive reserves the right to amend these Preliminary Invalidity Contentions in the event Dr. Jackson claims priority to an earlier application, asserts an earlier conception or reduction to practice date than the priority application filing date, changes the alleged priority dates, or the Court determines that the Asserted Patents are not entitled to claim priority to earlier provisional or non-provisional applications.

## II.    Invalidity Contentions

NuVasive contends that each of the Asserted Claims is invalid as obvious, for obviousness-type double patenting, and for lack of written description support. NuVasive expressly intends to combine one or more prior art items identified in the attached Exhibits with

each other to address any further contentions from Dr. Jackson that a particular prior art reference purportedly lacks one or more elements of an asserted claim.

One of ordinary skill in the art, at the time of the purported inventions the Asserted Claims, would have been motivated to combine the teachings of these references, for at least the reasons set forth herein, in the attached Exhibits, in the prior art references themselves, and based on the knowledge of one of ordinary skill in the art.

At the time of the alleged inventions of the Asserted Claims, a person of ordinary skill in the art would have held a bachelor of science in biomedical engineering or an equivalent specialty with at least 3–5 years of experience in the field of orthopedic fixation devices or orthopedic implants.  More experience would compensate for less formal education, and vice versa.

The cited prior art relates to common objectives and general subject matter, and it shares other commonalities such as the types of equipment, products, and/or approaches used. For example, the prior art references are directed to the fields of orthopedics.  The references are within the field of the Asserted Patents and are directed to similar subject matter within the field. A person of ordinary skill in the art would have been motivated to combine the teachings of the references to enhance the effectiveness, safety, and longevity of the orthopedic devices and techniques taught or disclosed therein.  Some of the prior art references explicitly or implicitly reference each other, share common authors or inventors, and/or were developed at common companies, schools, or organizations, which would have motivated one of skill in the art to combine them.  Additionally, the references, and any products, devices, or processes described in the references, existed, and/or were invented in the same time period providing further motivation for combination.

NuVasive reserves the right to respond to any allegations of secondary considerations of non-obviousness set forth by Dr. Jackson or its expert witness in due course under the schedule set by the Court for expert reports and discovery.

### A.     Identification of Prior Art

The following prior art, alone or in combination with the knowledge of a person of ordinary skill in the art, admitted prior art, prior art of record in the prosecution of the Asserted Patents and related applications, and/or the additional prior art references discussed below and in Exhibits 1 through 19, would have rendered obvious one or more asserted claims of the Asserted Patents.  In addition, NuVasive expressly incorporates by reference all prior-art references cited within the Asserted Patents and their file histories.  NuVasive reserves the right to identify or rely on additional or different references based on Dr. Jackson's contentions and/or arguments as to the priority date(s) of the Asserted Claims.

| Prior Art | Filing Date | Date of Issue or Publication |
|---|---|---|
| U.S. Patent No. 7,377,923 to Purcell ("Alphatec '923") | May 19, 2004 | May 27, 2008<br><br>Claims priority to non-provisional and provisional applications with earlier filing dates, including U.S. Provisional Application No. 60/472,578, filed on May 22, 2003, which provide written description and enablement support for the claims of Alphatec '923. |
| U.S. Patent No. 6,063,090 to Schlapfer ("Schlapfer '090") | December 12, 1996 | May 16, 2000 |
| U.S. Patent Application No. 2004/0102781 to Jeon ("Jeon '781") | November 29, 2002 | May 27, 2004 |

| | | |
|---|---|---|
| U.S. Patent Application No. 2003/0225408 ("Nichols") | May 20, 2003 | December 4, 2003 |
| U.S. Patent Application No. 2005/0261687 to Garamszegi ("Garamszegi '687") | April 18, 2005 | November 24, 2005 |
| U.S. Patent No. 8,900,275 to Justis ("Justis '275") | November 9, 2012 | December 2, 2014 <br><br>Claims priority to provisional and non-provisional applications with earlier filing dates, including U.S. Patent Application No. 09/616,581 filed on July 14, 2000, which provide written description and enablement support for the claims of Justis '275. |

### B.    Invalidity by Obviousness (35 U.S.C. § 103 (pre-AIA))

A patent claim is invalid as obvious "if the differences between the subject matter . . . patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains."  35 U.S.C. § 103 (pre-AIA).  To determine whether a patent claim is obvious, a Court considers:  (1) the level of ordinary skill in the art; (2) the scope and content of the prior art; (3) any differences between the prior art and the claim; and (4) objective indicia of non-obviousness, sometimes referred to as "secondary considerations."  *Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966).  To "determine whether there was an apparent reason to combine the known elements in the fashion claimed by the patent at issue," a court should "look to interrelated teachings of multiple patents; the effects of demands known to the design community or present in the marketplace; and the background knowledge possessed by a person having ordinary skill in the art."  *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 418 (2007). A patent may be obvious if, inter alia, there was a "known problem for which there was an obvious

solution encompassed by the patent's claims" or the combination of the patent's claims was

"obvious to try." *Id.* at 419-421. "[I]nherency may supply a missing claim limitation in an

obviousness analysis." *Par Pharm., Inc. v. TWI Pharms., Inc.*, 773 F.3d 1186, 1194-95 (Fed.

Cir. 2014). If the natural result flowing from practicing the teachings of a reference would result

in the claimed attribute, the reference renders the attribute obvious, even without expressly

reciting it. *Id.* at 1194.

Explanations of why the prior art renders the asserted claims obvious appear in the

attached Exhibits, which identify specifically where each limitation of each asserted claim is

found in each item of prior art.

| Exhibit | Asserted Patent | Prior Art |
|---------|-----------------|-----------|
| 1 | '932 patent | Alphatec '923, alone and in view of Nichols '408 and/or Garamszegi '687 |
| 2 | '932 patent | Jeon '781, alone and in view of Alphatec '923, Nichols '408, and/or Garamszegi '687 |
| 3 | '711 patent | Alphatec '923, alone and in view of Nichols '408 and/or Garamszegi '687 |
| 4 | '711 patent | Schlapfer '090, alone and in view of Garamszegi '687 |
| 5 | '866 patent | Alphatec '923, alone and in view of Schlapfer '090 and/or Nichols '408 |
| 6 | '866 patent | Schlapfer '090 in view of Nichols '408 |
| 7 | '866 patent | Jeon '781, alone and in view of Nichols '408 |
| 8 | '200 patent | Alphatec '923, alone and in view of Nichols '408 and/or Garamszegi '687 |
| 9 | '200 patent | Jeon '781, alone and in view of Alphatec '923, Nichols '408, and/or Garamszegi '687 |
| 10 | '444 patent | Alphatec '923, alone and in view of Garamszegi '687, and/or Nichols '408 |

| 11 | '444 patent | Jeon '781, alone and in view of Alphatec '923, Nichols '408, and/or Garamszegi '687 |
| 12 | '273 patent | Alphatec '923, alone and in view of Nichols '408 and/or Schlapfer '090 |
| 13 | '273 patent | Schlapfer '090, alone and in view of Nichols '408 |
| 14 | '273 patent | Jeon '781, alone and in view of Nichols '408 |
| 15 | '292 patent | Alphatec '923 |
| 16 | '292 patent | Schlapfer '090 |
| 17 | '292 patent | Justis '275 |
| 18 | '856 patent | Alphatec '923, alone and in view of Nichols '408 and/or Garamszegi '687. |
| 19 | '856 patent | Jeon '781, alone and in view of Alphatec '923, Nichols '408, and/or Garamszegi '687 |

In addition, the prior art identified above may provide background and context pertinent to the teachings, and may be indicative of the relevant state of the art and/or the knowledge of one of ordinary skill in the art at the time of invention of the Asserted Patents, such that it demonstrates, for example, the lack of invention between the asserted claims and the prior art, as well as teachings, suggestions, and motivations to combine. The prior art is exemplary only; it is not in any way intended to limit the scope of what one of ordinary skill in the art would have understood at the time of the alleged invention.

Certain prior art inherently or implicitly discloses features of the asserted claims. NuVasive reserves the right to rely on inherency and/or secondary documents to demonstrate the invalidity of the asserted claims based on the inherent or implicit disclosure in these cited prior art references. NuVasive may rely on any evidence, including expert testimony, to establish the express, implicit, or inherent disclosure of certain features of the prior art, or the knowledge of a person of ordinary skill in the art, to invalidate the asserted claims.

While NuVasive has identified at least one citation per element or limitation for each reference identified in the Exhibits, each and every disclosure of the same element or limitation in the same reference is not necessarily identified. Where NuVasive cites to figures in the prior art, it intends also to refer to and incorporate by reference the prior art's description of such figure. In an effort to focus the issues, NuVasive cites exemplary relevant portions of the identified references, even where a reference may contain additional disclosures for a particular claim element or limitation.

Many of the prior art references are related to, or counterparts of, patent applications and issued patents that contain substantially the same subject matter (*e.g.*, published U.S. patent applications, issued U.S. patents, and foreign applications or issued patents). Any citation to or quotation from any of these patent applications or patents, therefore, should be understood as encompassing any parallel citation to the same subject matter in other related or corresponding applications or patents.

### C. Obviousness-type Double Patenting

The Asserted Patents are invalid due to obviousness-type double patenting. The doctrine of obviousness-type double patenting prevents a patent applicant from artificially extending their period of exclusivity over the invention by filing multiple patents on the same invention. *In re Hubbell*, 709 F.3d 1140, 1145 (Fed. Cir. 2013) (the doctrine "prevent multiple infringement suits by different assignees asserting essentially the same patented invention"). Obviousness-type double patenting "prohibit[s] a party from obtaining an extension of the right to exclude through claims in a later patent that are not patentably distinct from claims in a commonly owned earlier patent." *Eli Lilly & Co. v. Barr Labs., Inc.*, 251 F.3d 955, 967 (Fed. Cir. 2001).

The test for whether a patent is invalid for obviousness-type double patenting involves two steps. First, the Court construes the claims of the challenged patent and the claims of the

reference patent and determines the differences. Second, the court determines whether those differences render the claims patentably distinct. *Sun Pharm. Indus., Ltd. v. Eli Lilly & Co.*, 611 F.3d 1381, 1385 (Fed. Cir. 2010). If the challenged claim is not patentably distinct from the reference claim, the challenged claim is invalid. *Id.*

The '866 patent, the '273 patent, and the '200 patent are invalid for obviousness-type double patenting over reference patent U.S. Patent No. 10,792,074. During prosecution, the '074 patent was terminally disclaimed over U.S. Patent Nos. 8,257,396 and 8,257,398, both to Dr. Jackson. The '396 patent and the '398 patent claim priority to a non-provisional application filed in August 2003, which means that their full statutory term ends in June 2023, before the full statutory term of the asserted '866 patent, '273 patent, and '200 patent. Claim charts summarizing the double patenting analysis for these patents are attached as Exhibits OTDP-1 ('866 patent), OTDP-2 ('273 patent), and OTDP-3 ('200 patent).

The '444 patent and the '856 patent are invalid for obviousness-type double patenting over reference patent U.S. Patent No. 10,335,200. During prosecution, the '074 patent was terminally disclaimed over U.S. Patent No. 8,696,711 to Dr. Jackson. The '711 patent claims priority to a non-provisional application filed in September 2006, which means that its full statutory term ends in September 2026, before the full statutory term of the asserted '444 patent and '856 patent. Claim charts summarizing the double patenting analysis for these patents are attached as Exhibits OTDP-4 ('444 patent) and OTDP-5 ('856 patent).

### D. Invalidity by Failure to Meet Written Description Requirement (35 U.S.C. § 112, first paragraph)

A patent's specification must contain a written description of the claimed invention. 35 U.S.C. § 112, first paragraph. To meet the written description requirement, the specification must reasonably convey that the inventor(s) in fact invented what is claimed. *Ariad Pharms.,*

*Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (en banc). The assessment of compliance with the written description requirement is "an objective inquiry into the four corners of the specification from the perspective of a person of ordinary skill in the art." *Id.*

NuVasive asserts that certain of the Asserted Claims are invalid for failure to meet the written description requirement because the following claim terms are not supported by the written description of the patent specification in which they appear:

| Asserted Patent | Claim Term(s) Lacking Written Description Support |
|---|---|
| '292 patent | "a central opening extending entirely through the anchor member . . ." (claim 1) <br><br> "wherein when the anchor member and head member are coupled together, the cannulated polyaxial bone anchor assembly is insertable over a guide wire as a fully assembled unit and implantable into the bone with only the stabilization member and the closure remaining to be inserted into the head member channel." (claim 1) <br><br> "a central opening extending to a top and a bottom of the bone screw . . ." (claim 25) <br><br> "wherein when the bone screw and head member are coupled together, the bone screw and head member are insertable together over a guide wire and implantable into the bone with only the stabilization member and the closure component remaining to be inserted into the head member channel" (claim 25) |

| | |
|---|---|
| '856 patent | "side outer surfaces opposite the interior surfaces extending downward across the base toward a bottom of the receiver" (claim 1); "a non-threaded radiused tool engagement groove extending horizontally and circumferentially entirely around the side outer surface" (claim 1) |

## III.     Conclusion

For the reasons described herein and in the attached exhibits, NuVasive contends that all of the Asserted Claims of the Asserted Patents are invalid.

Dated: November 7, 2022                    Respectfully submitted,

OF COUNSEL:                                MCCARTER & ENGLISH, LLP

Colin G. Cabral                            /s/ *Alexandra M. Joyce*
James R. Anderson                          Daniel M. Silver (#4758)
PROSKAUER ROSE LLP                         Alexandra M. Joyce (#6423)
One International Place                     Renaissance Centre
Boston, MA 02110                           405 N. King Street, 8th Floor
(617) 526-9600                             Wilmington, Delaware 19801
ccabral@proskauer.com                      (302) 984-6300
jaanderson@proskauer.com                   dsilver@mccarter.com
                                           ajoyce@mccarter.com
Jessica M. Griffith
PROSKAUER ROSE LLP                         *Counsel for Defendant NuVasive, Inc.*
2029 Century Park East, Suite 2400
Los Angeles, CA 90067
(310) 557-2900
jgriffith@proskauer.com

# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SK INNOVATION CO., LTD., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 19-1637-CFC-SRF |
| | ) | |
| LG CHEM, LTD., LG CHEM MICHIGAN | ) | **UNDER SEAL** |
| INC., and LG ELECTRONICS INC. | ) | |
| | ) | |
| Defendants. | ) | |
| ———————————————— | ) | |
| | ) | |
| LG CHEM, LTD. and LG CHEM | ) | |
| MICHIGAN INC., | ) | |
| | ) | |
| Counterclaim Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SK INNOVATION CO., LTD., | ) | |
| | ) | |
| Counterclaim Defendant. | ) | |
| ———————————————— | ) | |

## REPORT AND RECOMMENDATION

## I.     INTRODUCTION

Presently before the court in this patent infringement action are: (1) plaintiff SK Innovation Co., Ltd.'s ("SKI") motion to strike LG Chem, Ltd. and LG Chem Michigan, Inc.'s (together, "LG Chem") sixth affirmative defense of unclean hands, (D.I. 17); and (2) LG Chem's motion for leave to file a surreply brief, (D.I. 68).[1]  (D.I. 17)  For the following reasons, I

---

[1] The briefing and other filings associated with the pending motion to strike are found at D.I. 18, D.I. 26, D.I. 27, D.I. 29, D.I. 40, D.I. 49, and D.I. 50.  The briefing and other filings associated with the pending motion for leave to file a surreply brief are found at D.I. 68, D.I. 76, D.I. 77, D.I. 78, D.I. 82, and D.I. 83.

recommend that the court GRANT SKI's motion to strike LG Chem's affirmative defense of unclean hands, without prejudice to LG Chem to seek leave to amend. I further recommend that the court GRANT LG Chem's motion for leave to file a surreply brief.

## II.   BACKGROUND

On September 3, 2019, SKI filed a complaint in this case against LG Chem and LG Electronics, Inc. ("LGE;" together with LG Chem, "Defendants") asserting infringement of United States Patent Number 9,698,398 ("the '398 patent"). (D.I. 1) The '398 patent, entitled "Secondary Battery Module," identifies Ming Zhe Kong as the sole inventor and SKI as the assignee. (D.I. 1, Ex. 1 at 1) The application leading to the '398 patent received its first office action in August 2016, and the patent issued in July 2017. (D.I. 27, Ex. I at 1; D.I. 1, Ex. 1) The '398 patent is directed to a secondary battery module designed to prevent electrical shocks or short-circuiting in electric vehicles ("EVs"). (D.I. 1, Ex. 1 at Abstract) The '398 patent claims priority to a Korean patent application filed on November 20, 2012 and a subsequent PCT application filed on November 20, 2013. (D.I. 1, Ex. 1 at 1)

In this case, SKI alleges that Defendants infringe the '398 patent by producing secondary battery cells, modules, and packs, including the VISTA 2.0 Cell Module, and selling those products to General Motors for use in the Chevrolet Bolt. (D.I. 1 at ¶¶ 18, 26-31) On November 25, 2019, LG Chem and LGE separately filed their answers, affirmative defenses, and counterclaims. (D.I. 9; D.I. 10) LGE's sixth affirmative defense includes estoppel, waiver, implied waiver, and/or acquiescence. (D.I. 10 at 8) LG Chem's sixth affirmative defense is nearly identical to the one asserted in LGE's pleading, but it also includes the affirmative defense of unclean hands. (D.I. 9 at 8) SKI answered LG Chem's counterclaims and filed its motion to strike the affirmative defense of unclean hands on December 23, 2019. (D.I. 17, D.I. 19)

LG Chem's affirmative defense of unclean hands references its trade secret misappropriation action against SKI before the International Trade Commission ("ITC"), entitled *Certain Lithium Ion Batteries, Battery Cells, Battery Modules, Battery Packs, Components Thereof, and Processes Therefore*, Inv. No. 337-TA-1159 ("the 1159 Action"), which was filed on April 29, 2019.  (D.I. 9 at 8)  Specifically, LG Chem's pleading cites its Motion for Default Judgment filed in the 1159 Action on November 5, 2019, which states that "SKI has misappropriated LGC's intellectual property, including its trade secrets, and engaged in a cover-up of such misconduct by . . . withholding, hiding, altering, fabricating, or destroying evidence." (*Id.*)

In support of LG Chem's allegations of spoliation, the Motion for Default Judgment describes how SKI "sent spreadsheets containing lists of files for deletion to seventy-five different teams at SKI."  (D.I. 27, Ex. B at 3)  Briefing on the Motion for Default Judgment also refers to an April 16, 2019 email encouraging recipients to perform a "[d]ocument security inspection review . . . to prevent in advance problematic issues should a legal dispute arise with a competitor."[2]  (*Id.*, Ex. E at 5)  A subsequent April 30, 2019 email discussed in the briefing

---

[2]Generally, a district court ruling on a Rule 12(f) motion to strike cannot consider matters outside of the pleadings.  *See Bishop v. JP Morgan Chase & Co.*, C.A. No. 13-001-RGA, 2014 WL 1382393, at *3 (D. Del. Apr. 7, 2014) (motions to strike under Rule 12(f) are generally decided "on the basis of the pleadings alone.") (quoting *DeLa Cruz v. Piccardi Press*, 521 F. Supp. 2d 424, 429 (E.D. Pa. 2007)).  Here, however, LG Chem's affirmative defense of unclean hands incorporates by reference its Motion for Default Judgment in the 1159 Action.  (D.I. 9 at 8) Citing *Williams v. Ponik*, C.A. No. 15-1050-CCC-JBC, 2015 WL 8513869, at *3 (D.N.J. Dec. 10, 2015), SKI argues that LG Chem's incorporation by reference of the Motion for Default Judgment in the 1159 Action does not satisfy the specificity requirements of Rule 9(b).  (D.I. 18 at 7)  Aside from this argument regarding the level of specificity in the body of the pleading itself, SKI does not otherwise challenge the court's consideration of publicly available briefing from the 1159 Action in the context of a Rule 12(f) motion to strike.  (*See generally* D.I. 18; D.I. 29)

specifically refers to the "LG Chem lawsuit matter" and instructs recipients to "[d]elete every

material related to the rival company from every single individual's PC, mail storage archives

and team rooms.  ASAP.  Make sure to especially scrutinize [Respondent] SKBA.  PCs may

even be subject to seizure and examination.  Delete this email after completing this directive."

(*Id.* at 6-7)

The complaint and the briefing on the Motion for Default Judgment in the 1159 Action

also outline the factual underpinnings for LG Chem's allegations of trade secret

misappropriation.  (D.I. 27, Exs. B & H)  These documents allege that, between 2016 and 2018,

SKI recruited a number of former LG Chem employees who then disclosed LG Chem's trade

secrets to SKI.  (*Id.*, Ex. H at ¶¶ 4-5; Ex. B at 6)  This trade secret information allegedly included

LG Chem's electric vehicle battery design and research and development.  (*Id.*, Ex. H at ¶¶ 5-8)

Since January 2020, LG Chem has sought the production of all confidential briefing and

exhibits regarding the Motion for Default Judgment filed in the 1159 Action, as well as 75 SKI

spreadsheets, to show the extent of SKI's destruction of evidence.  (D.I. 22; D.I. 26 at 4 n.6; D.I.

68 at 2)  SKI did not produce documents responsive to LG Chem's requests for production

within the briefing period for the motion to strike, arguing that there was no nexus between the

destruction of evidence alleged in the 1159 Action and the '398 patent at issue in the present

litigation.  (D.I. 27, Ex. D; D.I. 18 at 7-10; D.I. 29 at 2-6)  SKI subsequently responded to LG

Chem's document requests on April 10, 2020, producing seven spreadsheets listing files marked

for deletion.  (D.I. 54; D.I. 68, Ex. A at 1-2)  LG Chem alleges that the documents produced on

April 10 show SKI investigated LG Chem's secondary battery module and LG Chem's proposed

solutions to technical problems in the '398 patent.  (*Id.*)  Accordingly, LG Chem moves for leave

to file a surreply to discuss the significance of these newly disclosed documents to its affirmative defense of unclean hands.  (D.I. 68)

III.    **LEGAL STANDARD**

Rule 12(f) permits "[t]he court [to] strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  "Immaterial matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded."  *Del. Health Care, Inc. v. MCD Holding Co.*, 893 F. Supp. 1279, 1291-92 (D. Del. 1995).  "Impertinent matter consists of statements that do not pertain, and are not necessary, to the issues in question."  *Id.* at 1292.  Scandalous matter is "that which improperly casts a derogatory light on someone, most typically on a party to the action."  *Aoki v. Benihana, Inc.*, 839 F. Supp. 2d 759, 764 (D. Del. 2012) (quoting *Carone v. Whalen*, 121 F.R.D. 231, 233 (M.D. Pa. 1988)).  But even when the challenged material is redundant, immaterial, impertinent, or scandalous, a motion to strike should not be granted unless the material will prejudice the adverse party.  *Symbol Techs., Inc. v. Aruba Networks, Inc.*, 609 F. Supp. 2d 353, 359 (D. Del. 2009) (internal quotations omitted).

The court must construe all facts in favor of the nonmoving party and deny the motion to strike unless the defense is clearly insufficient as a matter of law.  *Id.* at 356 (citing *Procter & Gamble Co. v. Nabisco Brands, Inc.*, 697 F. Supp. 1360, 1362 (D. Del. 1988)).  "A decision to grant or deny a motion to strike a pleading is vested in the trial court's discretion," but motions to strike under Rule 12(f) are generally disfavored.  *Aoki*, 839 F. Supp. 2d at 764 (internal citations and quotation marks omitted); *Fesnak & Assocs., LLP v. U.S. Bank Nat'l Ass'n*, 722 F. Supp. 2d 496, 502 (D. Del. 2010).  As a result, they "ordinarily are denied 'unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties.' "  *Sun*

*Microsystems, Inc. v. Versata Enters., Inc.*, 630 F. Supp. 2d 395, 402 (D. Del. 2009) (quoting *McInerney v. Moyer Lumber and Hardware, Inc.*, 244 F. Supp. 2d 393, 402 (E.D. Pa. 2002)).

## IV.   ANALYSIS

### A.  Motion to Strike Affirmative Defense of Unclean Hands

The doctrine of unclean hands applies when "(1) a party seeking affirmative relief (2) is guilty of conduct involving fraud, deceit, unconscionability, or bad faith (3) directly related to the matter in issue (4) that injures the other party (5) and affects the balance of equities between the litigants." *Sun Microsystems*, 630 F. Supp. 2d at 410 (quoting *Castle v. Cohen*, 676 F. Supp. 620, 627 (E.D. Pa. 1987)).  The alleged conduct "must have an immediate and necessary relationship to the equity which [the plaintiff] seeks to obtain in the matter in litigation." *Id.* (quoting *Blanchette v. Providence & Worcester Co.*, 428 F. Supp. 347, 357 (D. Del.1977)).  "A defense of unclean hands may be based on fraudulent conduct, but it need not be so." *AbbVie Inc. v. Boehringer Ingelheim Int'l GmbH*, C.A. No. 17-1065-MSG-RL, 2018 WL 2604825, at *1 (D. Del. June 4, 2018) (quoting *Gilead Sciences, Inc. v. Merck & Co., Inc.*, 888 F.3d 1231, 1239 (Fed. Cir. 2018)).

#### 1.  Applicability of Rule 9(b)

As a preliminary matter, the parties dispute whether the heightened Rule 9(b) standard applies to LG Chem's unclean hands defense.  SKI contends that, because LG Chem's unclean hands defense sounds in fraud, it is an equitable defense requiring application of the heightened pleading standard under Rule 9(b).  (D.I. 18 at 6)  In response, LG Chem alleges Rule 9(b) does not apply because the unclean hands defense is based on allegations of SKI's egregious misconduct, including trade secret misappropriation and spoliation of evidence, and it does not

assert a fraud-based defense requiring a showing of scienter.  (D.I. 26 at 10-11)  In a footnote, LG Chem further argues that "[a] defense under Rule 8(b) requires only a short and plain term statement putting SKI on notice of LGC's defenses, as opposed to an affirmative claim or counterclaim where a party must meet *Twombly/Iqbal*."  (*Id.* at 11 n.9)

Rule 8(c), which requires that a defendant "affirmatively state any . . . affirmative defense," governs the pleading standard for affirmative defenses.  Fed. R. Civ. P. 8(c); *see Masimo Corp. v. Philips Elec. N. Am. Corp.*, C.A. No. 09-80-LPS, 2015 WL 2406155, at *4 (D. Del. May 18, 2015) (explaining that Rule 8(c) does not require a statement "showing that the [defendant] is entitled to" judgment on the affirmative defense).  Accordingly, courts in this district have routinely held that the *Twombly/Iqbal* standard under Rule 8(a) applies only to claims, counterclaims, and crossclaims.  It does not extend to affirmative defenses, "which need not be plausible to survive" so long as they "provide fair notice of the issue involved."  *Senju Pharm. Co. v. Apotex, Inc.*, 921 F. Supp. 2d 297, 303 (D. Del. 2013) (internal citations and quotation marks omitted); *see also Masimo*, 2015 WL 2406155, at *4; *Bayer CropScience AG v. Dow AgroSciences LLC*, C.A. No. 10-1045-RMB, 2011 WL 6934557, at *4 (D. Del. Dec. 30, 2011).

Rule 9(b) requires a party to "state with particularity the circumstances constituting fraud or mistake" in a pleading, without drawing a distinction between an affirmative defense and a claim or counterclaim.  Fed. R. Civ. P. 9(b).  Affirmative defenses sounding in fraud are therefore subject to the heightened pleading standard of Rule 9(b), which requires pleading with particularity the "specific who, what, when, where, and how" of the alleged fraud.  *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1328-29 (Fed. Cir. 2009); *see Bakery & Confectionary Union & Indus. Int'l Pension Fund v. Just Born II, Inc.*, 888 F.3d 696, 704 (4th

Cir. 2018) (explaining that "defendants must satisfy Rule 9(b) when they plead affirmative defenses sounding in fraud."). An affirmative defense of unclean hands may be based on fraudulent conduct, or it may instead be based on allegations of bad faith or unconscionability. *See AbbVie*, 2018 WL 2604825, at *1. When an affirmative defense of unclean hands is rooted in fraudulent conduct, the pleading must satisfy the Rule 9(b) standard. *See Sonos, Inc. v. D&M Holdings Inc.*, C.A. No. 14-1330-RGA-MPT, 2016 WL 4249493, at *5 (D. Del. 2016).

I recommend that the court apply the heightened pleading standard of Rule 9(b) to LG Chem's unclean hands defense. The pleading alleges that "SKI's claims are barred by the doctrine of unclean hands because . . . SKI has misappropriated LGC's intellectual property, including its trade secrets, and engaged in a cover-up of such misconduct by, *inter alia*, intentionally, recklessly, and/or negligently withholding, hiding, altering, fabricating, or destroying evidence." (D.I. 9 at 8) By invoking SKI's state of mind in its allegation that SKI intentionally covered up evidence of its misconduct, LG Chem has pleaded an unclean hands defense sounding in fraud. *See Ferron v. SubscriberBase Holdings, Inc.*, 2009 WL 650731, at *5 (S.D. Ohio Mar. 11, 2009) (construing a "spoliation claim as one for a fraudulent concealment of evidence, which sounds in fraud and invokes the pleadings requirement of Rule 9(b).").

### 2.   Sufficiency of Notice

SKI contends that LG Chem's pleading fails to provide adequate notice of its unclean hands defense because it does not identify the "who, what, when, where, and how" of the alleged conduct as required under Rule 9(b). (D.I. 18 at 7) According to SKI, LG Chem's reliance on its citation of the 1159 Action to provide details not contained in the pleading itself is insufficient to plead the affirmative defense, regardless of the proper pleading standard. (*Id.*)

In response, LG Chem contends that its pleading provides adequate notice of SKI's alleged misconduct by describing SKI's destruction of evidence and incorporating by reference the briefing in the 1159 Action, which quoted instructions sent to SKI employees ordering them to delete emails in anticipation of litigation with LG Chem.  (D.I. 26 at 12-13)  According to LG Chem, SKI should know that the inventor of the '398 patent was likely among those SKI employees receiving the instructions to delete emails.  (*Id.* at 14)

LG Chem's pleading provides adequate notice to SKI of the basis for the affirmative defense of unclean hands.  The affirmative defense provides that

> SKI's claims are barred by the doctrine of unclean hands because, for example, SKI has misappropriated LGC's intellectual property, including its trade secrets, and engaged in a cover-up of such misconduct by, inter alia, intentionally, recklessly, and/or negligently withholding, hiding, altering, fabricating, or destroying evidence. See Certain Lithium Ion Batteries, Battery Cells, Battery Modules, Battery Packs, Components Thereof, and Processes Therefore, Inv. No. 337-TA-1159, EDIS Dkt. No. 694160 (LG Chem's motion for default judgment) at 26 (U.S.I.T.C., Nov. 5, 2019) (quoting e-mail instructing SKI team members to "[d]elete every material related to [LG Chem]" and to "[d]elete this email after completing this directive").

(D.I. 9 at 8)  The pleading specifically references and quotes from the April 30, 2019 email to SKI employees instructing them to delete evidence regarding LG Chem.  (*Id.*)  The affirmative defense incorporates by reference the Motion for Default Judgment filed in the 1159 Action, which provides additional details regarding the April 30, 2019 email and other previous and subsequent emails specifically related to LG Chem's lawsuit urging the destruction of evidence.  (D.I. 27, Ex. B at 2-4)  These allegations, based on documents within SKI's possession, are sufficient to put SKI on notice of the basis for LG Chem's affirmative defense of unclean hands.

9

### 3.  Sufficiency of Nexus

SKI further alleges that LG Chem's unclean hands defense does not accuse SKI of misappropriating the technology claimed in the '398 patent, and the lack of a nexus between SKI's alleged misappropriation of trade secrets or spoliation of evidence and the '398 patent is fatal to the defense.  (D.I. 18 at 7-8)  The misconduct forming the basis for an affirmative defense of unclean hands must be directly related to a matter at issue in the litigation.  *See Sonos*, 2016 WL 4249493, at *5; *see also Scherer Design Grp., LLC v. Ahead Eng'g LLC*, 764 F. App'x 147, 151 (3d Cir. 2019) ("For the unclean hands doctrine to apply, 'there must be a relationship between the inequitable conduct and the claims brought before the court.'") (quoting *In re New Valley Corp.*, 181 F.3d 517, 525 (3d Cir. 1999)).  LG Chem does not dispute that a nexus between the misconduct and the claim is required, but it alleges that the nexus need only be "close."  (D.I. 26 at 14-15)  However, the Third Circuit has explained that the nexus must be "direct," and the conduct must have an "immediate and necessary relation" to the equity sought. *Scherer Design*, 764 F. App'x at 151.

With respect to the spoliation allegations, LG Chem alleges that the timing and scope of the April 30, 2019 email establish a nexus with the '398 patent because the record suggests SKI anticipated a lawsuit by LG Chem when the email was sent, and the inventor of the '398 patent was a likely recipient of the email.  (D.I. 26 at 15-16)  But LG Chem has not specifically alleged that any of the files marked for deletion were related to the '398 patent, and its speculative assertion that the inventor of the '398 patent destroyed evidence in response to the April 30, 2019 email is contradicted by unrefuted evidence that the inventor has not been employed by SKI since January 2017.  (D.I. 29, Ex. A at ¶ 3)  LG Chem's sixth affirmative defense of unclean hands therefore fails to establish a plausible relation between the alleged spoliation and the

controversy regarding the '398 patent.  *Cf. Sun Microsystems*, 630 F. Supp. 2d at 410 (finding

sufficient nexus between defendant's unclean hands defense and infringement litigation where

affirmative defense was based on allegations that defendant had a license to the specific patent-

in-suit).

LG Chem also alleges that a nexus exists between the trade secret misappropriation

allegations and the '398 patent because SKI allegedly poached LG Chem employees to obtain

trade secrets between 2016 and 2018, coinciding with the prosecution of the U.S. patent

application leading to the '398 patent.  (D.I. 26 at 16-17)  But the face of the '398 patent

establishes that the application originated from a Korean application filed in November 2012,

followed by a PCT application in November 2013.  ('398 patent)  Thus, any trade secrets

divulged by former LG Chem employees between 2016 and 2018 could not plausibly inform the

drafting and filing of the application leading to the issuance of the '398 patent.[3]  As pleaded, LG

Chem's affirmative defense of unclean hands based on alleged trade secret misappropriation

lacks a sufficient nexus to the '398 patent.

To prevail on its motion to strike, SKI must demonstrate the prejudice it will suffer as a

result of the lack of a connection between the '398 patent and the allegations of trade secret

misappropriation and spoliation.  *See XpertUniverse, Inc. v. Cisco Sys., Inc.*, 868 F. Supp. 2d

376, 383–84 (D. Del. 2012) (concluding that a plaintiff moving to strike an affirmative defense

---

[3] LG Chem also argues that, "[i]f SKI relies its own products, then only with discovery would
LGC know whether SKI has used illegally acquired LGC technology, which included design and
R&D information, to produce [such] SKI electric vehicle battery products."  (D.I. 26 at 17)
(internal citations and quotation marks omitted).  This argument has since been resolved by
SKI's disclosures under paragraph 3(g) of the scheduling order.  In its disclosures, which were
served on February 21, 2020, SKI represented that it does not practice the claimed invention of
the '398 patent.  (D.I. 58, Ex. 1 at 8)  The disclosures show that SKI made prototypes for a
secondary battery module that practiced the claimed invention between 2016 and 2018, but the
prototype project was discontinued in 2018.  (*Id.*)

11

of unclean hands must show prejudice even if the challenged material otherwise meets the Rule 12(f) criteria); *Fesnak & Assocs.*, 722 F. Supp. 2d at 502 ("[E]ven where the challenged material is redundant, immaterial, impertinent, or scandalous, a motion to strike should not be granted unless the presence of the surplusage will prejudice the adverse party.") (quoting *Symbol Techs.*, 609 F. Supp. 2d at 359). SKI argues that the unclean hands defense will "distract from the issues in this case and open up discovery on alleged misconduct that is currently being litigated in the 1159 Case before the ITC and has no relevance to the patent claim at issue here." (D.I. 18 at 9) To the extent that the alleged trade secret misappropriation and spoliation bear no specific relationship to the '398 patent as pleaded in LG Chem's affirmative defense of unclean hands, SKI has adequately alleged prejudice.

The notices of subsequent authority filed by LG Chem, which attached decisions from the ITC in the 1159 Action, do not remedy these deficiencies. (D.I. 40; D.I. 49) The subsequent authority does not draw a connection between the '398 patent and the alleged trade secret misappropriation and spoliation. (*Id.*) For the foregoing reasons, I recommend that the court grant SKI's motion to strike LG Chem's affirmative defense of unclean hands.

### B. Motion for Leave to File Surreply

Local Rule 7.1.2 provides that, "[e]xcept for the citation of subsequent authorities, no additional papers shall be filed absent Court approval." D. Del. LR 7.1.2(b). Courts in this district have construed the Local Rule to permit the filing of a surreply "if it responds to new evidence, facts, or arguments." *Novartis AG v. Actavis, Inc.*, 243 F. Supp. 3d 534, 540 (D. Del. 2017) (citing *St. Clair Intellectual Prop. Consultants, Inc. v. Samsung Elecs. Co. Ltd.*, 291 F.R.D. 75, 80 (D. Del. 2013)).

The record before the court establishes that SKI produced certain spreadsheets on April 10, 2020, months after the completion of briefing on the motion to strike, and these spreadsheets identified specific files marked for deletion in connection with SKI's alleged spoliation of evidence.  (D.I. 68 at 3; Ex. A at Exs. 1 & 4)  SKI does not contest the authenticity or factual validity of the spreadsheets in its response to the motion for leave to file a surreply, focusing instead on their lack of relevance to the unclean hands defense.  (D.I. 76 at 1) ("The Motion for Leave should be denied as futile because the proposed surreply fails to provide any support for LGC's unclean hands defense.").  Because LG Chem did not have a full opportunity to address the contents of this newly produced evidence in its responsive brief, leave to file the proposed surreply brief should be granted.  *See Belden Techs., Inc. v. LS Corp.*, C.A. No. 08-823-SLR, 2010 WL 11205228, at *1 (D. Del. July 14, 2010) (granting leave to file a surreply where defendants challenged only the relevance, not the authenticity, of the newly produced documents).[4]

The surreply brief does not alter the outcome of SKI's motion to strike because the evidence discussed in LG Chem's surreply has not been incorporated into LG Chem's affirmative defense of unclean hands.  But for the reasons set forth at § IV.C, *infra*, LG Chem's surreply brief supports its alternative request for leave to amend the pleading.

---

[4] SKI accuses LG Chem of offering entirely new theories of trade secret misappropriation and spoliation in its proposed surreply brief.  (D.I. 76 at 1)  But LG Chem has consistently maintained that SKI misappropriated LG Chem's trade secrets and destroyed evidence relating to the '398 patent.  LG Chem should not be precluded from modifying its arguments in response to newly produced evidence supporting the broader theories of spoliation and trade secret misappropriation where, as here, SKI had an opportunity to substantively respond to the arguments set forth in LG Chem's proposed surreply brief.  (D.I. 76 at 2-7); *cf. Chambers v. Doe*, 453 F. Supp. 2d 858, 861 n.3 (D. Del. 2006) (granting defendants' motion to strike surreply brief where defendants did not have a "full opportunity to explore and address the arguments" not raised in plaintiff's answering brief).

### C.  Leave to Amend

LG Chem requests leave to amend its affirmative defense of unclean hands.  (D.I. 26 at 19-20)  I recommend that the court grant LG Chem's alternative request to file a proposed amended pleading incorporating new evidence and establishing a nexus between the alleged misconduct and the '398 patent.  The deadline for amended pleadings does not expire until August 2020.  (D.I. 24 at ¶ 8)  The evidence and arguments presented in LG Chem's surreply brief, taken as true, appear likely to support a plausible connection between the subject matter of the '398 patent and the allegations of trade secret misappropriation and spoliation if incorporated into a proposed amended pleading consistent with D. Del. LR 15.1.[5]

## V.      CONCLUSION

For the foregoing reasons, I recommend that the court GRANT SKI's motion to strike LG Chem's affirmative defense of unclean hands, without prejudice to LG Chem to seek leave to amend the pleading.  (D.I. 17)  I recommend that the court GRANT LG Chem's motion for leave to file a surreply brief.  (D.I. 68)

---

[5] SKI alleges that amendment would be futile.  (D.I. 18 at 9-10; D.I. 29 at 8; D.I. 76 at 3-4)  In the absence of a proposed amended pleading, the court cannot properly determine whether a proposed amendment would be futile under Rule 15(a).  "An amendment is futile if the *proposed pleading* could not withstand a motion to dismiss."  *McNeil v. Metzger*, C.A. No. 16-1083-CFC, 2020 WL 1154914, at *9 (D. Del. Mar. 10, 2020) (emphasis added) (citing *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 278 (3d Cir. 2018)).  The record presently before the court suggests that LG Chem should be given the opportunity to seek relief under Rule 15(a).  For example, LG Chem explains that the newly produced spreadsheets instructed SKI employees to destroy files dating back to 2010, before the application for the '398 patent was filed, referring to SKI's investigation of the secondary battery module used in the first-generation Chevrolet Volt.  (D.I. 68, Ex. A at 3-4; Ex. A at Ex. 1)  The file names identified on the spreadsheet and other evidence attached to LG Chem's surreply brief confirm that LG Chem collaborated with General Motors on the battery technology for the first-generation Chevrolet Volt, (D.I. 68, Ex. A at Ex. 1, Ex. 7 at LGC  DE-0017014), and LG Chem's invalidity contentions cite the first-generation Chevrolet Volt battery technology as prior art to the '398 patent, (D.I. 68, Ex. A at Ex. 2 at 15).  In this regard, it is feasible for the deficiencies in LG Chem's unclean hands defense to be remedied in an amended pleading.

Given that the court has relied upon material that technically remains under seal, the court is releasing this Report and Recommendation under seal, pending review by the parties. In the unlikely event that the parties believe that certain material in this Report and Recommendation should be redacted, the parties shall jointly submit a proposed redacted version by no later than **July 31, 2020**, for review by the court, along with a motion supported by a declaration that includes a clear, factually detailed explanation as to why disclosure of any proposed redacted material would "work a clearly defined and serious injury to the party seeking closure." *See In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*, 924 F.3d 662, 672 (3d Cir. 2019) (quoting *Miller v. Ind. Hosp.*, 16 F.3d 549, 551 (3d Cir. 1994) (internal quotation marks omitted)). If the parties do not file a proposed redacted version and corresponding motion, or if the court determines the motion lacks a meritorious basis, the documents will be unsealed within thirty (30) days of the date the Report and Recommendation issued.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The objection and responses to the objections are limited to ten (10) pages each. The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the District Court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987).

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R.

Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website,

http://www.ded.uscourts.gov.


Dated:  July 24, 2020

_____
Sherry R. Fallon
United States Magistrate Judge