IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ROGER P. JACKSON, M.D., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 21-53-RGA |
| | ) | |
| NUVASIVE, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

Presently before the court in this patent infringement action is the motion of plaintiff Roger P. Jackson, M.D. ("Plaintiff") to dismiss defendant NuVasive, Inc.'s ("NuVasive") inequitable conduct counterclaim for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) and to strike NuVasive's equitable affirmative defenses under Federal Rule of Civil Procedure 12(f). (D.I. 96)[1] For the following reasons, I recommend that the court GRANT Plaintiff's partial motion to dismiss without prejudice and GRANT Plaintiff's motion to strike.

**I.   BACKGROUND**

Plaintiff brought this lawsuit on January 19, 2021. (D.I. 1) On October 21, 2022, Plaintiff filed a second amended complaint ("SAC"), asserting causes of action for infringement of U.S. Patent Nos. 8,353,932 ("the '932 patent"), 8,696,711 ("the '711 patent"), 9,788,866 ("the '866 patent"), 10,335,200 ("the '200 patent"), 10,561,444 ("the '444 patent"), 10,722,273 ("the '273 patent"), 9,808,292 ("the '292 patent"), and 11,051,856 ("the '856 patent;" collectively, the

---

[1] The briefing associated with the pending motion to dismiss and strike is found at D.I. 97, D.I. 103, and D.I. 104.

"Asserted Patents"). (D.I. 77) The eight Asserted Patents generally relate to spinal implant systems composed of separately inserted components used to fixate or align a patient's vertebrae. (*Id.*)

NuVasive filed its answer and counterclaims to the SAC on December 5, 2022. (D.I. 89) NuVasive's fifth counterclaim for inequitable conduct alleges that Plaintiff failed to disclose two prior art references with the intent to deceive the U.S. Patent and Trademark Office ("USPTO") during prosecution of the Asserted Patents: U.S. Patent No. 7,377,923 (the "Purcell reference"), and U.S. Patent No. 8,876,869 (the "Schafer reference"). (*Id.* at ¶¶ 112-13)

The Purcell reference was filed on May 19, 2004 as U.S. Patent Application No. 10/848,946 ("the '946 application"), which was originally published as U.S. Patent Application Publication No. 2004/0236330 A1 ("the '330 publication"). (*Id.* at ¶ 57) The Purcell reference claims priority to Provisional Application No. 60/527,060, filed on December 4, 2003, and Provisional Application No. 60/472,578, filed on May 22, 2003. (*Id.*) The invention claims "[a] spinal screw assembly providing an adjustable securement of a fixation rod across at least two vertebrae." (*Id.* at ¶ 58)

NuVasive's counterclaims allege that Plaintiff included the '330 publication in an Information Disclosure Statement ("IDS") dated August 18, 2008 in connection with the prosecution of the application leading to the issuance of the '932 patent. (*Id.* at ¶ 59) Plaintiff also entered into a license agreement with the assignee of the Purcell reference on July 1, 2016 (the "Alphatec Agreement") that gave Plaintiff the right to prosecute continuation and continuation-in-part applications that claim priority from the '946 application. (*Id.* at ¶¶ 60, 63) However, Plaintiff did not disclose the Purcell reference during prosecution of the '866 and '292 patents. (*Id.* at ¶ 65)

2

The Schafer reference was filed on December 5, 2011 as U.S. Patent Application No. 13/311,490 ("the '490 application") and claims priority to two continuation applications (U.S. Patent Application Nos. 13/019,933 and 12/820,136) and U.S. Provisional Application No. 61/218,864 ("the '864 provisional"), which was filed on June 19, 2009. (*Id.* at ¶ 68) Plaintiff was listed as an inventor of the '864 provisional when it was filed with the USPTO. (*Id.* at ¶ 70) The Schafer reference discloses a polyaxial bone screw assembly with a receiver assembly for engagement of a bone screw. (*Id.* at ¶ 69)

In its counterclaims, NuVasive alleges that correspondence from May and June of 2012 between NuVasive and Plaintiff's prosecution counsel discussed the '864 provisional and the non-provisional applications claiming priority to it. (*Id.* at ¶ 71) Nonetheless, neither Plaintiff nor his prosecution counsel disclosed the Schafer reference or the '864 provisional to the USPTO during prosecution of the Asserted Patents. (*Id.* at ¶ 73)[2]

## II. LEGAL STANDARDS

### A. Motion to Dismiss

When considering a Rule 12(b)(6) motion to dismiss, the court must accept as true all factual allegations in the pleading and view them in the light most favorable to the nonmovant. *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 790-91 (3d Cir. 2016). "Courts use the same standard in ruling on a motion to dismiss a counterclaim under Rule 12(b)(6) as they do in assessing a claim in a complaint." *Goddard Sys., Inc. v. Gondal*, C.A. No. 17-1003-CJB, 2018 WL 1513018, at *4 (D. Del. Mar. 27, 2018).

To state a claim upon which relief can be granted pursuant to Rule 12(b)(6), a complaint

---

[2] Paragraph 73 and NuVasive's answering brief refer to lack of disclosure of the Schafer reference during prosecution of "any" or "numerous" Asserted Patents, then specifically identify the '866, '292, '200, '444, and '856 patents. (D.I. 89 at ¶ 73; D.I. 103 at 15)

must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although detailed factual allegations are not required, the complaint must set forth sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). A claim is facially plausible when the factual allegations allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 663; *Twombly*, 550 U.S. at 555-56.

The court's determination is not whether the non-moving party "will ultimately prevail," but whether that party is "entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal citations and quotation marks omitted). This "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [the necessary element]." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). The court's analysis is a context-specific task requiring the court "to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 663-64.

### B. Motion to Strike

"Rule 12(b)(6) does not offer a mechanism for dismissing an affirmative defense." *Wyeth Holdings Corp. v. Sandoz, Inc.*, C.A. No. , 2012 WL 600715, at *4 (D. Del. Feb. 3, 2012). Instead, a court "may strike from a pleading an insufficient defense" under Rule 12(f). Fed. R. Civ. P. 12(f). Generally, motions to strike under Rule 12(f) are disfavored and "[a] court should not strike a defense unless the insufficiency is 'clearly apparent.'" *Fesnak & Assocs., LLP v. U.S. Bank Nat'l Ass'n*, 722 F. Supp. 2d 496, 502 (D. Del. 2010) (quoting *Cipollone v. Liggett*

*Grp., Inc.*, 789 F.2d 181, 188 (3d Cir. 1986)). However, "a court is not required to accept affirmative defenses that are mere bare bones conclusory allegations, and may strike such inadequately pleaded defenses." *Sun Microsystems, Inc. v. Versata Enters., Inc.*, 630 F. Supp. 2d 395, 408 (D. Del. 2009).

### III. DISCUSSION

Plaintiff moves to dismiss NuVasive's inequitable conduct counterclaim, which alleges that Plaintiff failed to disclose two material prior art references during prosecution of the '866, '292, '200, '444, and '856 patents. (D.I. 97 at 8-9) To prevail on the merits of an inequitable conduct claim based on a failure to disclose material information during prosecution of a patent application, "the accused infringer must prove by clear and convincing evidence that the applicant knew of the reference, knew it was material, and made a deliberate decision to withhold it." *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1290 (Fed. Cir. 2011). At the pleading stage, proof of these elements by clear and convincing evidence is not required. *See Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1329 n.5 (Fed. Cir. 2009). Nonetheless, the pleaded allegations must meet the particularity standard of Rule 9(b). *See id.* at 1328-29.

"[I]n pleading inequitable conduct in patent cases, Rule 9(b) requires identification of the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." *Exergen*, 575 F.3d at 1327. A viable claim must allege: "(1) knowledge of the withheld material information or of the falsity of the material misrepresentation, and (2) specific intent to deceive the PTO." *Id.* Knowledge and intent may be asserted generally, but the inequitable conduct claim must "recite[ ] facts from which the court may reasonably infer that a specific individual both knew of invalidating information that

5

was withheld from the PTO and withheld that information with a specific intent to deceive the PTO." *Delano Farms Co. v. Cal. Table Grape Comm'n*, 655 F.3d 1337, 1350 (Fed. Cir. 2011).

### A. The Purcell Reference

#### 1. Materiality

As a preliminary matter, Plaintiff correctly argues that NuVasive's pleading applies the wrong standard for materiality. (D.I. 97 at 9-10) Paragraph 111 of the inequitable conduct counterclaim states that "information is material to patentability" when it satisfies USPTO Rule 56. (D.I. 89 at ¶ 111) (quoting 37 C.F.R. § 1.56). But the Federal Circuit has explained that applying the USPTO rules to inequitable conduct claims resulted in "uncertainty and inconsistency in the development of the inequitable conduct doctrine" and set a low bar for materiality. *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1294-95 (Fed. Cir. 2011). The materiality required to establish inequitable conduct under Federal Circuit precedent is but-for materiality, which requires a showing that the USPTO would not have allowed the claim if it had been aware of the undisclosed prior art. *Id.* at 1291.

NuVasive's application of a materiality standard that was rejected by the Federal Circuit pervades the balance of its factual allegations regarding materiality, rendering those allegations deficient. The counterclaim describes the prior art Purcell reference by quoting from the Abstract of the reference: "[a] spinal screw assembly providing an adjustable securement of a fixation rod across at least two vertebrae." (D.I. 89 at ¶ 58) The pleading alleges that "[t]he specification and figures of the [Purcell reference] establish a *prima facie* case of the unpatentability of the Asserted Patents and are inconsistent with positions taken by [Plaintiff] during the prosecution of the Asserted Patents." (*Id.* at ¶ 64) These allegations fit squarely

6

within the parameters of USPTO Rule 56,[3] but they lack the requisite specificity to establish but-for materiality under *Therasense* and *Exergen*.

In contravention of the Federal Circuit's instruction in *Exergen*, the counterclaim fails to identify any specific claims or claim limitations in the '866 and '292 patents, let alone explain how the Purcell reference is relevant to those claims.[4] *See Exergen*, 575 F.3d at 1329. Without this information, it is not apparent how the Purcell reference establishes the unpatentability of the '866 and '292 patents. *Id.* (citing *Regents of Univ. of Cal. v. Eli Lilly & Co.*, 119 F.3d 1559, 1570 (Fed. Cir. 1997) ("Information is material if a reasonable examiner would have considered it important to the patentability of a *claim*.") (emphasis added)). Conclusory allegations that the Purcell reference is "highly material to the patentability of the Asserted Patents," without an explanation of how the Purcell reference is highly material, are insufficient to satisfy the heightened Rule 9(b) pleading standard for an inequitable conduct counterclaim. (*Id.* at ¶ 66)

In the answering brief, NuVasive draws a comparison between the Purcell reference and the preambles of claim 1 in each of the '292 and '866 patents. (D.I. 103 at 5) The answering brief also maintains that certain figures in the Purcell reference and the '292 and '866 patents "illustrate the significant overlap in disclosed subject matter." (*Id.*) But NuVasive's inequitable

---

[3] Under 37 C.F.R. § 1.56(b), information is material if it is not cumulative and:

   (1) It establishes, by itself or in combination with other information, a prima facie case of unpatentability of a claim; or
   (2) It refutes, or is inconsistent with, a position the applicant takes in:
      (i) Opposing an argument of unpatentability relied on by the [USPTO], or
      (ii) Asserting an argument of patentability.

[4] NuVasive suggests that "a detailed claim chart mapping the prior art to the asserted claims is unnecessary at the pleading stage." (D.I. 103 at 13) This recommendation should not be construed to require detailed claim charts at the pleading stage. But this does not excuse NuVasive from satisfying the standard set forth in *Exergen* more than a decade ago by identifying specific claims or claim limitations in the asserted patents that are met by the withheld reference and are otherwise absent from the prior art of record.

conduct counterclaim contains no such allegations. Putting aside the question of whether identification of isolated words from the preambles can satisfy the *Exergen* standard, "[i]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988); *see Frederico v. Home Depot*, 507 F.3d 188, 202 (3d Cir. 2007).

The pleading also fails to allege that the prior art of record during prosecution of the '866 and '292 patents did not teach key elements found in the Purcell reference. "Such allegations are necessary to explain both 'why' the withheld information is material and not cumulative, and 'how' an examiner would have used this information in assessing the patentability of the claims." *Exergen*, 575 F.3d at 1329-30. Although NuVasive is not required to use the term "non-cumulative," the pleading must allege facts supporting "why" and "how" the Purcell reference is material to the patentability of the '866 and '292 patents. *Analog Devices, Inc. v. Xilinx, Inc.*, C.A. No. 19-2225-RGA, 2021 WL 466859, at *2 (D. Del. Feb. 9, 2021). The allegations in NuVasive's pleading focus on Plaintiff's alleged knowledge of the Purcell reference and his awareness of its materiality to the Asserted Patents. (D.I. 89 at ¶¶ 60-63, 65, 112) They do not describe gaps in the prior art that was before the examiner during prosecution, nor do they explain how the Purcell reference fills those gaps. *See Analog Devices*, 2021 WL 466859, at *2 (granting motion to strike affirmative defense of inequitable conduct where there was "nothing one can infer about the contents of the prior art before the PTO and whether the [withheld reference] fills any gaps therein.").

### 2. Knowledge of the withheld material information

NuVasive's pleading plausibly alleges that Plaintiff knew of the Purcell reference. The counterclaim states that Plaintiff obtained an exclusive license in the '946 application, which led

8

to the issuance of the Purcell reference, by entering into the Alphatec Agreement. (D.I. 89 at ¶¶ 60-63) The license gave Plaintiff the right to prosecute continuation and continuation-in-part applications claiming priority from the '946 application. (*Id.* at ¶ 63) Plaintiff does not dispute these facts.

But NuVasive's inequitable conduct counterclaim does not sufficiently tie Plaintiff's knowledge of the Purcell reference to any factual allegations about how that reference is material to the patentability of the '292 and '866 patents. Instead, the pleading alleges in a conclusory manner that Plaintiff "knew the '923 patent and its corresponding application and publication were material to the patentability of the spinal implant technology that is the subject of the Asserted Patents," without identifying any specific claims or limitations of the '292 and '866 patents that would have been rejected had the Purcell reference been disclosed. (*Id.* at ¶ 59) These allegations are not enough to establish knowledge of the Purcell reference's materiality to the patentability of the '292 and '866 patents under *Exergen*. *See Exergen*, 575 F.3d at 1330 (holding that patentee's general awareness of withheld prior art was insufficient in the absence of facts showing knowledge of specific information in the withheld references that was material to the claims of the asserted patent).

### 3. Specific intent

Plaintiff contends that NuVasive's inequitable conduct counterclaim does not adequately allege Plaintiff withheld the Purcell reference with the specific intent to deceive the USPTO. (D.I. 97 at 12-13) According to Plaintiff, allegations that he cited the Purcell reference during prosecution of the '932 patent but withheld the reference during prosecution of the '292 and '866 patents do not give rise to a plausible inference that Plaintiff made a deliberate decision to withhold a known material reference. (*Id.* at 13) NuVasive responds that the counterclaim

9

adequately alleges specific intent because, even when Plaintiff disclosed the Purcell reference during prosecution of the '932 patent, he buried the reference with "hundreds of other prior art references." (D.I. 103 at 14-15)

NuVasive's pleaded allegations are insufficient to infer that Plaintiff intended to deceive the USPTO by withholding the Purcell reference during prosecution of the '292 and '866 patents. The counterclaim alleges that Plaintiff cited the Purcell reference during prosecution of the '932 patent, but he did not disclose the Purcell reference during prosecution of the '292 or '866 patents. (D.I. 89 at ¶¶ 59, 65, 67) This allegation is insufficient to meet the threshold standard for pleading specific intent. *See St. Jude Med., Cardiology Div., Inc. v. Volcano Corp.*, C.A. No. 12-441-RGA, 2014 WL 2622240, at *2 (D. Del. June 11, 2014) (concluding that patentee's disclosure of certain prior art references during prosecution of a different patent, but not for the asserted patent, was insufficient to infer an intent to deceive). "The mere fact that an applicant disclosed a reference during prosecution of one application, but did not disclose it during prosecution of a related application, is insufficient to meet the threshold level of deceptive intent required to support an allegation of inequitable conduct." *Exergen*, 575 F.3d at 1331.

The pleading also alleges that, "even in the prosecution files of the Asserted Patents that Dr. Jackson or his counsel did disclose the [Purcell reference], it was disclosed among hundreds of other prior art references[,]" and the Purcell reference "was effectively buried under reams of less relevant art." (D.I. 89 at ¶ 66) According to NuVasive, such allegations of "burying" a material reference during prosecution can be probative of bad faith. (D.I. 103 at 15) But the Federal Circuit has held that"[a]n applicant can not be guilty of inequitable conduct if the reference was cited to the examiner." *Fiskars, Inc. v. Hunt Mfg. Co.*, 221 F.3d 1318, 1327 (Fed. Cir. 2000); *see Symbol Techs., Inc. v. Aruba Networks, Inc.*, 609 F. Supp. 2d 353, 358 (D. Del.

2009) (rejecting dicta in *Molins PLC v. Textgron, Inc.*, 48 F.3d 1172, 1184 (Fed. Cir. 1995) that "burying" a reference can be probative of bad faith). NuVasive cites no authority supporting its position that burying a prior art reference in one application can show intent to deceive the USPTO by withholding the reference entirely in a different application.

For the foregoing reasons, I recommend that the court grant Plaintiff's motion to dismiss NuVasive's inequitable conduct counterclaim based on the failure to disclose the Purcell reference. I further recommend granting NuVasive's request for an opportunity to amend the pleading. (D.I. 103 at 13, 20)

### B. The Schafer Reference and the '864 Provisional

#### 1. Prior art

Plaintiff argues that NuVasive's claim of inequitable conduct based on the Schafer reference must fail because the pleading does not plausibly establish that the Schafer reference is prior art to the '866, '292, '200, '444, or '856 patents. (D.I. 97 at 14-16) Plaintiff maintains that NuVasive's pleading "makes no attempt to analyze priority." (*Id.* at 15) But Plaintiff cites no authority to suggest that an inequitable conduct counterclaimant must engage in a priority analysis in a pleading to survive a Rule 12(b)(6) motion. Instead, Plaintiff acknowledges that "the priority chains of most of these patents include continuation-in-part applications such that the effective filing date of each claim may not be the earliest date for which the benefit of priority is claimed[.]" (*Id.*)

The Federal Circuit has explained that "[d]etermination of a priority date is purely a question of law if the facts underlying that determination are undisputed." *Bradford Co. v. Conteyor N. Am., Inc.*, 603 F.3d 1262, 1268 (Fed. Cir. 2010). Here, the underlying facts are in dispute because most of the patents asserted by Plaintiff include continuation-in-part

11

applications, meaning that priority must be determined on a claim-by-claim basis.[5] *See Clinicomp Int'l, Inc. v. Cerner Corp.*, 2018 WL 2229364, at *6 (S.D. Cal. May 16, 2018) (explaining that "a factual inquiry is necessary to determine whether a patent is entitled to the benefit of an earlier filing date from a parent application in determining" the priority of a continuation-in-part application under 35 U.S.C. § 120); *see also Augustine Med., Inc. v. Gaymar Indus.*, 181 F.3d 1291, 1302 (Fed. Cir. 1999) ("Subject matter that arises for the first time in [a] CIP application does not receive the benefit of the filing date of the parent application."). The patentee bears the burden of establishing that the claimed invention is entitled to an earlier priority date than an asserted prior art reference. *See In re Magnum Oil Tools Int'l, Ltd.*, 829 F.3d 1364, 1375-76 (Fed. Cir. 2016).

NuVasive's pleading alleges that the '864 provisional leading to the issuance of the Schafer reference was filed on June 19, 2009. (D.I. 89 at ¶ 68) The '866, '292, '200, '444, and '856 patents are continuations or continuations-in-part of applications dating between 2003 and 2007. (D.I. 79, Exs. 3-5, 7, 27) But the filing dates for the '866, '292, '200, '444, and '856 patents range from 2015 to 2020, well after the priority date of the Schafer reference. (*Id.*) Thus, whether the Schafer reference is prior art to the '866, '292, '200, '444, and '856 patents is a disputed issue of fact. *See Clinicomp*, 2018 WL 2229364, at *6. At this early stage, the court cannot determine as a matter of law that the relevant portions of the continuation-in-part

---

[5] The face of the '866 patent indicates that it is a continuation of various applications dating back to 2005, and it is not a continuation-in-part. (D.I. 79-3, Ex. 3) Nonetheless, both parties group the '866, '292, '200, '444, or '856 patents together in their discussion of priority date issues in the briefing. To the extent that any of these patents undisputedly claims priority to an application pre-dating the Schafer reference, NuVasive may account for that in any future amended pleading.

12

applications leading to the '866, '292, '200, '444, and '856 patents are entitled to an earlier priority date than the Schafer reference.

### 2. Materiality

Plaintiff challenges NuVasive's materiality allegations for the Schafer reference on many of the same grounds raised with respect to the Purcell reference, and the same pleading defects apply to those allegations. (D.I. 97 at 16-17) As previously stated at § III.A.1, *supra*, the Federal Circuit has rejected the materiality standard in USPTO Rule 56 and instead applies the but-for materiality test, which sets a higher bar for materiality. *See Therasense*, 649 F.3d at 1294-95.

NuVasive's inequitable conduct counterclaim fails to specify "which claims, and which limitations in those claims, the [Schafer reference and the '864 provisional] are relevant to, and where in those references the material information is found—i.e., the 'what' and 'where' of the material omissions." *Exergen*, 575 F.3d at 1329. The pleading generally states that the Schafer reference and the '864 provisional "disclose a polyaxial bone screw assembly with a receiver assembly for engagement of a bone screw[,]" and the specification and figures of the Schafer reference and the '864 provisional "establish a *prima facie* case of the unpatentability of the Asserted Patents and are inconsistent with positions taken by Dr. Jackson during the prosecution of the Asserted Patents." (D.I. 89 at ¶¶ 69, 72) The counterclaim states that the Schafer reference and the '864 provisional would have rendered the '866, '292, '200, '444, and '856 patents unenforceable, but it does not identify any specific claims or claim limitations within those patents that read on specific disclosures in the Schafer reference. (*Id.* at ¶ 73) Without this information, it is not apparent how the withheld Schafer reference establishes the unenforceability of the '866, '292, '200, '444, and '856 patents. *Exergen*, 575 F.3d at 1329.

Again, NuVasive's answering brief recites preamble language from claim 1 of each of the '866, '292, '200, '444, and '856 patents and juxtaposes it with the one-line summary of the Schafer reference and the '864 provisional in its counterclaim. (D.I. 103 at 16) The answering brief also depicts certain figures in the Schafer reference and the '866, '292, '200, '444, and '856 to show the alleged substantial overlap between among them. (*Id.* at 7) But NuVasive's inequitable conduct counterclaim does not reflect these allegations, and NuVasive's answering brief cannot be used to cure deficiencies in the pleading. *See Frederico*, 507 F.3d at 202. By failing to identify specific claims and claim limitations covered by the Schafer reference, the pleading also fails to show that the prior art of record did not teach those aspects of the Schafer reference. "Such allegations are necessary to explain both 'why' the withheld information is material and not cumulative, and 'how' an examiner would have used this information in assessing the patentability of the claims." *Exergen*, 575 F.3d at 1329-30.

In its answering brief, NuVasive argues that the materiality of the Schafer reference is established by Plaintiff's reliance on the Schafer reference throughout his infringement contentions to show that NuVasive's products meet elements of the '866, '292, '200, '444, and '856 patents. (D.I. 16-17) But this allegation is absent from the pleading itself. While the pleading does refer to the claim charts attached to Plaintiff's SAC, the lone paragraph does so in the context of NuVasive's counterclaim for Plaintiff's breach of the covenant not to sue, with a focus on the Helical Flange technology. (D.I. 89 at ¶ 55) The pleading does not more broadly incorporate the claim charts by reference or tie them in any way to the inequitable conduct allegations regarding the Schafer reference. And NuVasive's answering brief does not explain how Plaintiff's reliance on the Schafer reference in the infringement contentions would establish the non-cumulativeness of the reference to other prior art before the examiner.

### 3. Specific intent

Citing NuVasive's allegation that "Dr. Jackson and his patent counsel acted with an intent to deceive the USPTO when they withheld and failed to disclose the '869 patent and the '864 provisional," Plaintiff contends that NuVasive's inequitable conduct counterclaim does not adequately allege specific intent. (D.I. 97 at 17) (citing D.I. 89 at ¶ 74). According to Plaintiff, allegations that he had knowledge of the references is insufficient as a matter of law to plead specific intent. (*Id.*)

The counterclaim explains that Plaintiff was listed as an inventor on the '864 provisional and he corresponded with NuVasive's patent prosecution counsel about the '864 provisional and the applications claiming priority to it. (D.I. 89 at ¶¶ 70-71) Therefore, it can be inferred that Plaintiff had an understanding of the '864 provisional and the Schafer reference that exceeded the level of knowledge one would acquire from a standard prior art search. But averments that Plaintiff knew of the Schafer reference and the '864 provisional are not sufficient to show that Plaintiff withheld those references with the specific intent to deceive. *See Cal. Costume Collections, Inc. v. Pandaloon, LLC*, 2022 WL 1062056, at *7 (C.D. Cal. Apr. 7, 2022) (distinguishing between knowledge of the prior art reference and knowledge of its materiality).

For these reasons, I recommend that the court grant Plaintiff's motion to dismiss NuVasive's inequitable conduct counterclaim based on the failure to disclose the Schafer reference. I further recommend granting NuVasive's request for an opportunity to amend the pleading. (D.I. 103 at 13, 20)

### C. Infectious Unenforceability

Plaintiff argues that NuVasive's theory of infectious unenforceability should be dismissed. (D.I. 97 at 18) NuVasive confirms that it has not advanced a theory of infectious unenforceability in this case. (D.I. 103 at 18 n.4) Therefore, this issue is moot.

### D. Affirmative Defenses

Plaintiff moves to strike NuVasive's fourth, fifth, and sixth affirmative defenses for waiver, estoppel, and unclean hands, arguing that the allegations do not satisfy the Rule 9(b) standard. (D.I. 97 at 19) NuVasive responds that Plaintiff's motion to strike is untimely because it was filed 305 days after NuVasive first raised these affirmative defenses in the answer to the first amended complaint. (D.I. 103 at 18)

The court need not address the timeliness of the motion to strike because the equitable affirmative defenses substantively cannot survive given the court's interpretation of the parties' 2014 agreement as a matter of law. The court ruled as follows: "NuVasive has failed to show that any of the Asserted Patents were assigned to NuVasive or are covered by the covenant not to sue." (D.I. 36 at 9) Contrary to this ruling, NuVasive's pleading alleges Plaintiff owned the rights to the Asserted Patents at the time he executed an agreement in 2014 that purportedly gave NuVasive intellectual property rights, freedom to operate, and a covenant not to sue in exchange for a lump sum payment of $30 million. (D.I. 103 at 19; D.I. 89 at ¶¶ 92-97, 103) NuVasive cites no authority permitting it to re-litigate the same issues as affirmative defenses now that the court's ruling establishes the law of the case as to the 2014 agreement. Consequently, I recommend that the court grant Plaintiff's motion to strike NuVasive's equitable affirmative defenses.

## IV. CONCLUSION

For the foregoing reasons, I recommend that the court GRANT Plaintiff's partial motion to dismiss without prejudice and GRANT Plaintiff's motion to strike. (D.I. 96) I further recommend granting NuVasive's request for an opportunity to amend the pleading. The amended pleading should be filed within one week following the expiration of the deadline for objections, if any, and the court's ruling on any such objections.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The objections and responses to the objections are limited to ten (10) pages each. The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the District Court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987).

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated March 7, 2022, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated: August 11, 2023

Sherry R. Fallon
UNITED STATES MAGISTRATE JUDGE

17