IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| ROGER P. JACKSON, M.D., <br><br> Plaintiff, <br><br> v. <br><br> NUVASIVE, INC., <br><br> Defendant. | Civil Action No. 21-53-RGA |

MEMORANDUM ORDER

Before me are Plaintiff's Motion for Clarification of Summary Judgment Opinion and Order (D.I. 265) and Defendant's Motion for Clarification or Reconsideration of One Aspect of the Court's Summary Judgment Opinion (D.I. 264). The parties seek clarification or reconsideration of my recent Memorandum Opinion (D.I. 261), which addressed some of the parties' summary judgment arguments.[1] I have considered the parties' briefing. (D.I. 264, 265, 268, 269).[2]

For the reasons set forth below, Plaintiff's motion is GRANTED IN PART and DENIED IN PART. Defendant's motion is DENIED. Plaintiff's motion to strike is DISMISSED as moot.

I.  **LEGAL STANDARD**

"The general purpose of a motion for clarification is to explain or clarify something ambiguous or vague, not to alter or amend." *Resol. Trust Corp. v. KPMG Peat Marwick*, 1993

---

[1] I do not repeat the facts recited in my Memorandum Opinion (*see* D.I. 261 at 3–6) except where necessary.

[2] Defendant filed a reply brief in support of its motion. (D.I. 270). Plaintiff filed a motion to strike the reply. (D.I. 272). Defendant filed an answering brief. (D.I. 280).

1

WL 211555, at *2 (E.D. Pa. June 8, 1993). Requests to "alter . . . previous rulings" or to "make findings of fact" are not proper bases for a motion for clarification. *Id.*

Motions to reconsider are disfavored. *See* D. Del. LR 7.1.5(a) ("Motions for reargument shall be sparingly granted."); *Dentsply Int'l, Inc. v. Kerr Mfg. Co.*, 42 F. Supp. 2d 385, 419 (D. Del. 1999). "The purpose of a motion for reconsideration . . . is to correct manifest errors of law or fact or to present newly discovered evidence." *Max's Seafood Cafe v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999) (citation omitted). "A proper Rule 59(e) motion . . . must rely on one of three grounds: (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error of law or prevent manifest injustice." *Lazaridis v. Wehmer*, 591 F.3d 666, 669 (3d Cir. 2010). "A motion for reargument/reconsideration is not appropriate to reargue issues that the court has already considered and decided." *Justice v. Att'y Gen. of Del.*, 2019 WL 927351, at *2 (D. Del. Feb. 26, 2019).

## II. DISCUSSION

The parties' motions address my interpretation of the Amended and Restated Development and License Agreement (the "2014 Agreement"). Defendant seeks clarification or reconsideration of my Memorandum Opinion. Plaintiff captions his motion as though it were just a motion for clarification. It is not. It also seeks reconsideration. (*See, e.g.*, D.I. 265 at 3 ("Dr. Jackson respectfully requests that the Court clarify and/or reconsider these issues and aspects of the Opinion."); *id.* at 10). To the extent the parties request reconsideration, neither party argues that there has been a change in controlling law or that new evidence is available.

### A. Plaintiff's Motion

Plaintiff raises two issues. First, Plaintiff argues that my Memorandum Opinion "has created uncertainty between the [p]arties as to whether NuVasive would be licensed to patented

2

inventions that, for example, did not even exist in 2014—if it simply placed BOT extension features on a product that otherwise would infringe that patented technology." (*Id.* at 2). Second, Plaintiff contends the parties disagree as to whether the covenant not to sue in § 2.03 of the 2014 Agreement is breached when "at least one variation of each [a]ccused [p]roduct lack[s] BOT extensions." (*Id.* at 3).

### 1. BOT Implants

Plaintiff argues, "When considering the license grants for Helical Flange, § 2.02(a), and BOT Implants § 2.02(b), the Opinion misapprehends the underlying basis and logic behind why these license grants are phrased differently." (*Id.* at 6). Plaintiff contends the difference in phrasing between the two subsections "arises not from their intended scope, but rather from the differences in the subject matter of the Helical Flange and BOT Implants themselves." (*Id.*). Plaintiff contends that break-off extension tabs are "components," but a helical flange is "essentially a set of shapes or designs that can be applied to a component—it is not the component itself." (*Id.*).

Plaintiff further argues that Defendant's "expansive view" of my Memorandum Opinion "treats rights not expressly granted nonetheless as having been granted through 'implication' or 'otherwise.'" (*Id.* at 7). Plaintiff contends that such a view is inconsistent with § 2.05 of the 2014 Agreement. (*Id.*). Plaintiff argues that the BOT Implants license grant extends only to a specific combination of: (1) the break-off tabs, (2) the Helical Flange, and (3) the Polyaxial Screw IP. (*Id.* at 7–8). Plaintiff contends, "If there is a product which uses that combination, but also uses separately-patented Jackson technologies, like those in the [a]sserted [p]atents, the BOT Implants license by its terms, authorizes use of the first combination, but neither

3

contemplates nor authorizes use of the latter additional separately-patented technologies." (*Id.* at 8).

Defendant argues that Plaintiff seeks reconsideration, not clarification, of my interpretation of the 2014 Agreement. (D.I. 269 at 1). Defendant contends, "In short, Dr. Jackson argues the Court got it wrong." (*Id.*). Defendant argues that Plaintiff's motion should be denied because he has failed to establish any of the grounds required for reconsideration. (*Id.*). Defendant hyperbolically contends, "The scope of the license is beyond dispute." (*Id.* at 3).

First, I do not think that my Memorandum Opinion "misapprehends the underlying basis and logic behind why these license grants are phrased differently." The language of the 2014 Agreement is unambiguous, and Plaintiff's arguments are inconsistent with that language. Even if BOT Implants were components and Helical Flanges were merely "shapes or designs that can be applied to a component," the license grants in § 2.02(a) and § 2.02(b) nevertheless have different scope. Section § 2.02(b) grants a license to "to manufacture, have manufactured, use, sell, offer for sale, import and otherwise distribute BOT Implants in the Territories." (D.I. 211-1 at 6 of 335). Section 1.03, which defines BOT Implants, states, "For the purposes of this Agreement, 'BOT Implants' shall mean Products utilizing the above described break-off tabs and which utilize a Helical Flange." (*Id.* at 3 of 335). The 2014 Agreement thus grants a license to "to manufacture, have manufactured, use, sell, offer for sale, import and otherwise distribute [Products utilizing the above described break-off tabs and which utilize a Helical Flange] in the Territories." The parties could have defined "BOT Implants" more narrowly—for instance, as only break-off tabs—but they did not.

4

Second, I do not think that the 2014 Agreement supports limiting the BOT Implants license grant to a combination of three components only. As I previously explained, § 1.15 defines "Products" as "the Polyaxial Screw, and any other NuVasive spinal implant on which uses the Helical Flange." (D.I. 261 at 5 (citing D.I. 211-1 at 5 of 335)). Reading §§ 1.03, 1.15, and 2.02(b) together, the 2014 Agreement grants a license "to manufacture, have manufactured, use, sell, offer for sale, import and otherwise distribute [(the Polyaxial Screw, and any other NuVasive spinal implant on which uses the Helical Flange) utilizing the above described break-off tabs and which utilize a Helical Flange] in the Territories." This language does not show that the license grant is limited to products in which the only patented features are break-off tabs, the Helical Flange, and the Polyaxial Screw IP. The grant is more open-ended than Plaintiff suggests. To be licensed, a product must include at least some of these components but may include other components, whether Plaintiff has patents on those other components or not. I do not think that § 2.05 of the 2014 Agreement changes the scope of the BOT Implants grant. The section states, "Nothing contained in this Agreement shall be construed as conferring by implication, estoppel or otherwise upon either party hereunder any license or other right except the licenses and rights expressly granted hereunder." (D.I. 211-1 at 7 of 335). Section 2.05 does not change the fact that the BOT Implants license, which was "expressly granted," is broad in scope.

Plaintiff's motion is thus GRANTED to the extent that it seeks clarification of my ruling on the BOT Implants license. Plaintiff's motion is DENIED to the extent that it seeks reconsideration, as I do not think Plaintiff has shown an intervening change in controlling law, new evidence, or a need to correct a clear error of law or to prevent manifest injustice. *See Lazaridis*, 591 F.3d at 669.

### 2. Covenant Not to Sue

Plaintiff argues that "irrespective of whether an [a]ccused [p]roduct is licensed under the BOT Implants license, § 2.03 and [the] reference to 'BOT Implants' in it does not preclude Dr. Jackson from claiming that [a]ccused [p]roducts infringe his rights in and to the [a]sserted [p]atents." (D.I. 265 at 10). Plaintiff argues that even though some sections of the 2014 Agreement refer to both parties, § 2.03 only describes Plaintiff's intellectual property. (*Id.* at 8–9). Because none of the asserted patents disclose BOT extensions, Plaintiff contends that he did not breach the covenant not to sue. (*Id.* at 9–10). Plaintiff argues,

> As the Court's reference to "the entirety of an accused product fall[ing] within the scope of 'BOT Implants'" on pg. 17 of the Opinion has been read by Defendant differently, *i.e.*, "the entirety of the accused Precept 882XXXX, Reline 1602XXX, Reline 1312XXX, and Armada 827XXXX screw assembly products fall with the scope of 'BOT Implants'" and "Dr. Jackson violated his covenant not to sue when he brought allegations against NuVasive accusing the licensed 'BOT Implants' of patent infringement," clarification by the Court is needed.

(*Id.* at 10 (quoting D.I. 263 at 8–9 of 11)).

Defendant argues, "Dr. Jackson's argument is diametrically opposed to the Court's opinion." (D.I. 269 at 3). Defendant contends, "Dr. Jackson has not shown a clear error of law or fact, let alone the need to correct one." (*Id.* at 3). Defendant argues that Plaintiff "brought claims against NuVasive alleging infringement of patent rights 'in and to' the accused 'BOT Implants,' including Precept 882XXXX, Reline 1602XXX, Reline 1312XXX, and Armada 827XXXX. This is exactly what he promised not to do." (*Id.* at 4). Defendant also rejects Plaintiff's argument about § 2.03 only having references to Plaintiff's intellectual property rights. Defendant contends that § 2.03 references both parties because it mentions "Related System Components," which are defined as "the items sold by NuVasive for use with the Polyaxial

Screw, such as closure tops and set screws, whether or not such items incorporate Jackson Group Intellectual Property Rights." (*Id.* at 4 n.2 (quoting D.I. 211-1 at 5 of 335)).

In their joint status report, the parties agreed that the following products include a BOT extension feature and are therefore licensed: Precept 882XXXX, Reline 1602XXX, Reline 1312XXX, and Armada 827XXXX. (D.I. 263 at 1 of 11). Plaintiff has consequently breached the covenant not to sue by pursuing claims against Defendant for Defendant's use of those four products. The remaining accused products appear not to be licensed under the BOT Implants grant. Thus, unless Plaintiff's asserted patents meet the Helical Flange definition, Plaintiff did not breach the covenant not to sue with respect to other accused products. I agree with Defendant that it is irrelevant whether Plaintiff's asserted patents disclose break-off tabs, as the BOT Implants license grant is broad enough to cover products that include both break-off tabs and Plaintiff's patented technology. In other words, a product like Precept 882XXXX, which meets the BOT Implants definition, is licensed regardless of what the asserted patents disclose because the BOT Implants license grant encompasses the entire product, not only parts of it. If Plaintiff accuses a licensed product of infringement, Plaintiff breaches the covenant not to sue.

Plaintiff's motion is thus GRANTED to the extent that it seeks clarification of my ruling on the covenant not to sue. Plaintiff's motion is DENIED to the extent that it seeks reconsideration, as I do not think that Plaintiff has shown an intervening change in controlling law, new evidence, or a need to correct a clear error of law or to prevent manifest injustice. *See Lazaridis*, 591 F.3d at 669.

### B. Defendant's Motion

Defendant "requests clarification or reconsideration of whether the asserted patents in this case constitute 'related intellectual property' within the definition of 'Helical Flange' and

fall within the scope of the license grant in Section 2.02(a) and/or the covenant not to sue in Section 2.03 of the 2014 Agreement." (D.I. 264 at 6). Defendant contends that the summary judgment opinion "established a test to determine whether a patent constitutes 'related intellectual property' under the definition of 'Helical Flange.'" (*Id.* at 2). Defendant quotes a portion of my Memorandum Opinion, which states,

> The plain language of "related intellectual property invented and owned by the Jackson Group" indicates that "related" technology is technology that is related to the subject matter at issue, which is "the proprietary helically wound mating and interlocking structures . . . utilized as the means by which closure tops engage polyaxial screws and other spinal implants, instead of threads."

(*Id.* (quoting D.I. 261 at 13)). Defendant argues that each of the asserted patents satisfies this "test." (*See id.* at 3–6).

Plaintiff argues that Defendant has not presented a proper motion for reconsideration because the motion "is rehashing previous argument." (D.I. 268 at 2 n.2). Plaintiff contends the motion "seeks to alter and amend the prior ruling and make findings of fact that the [a]sserted [p]atents fall under the Helical Flange definition, which is also improper for a limited motion for clarification." (*Id.*). In Plaintiff's view, Defendant "argues that less than 'mere incorporation by reference,' specifically a simple naming reference of a 'helically wound guide and advancement structure,' is sufficient to bring independent patents directed to completely different technologies within the 'Helical Flange' definition of the 2014 Agreement." (*Id.* at 1) (emphasis omitted). Plaintiff contends that the patents at issue "are not 'related' to the Helical Flange technologies and are instead directed to 'other technology that Plaintiff has patented but has not separately licensed to Defendant.'" (*Id.* at 6 (quoting D.I. 261 at 13–14)).

I agree with Plaintiff that Defendant has not presented a proper motion for clarification or reconsideration. My Memorandum Opinion stated, "Mere incorporation by reference of the '689

8

patent is insufficient to bring an otherwise non-Helical-Flange patent within the scope of the Helical Flange definition." (D.I. 261 at 13). I did not specifically address whether each of the eight asserted patents are "related intellectual property," that is, "technology that is related to . . . 'the proprietary helically wound mating and interlocking structures . . . utilized as the means by which closure tops engage polyaxial screws and other spinal implants, instead of threads.'" (*Id.* (citation omitted)). Defendant devoted one conclusory paragraph (D.I. 210 at 28) to this argument in its Opening Brief. Essentially, Defendant quoted or cited about six lines of text in the specifications of four of the asserted patents. Defendant did not show it was entitled to summary judgment on this theory. It is too late to do it now.

The parties dispute whether the asserted patents meet the Helical Flange definition. That is a fact question for the jury to resolve. *Cf. TQ Delta, LLC v. ADTRAN, Inc.*, 2019 WL 9406455, at *1 (D. Del. Oct. 3, 2019) ("To the extent that there is a dispute about the application of 'in conjunction with' to the facts of this case, it is not because the clarified construction is vague or ambiguous."). Defendant has also not shown an intervening change in controlling law, new evidence, or a need to correct a clear error of law or to prevent manifest injustice. *Lazaridis*, 591 F.3d at 669. Reconsideration is thus not warranted.

Defendant's motion is DENIED. I do not need to consider the arguments in Defendant's reply brief. Plaintiff's motion to strike (D.I. 272) is therefore DISMISSED as moot.

## III. CONCLUSION

Plaintiff's Motion for Clarification of Summary Judgment Opinion and Order (D.I. 265) is GRANTED IN PART and DENIED IN PART, as explained above. Defendant's Motion for Clarification or Reconsideration of One Aspect of the Court's Summary Judgment Opinion (D.I. 264) is DENIED. Plaintiff's motion to strike (D.I. 272) is DISMISSED as moot.

IT IS SO ORDERED.

Entered this 25th day of July, 2024

_____
United States District Judge