IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ROGER P. JACKSON, M.D., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 21-53 (RGA) |
| | ) | |
| NUVASIVE, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**JOINT REVISED PROPOSED FINAL JURY INSTRUCTIONS**

POLSINELLI PC
Stephen J. Kraftschik (#5623)
222 Delaware Avenue, Suite 1101
Wilmington, DE 19801
(302) 252-0920
skraftschik@polsinelli.com
*Attorneys for Plaintiff Roger P. Jackson, M.D.*

MCCARTER & ENGLISH, LLP
Daniel M. Silver (#4758)
Alexandra M. Joyce (#6423)
Renaissance Centre
405 N. King Street, 8th Floor
Wilmington, Delaware 19801
(302) 984-6300
dsilver@mccarter.com
ajoyce@mccarter.com
*Attorneys for Defendant NuVasive, Inc.*

August 11, 2024

## TABLE OF CONTENTS

1.  GENERAL INSTRUCTIONS ...................................................................................2

    **1.1** INTRODUCTION ........................................................................................2

    **1.2** JURORS' DUTIES .......................................................................................3

    **1.3** CONSIDERATION OF EVIDENCE .........................................................4

    **1.4** CREDIBILITY OF WITNESSES ..............................................................6

    **1.5** DEPOSITION TESTIMONY ......................................................................7

    **1.6** EXPERT WITNESSES ................................................................................8

    **1.7** EXHIBITS AND DEMONSTRATIVE EXHIBITS ..................................9

    **1.8** BURDENS OF PROOF ..............................................................................10

    **1.9** USE OF NOTES .........................................................................................11

2.  THE PARTIES AND THEIR CONTENTIONS ..........................................12

3.  FRAUDULENT INDUCEMENT ..................................................................13

4.  BREACH OF CONTRACT............................................................................15

    **4.1** [PLAINTIFF'S PROPOSAL: CONTRACT INTERPRETATION .........16

5.  BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING...............................................................................................17

6.  CLAIM FOR UNJUST ENRICHMENT.....................................................18

7.  DAMAGES.......................................................................................................19

8.  DELIBERATION AND VERDICT ..............................................................20

    **8.1** INTRODUCTION .......................................................................................20

    **8.2** UNANIMOUS VERDICT...........................................................................21

    **8.3** DUTY TO DELIBERATE ..........................................................................22

    **8.4** SOCIAL MEDIA ........................................................................................23

**8.5** COURT HAS NO OPINION ......................................................................................24

96999010.3

Plaintiff Dr. Jackson and Defendant NuVasive submit the following Joint [Proposed] Final Jury Instructions for the trial in this matter. Where the parties disagree about the inclusion of an instruction, or the appropriate language for that instruction, the parties indicate as much by labeling the instruction "contested" (underlined). For each contested instruction, there is an additional designation specifying whether it is "Plaintiff's Proposal" or "Defendant's Proposal."

Where the parties agree on the inclusion of a particular instruction and are generally in agreement on the wording of the instruction, but there remains some dispute over the exact language, different color highlighting is used. Specifically, text highlighted in yellow is text that Dr. Jackson proposes adding to the instructions to which NuVasive does not agree. Text highlighted in blue is text that NuVasive proposes adding to the instructions to which Dr. Jackson does not agree.

The parties reserve all rights to supplement, amend, or otherwise modify these proposed instructions as appropriate, including without limitation the right to revise their positions on the proposed instructions in response to future rulings by the Court or the evidence as it is admitted at trial. The parties submit these proposed jury instructions without waiver of their position that the opposing party has not presented sufficient evidence to submit some or all of its affirmative claims, damages theories, or affirmative defenses to the jury, and without waiver of arguments presented in motions *in limine* or in other pretrial proceedings.

## 1.   GENERAL INSTRUCTIONS

### 1.1  INTRODUCTION

Members of the jury, now it is time for me to instruct you about the law that you must follow in deciding this case.

I will start by explaining your duties and the general rules that apply in every civil case.

Then I will explain some rules that you must use in evaluating particular testimony and evidence.

Then I will explain the positions of the parties and the law you will apply in this case. And last, I will explain the rules that you must follow during your deliberations in the jury room, and the possible verdicts that you may return.

Please listen very carefully to everything I say. In following my instructions you must follow all of them and not single out some and ignore others. They are all important.

You will have your written copy of these instructions with you in the jury room for your reference during your deliberations. You will also have a verdict form, which will list the questions that you must answer to decide this case.

AUTHORITY:    *Sprint Commc'ns Co. L.P. v. Comcast Cable Commc'ns, LLC*, No. 1:12-cv-01013-RGA (D. Del. Feb. 5, 2015), D.I. 264 (final jury instructions) Instruction 1.1, at 1; *Bio-Rad Labs., Inc. v. 10X Genomics, Inc*., No. 1:15-cv-00152-RGA (D. Del. Nov. 13, 2018), D.I. 470 (final jury instructions) Instruction 1.1, at 3.

## 1.2  JURORS' DUTIES

You have two main duties as jurors. The first one is to decide what the facts are from the evidence that you saw and heard here in court. Deciding what the facts are is your job, not mine, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way.

Your second duty is to take the law that I give you, apply it to the facts, and decide the issues presented to you on the verdict form. It is my job to instruct you about the law, and you are bound by the oath that you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them. This includes the instructions that I gave you before and during the trial, and these instructions. All of the instructions are important, and you should consider them together as a whole.

Perform these duties fairly. Do not let any bias, sympathy or prejudice that you may feel toward one side or the other influence your decision in any way.

**AUTHORITY**:   *Sprint Commc'ns Co. L.P. v. Comcast Cable Commc'ns, LLC*, No. 1:12-cv-01013-RGA (D. Del. Feb. 5, 2015), D.I. 264 (final jury instructions) Instruction 1.2, at 2; *Bio-Rad Labs., Inc. v. 10X Genomics, Inc*., No. 1:15-cv-00152-RGA (D. Del. Nov. 13, 2018), D.I. 470 (final jury instructions) Instruction 1.2, at 4.

## 1.3  CONSIDERATION OF EVIDENCE

Make your decision based only on the evidence, as I have defined it here, and nothing else. Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.

You should use your common sense in weighing the evidence. Consider the evidence in light of your everyday experience with people and events, and give it whatever weight you believe it deserves. If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

The evidence in this case includes only what the witnesses said while they were testifying under oath, including deposition testimony that was played to you, the exhibits that I allowed into evidence, and the stipulations that the parties agreed to.

Certain things are not evidence and must not be considered by you. I will list them for you now:

1. Statements, arguments, and questions by lawyers are not evidence.

2. Objections to questions are not evidence. Lawyers have an obligation to their clients to make objections when they believe evidence being offered is improper under the rules of evidence. You should not be influenced by the objection or by my ruling on it. If the objection is sustained, ignore the question. If it is overruled, treat the answer like any other. If you are instructed that some item of evidence is received for a limited purpose only, you must follow that instruction. If this occurs during the trial, I will try to clarify this for you at that time.

3. Testimony that the court has excluded or told you to disregard is not evidence and must not be considered.

4.  Anything you may have seen or heard outside the courtroom is not evidence and must be disregarded. You are to decide the case solely on the evidence presented here in the courtroom.

There are two kinds of evidence: direct and circumstantial. Direct evidence is evidence that does not require an inference, such as the testimony of an eyewitness, which, if you believe it, directly proves a fact. If a witness testified that she saw it raining, that would be direct evidence that it was raining.

Circumstantial evidence is proof of facts from which you may infer or conclude that other facts exist. If a witness testified that someone walked into the room wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence that it was raining.

As a general rule, the law makes no distinction between these two types of evidence, nor does it say that one is any better evidence than the other. Rather, the law simply requires that you find facts from all the evidence in the case, whether direct or circumstantial or a combination of the two.

96999010.3

## 1.4  CREDIBILITY OF WITNESSES

You, the jurors, are the sole judges of the credibility, or the believability, of the witnesses you have seen during the trial and the weight their testimony deserves. You should carefully scrutinize all the testimony each witness has given and every matter of evidence that tends to show whether he or she is worthy of belief.

If you find the testimony to be contradictory, you must try to reconcile it, if reasonably possible, so as to make one harmonious story of it all. But if you cannot do this, then it is your duty and privilege to believe the portions of testimony that, in your judgment, are most believable and disregard any testimony that, in your judgment, is not believable.

In determining the weight to give to the testimony of a witness, you should ask yourself whether there is evidence tending to prove that the witness testified falsely about some important fact, or, whether there was evidence that at some other time the witness said or did something, or failed to say or do something that was different from the testimony he or she gave at the trial. You have the right to distrust such witness's testimony in other particulars and you may reject all or some of the testimony of that witness or give it such credibility as you may think it deserves.

You should remember that a simple mistake by a witness does not mean that the witness was not telling the truth. People may tend to forget some things or remember other things inaccurately. If a witness has made a misstatement, you must consider whether it was simply an innocent lapse of memory or an intentional falsehood, and that may depend upon whether it concerns an important fact or an unimportant detail.

**AUTHORITY**:       *Amgen Inc. v. Sanofi*, No. 14-1317 (D. Del. Feb. 25, 2019), D.I. 812 (final jury instructions) Instruction 7, at 4-5.

## 1.5 DEPOSITION TESTIMONY

During the trial, certain testimony was presented to you through depositions that were read into evidence or electronically played.  The deposition testimony may have been edited to exclude irrelevant testimony, as the parties had only a limited amount of time to present you with evidence. You should not attribute any significance to the fact that the deposition may appear to have been edited.  This testimony must be given the same consideration that you would give it had the witness personally appeared in court. Like the testimony of a live witness, the statements made in a deposition are made under oath and are considered evidence that may be used to prove particular facts.

**AUTHORITY**:      *Amgen Inc. v. Sanofi*, No. 14-1317 (D. Del. Feb. 25, 2019), D.I. 812 (final jury instructions) Instruction 9, at 6.

## 1.6  EXPERT WITNESSES

During the trial, you heard testimony from expert witnesses.  When knowledge of technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field—called an expert witness—is permitted to state his or her opinion on those technical matters. However, you are not required to accept that opinion. As with any other witness, it is up to you to decide whether to rely upon it.

In weighing this opinion testimony, you may consider the witness' qualifications, the reasons for testifying, and the reliability of the information supporting the witness' opinions, as well as all of the other considerations that ordinarily apply when you are deciding whether or not to believe a witness' testimony.

You should give the opinion testimony whatever weight and credit you think appropriate, given all the other evidence in the case. .

You should not, however, accept opinion testimony merely because I allowed the witness to testify concerning his or her opinion. Nor should you substitute it for your own reason, judgment and common sense. The determination of the facts in this case rests solely with you.

**AUTHORITY**:     *Sprint Commc'ns Co. L.P. v. Comcast Cable Commc'ns, LLC*, No. 1:12-cv-01013-RGA (D. Del. Feb. 5, 2015), D.I. 264 (final jury instructions) Instruction 1.9, at 9; *Bio-Rad Labs., Inc. v. 10X Genomics, Inc*., No. 1:15-cv-00152-RGA (D. Del. Oct. 23, 2018), D.I. 388 (preliminary jury instructions) Instruction 1.7, at 10. This instruction is virtually identical to "1.7 Expert Witnesses" in the Proposed Preliminary Jury Instructions.

## 1.7  EXHIBITS AND DEMONSTRATIVE EXHIBITS

During the course of the trial, you have seen many exhibits. Many of these exhibits were admitted as evidence. Some of these admitted exhibits or portions of them have been displayed for you on a screen and you will have these admitted exhibits, whether displayed on a screen or not, in the jury room during your deliberations.

There are other exhibits (including slides, charts and animations presented by attorneys and witnesses) that were offered to help illustrate the testimony of the various witnesses. These illustrations, called "demonstrative exhibits," have not been admitted as evidence, are not evidence, and should not be considered as evidence. Rather, it is the underlying testimony of the witness that you heard when you saw the demonstrative exhibits that is the evidence in this case.

**AUTHORITY**:    *Bio-Rad Labs., Inc. v. 10X Genomics, Inc.*, No. 1:15-cv-00152-RGA (D. Del. Nov. 13, 2018), D.I. 470 (final jury instructions) Instruction 1.3, at 5.

## 1.8  BURDENS OF PROOF

For each issue in this case, either Dr. Jackson or NuVasive bears the burden of proof, which means that they bear the burden of persuading you to find in their favor by a "preponderance of the evidence."

When a party bears the burden of proof by a preponderance of the evidence, that party has carried its burden if you find that what the party claims is more likely true than not, when considered in light of all of the evidence.  To put it differently, if you were to put each party's evidence on the opposite sides of a scale, the evidence supporting the party with the burden of proof would have to make the scales tip somewhat on the side of that party.

**AUTHORITY**:  *Bio-Rad Labs., Inc. v. 10X Genomics, Inc*., No. 1:15-cv-00152-RGA (D. Del. Nov. 13, 2018), D.I. 470 (final jury instructions) Instruction 2, at 6.

**1.9  USE OF NOTES**

You may use notes taken during trial to assist your memory. However, you should use caution in consulting your notes. There is always a tendency to attach undue importance to matters that you have written down. Some testimony that is considered unimportant at the time presented, and thus not written down, takes on greater importance later on in the trial in light of all the evidence presented. Therefore, you are instructed that your notes are only a tool to aid your own individual memory, and you should not compare notes with other jurors in determining the content of any testimony or in evaluating the importance of any evidence. Your notes are not evidence, and are by no means a complete outline of the proceedings or a list of the highlights of the trial. Above all, your memory should be the greatest asset when it comes time to deliberate and render a decision in this case.

> **AUTHORITY**:          *TQ Delta, LLC v. 2Wire, Inc.,* C.A. No. 13-1835, D.I. 1262 (Final Jury Instructions) (D. Del. Jan. 16, 2020)

2.      **THE PARTIES AND THEIR CONTENTIONS**

At the start of the case, I gave you a summary of each side's contentions. I will now provide you with detailed instructions on what each side must prove to win on each of its contentions.

3.      **FRAUDULENT INDUCEMENT**

[**PLAINTIFF'S PROPOSAL:** Dr. Jackson claims that NuVasive made a false representation that harmed him. To establish this claim, Dr. Jackson must prove all of the following:

First, the projections NuVasive's representatives provided to Dr. Jackson on September 26, 2014 were materially false;

Second, NuVasive's representatives knew that the projections were false or were aware that they lacked knowledge as to whether the projections were true or false;

Third, NuVasive's representatives intended that Dr. Jackson act upon the projections in a manner reasonably contemplated;

Fourth, Dr. Jackson was ignorant of the falsity of the projections;

Fifth, Dr. Jackson relied on the projections;

Sixth, Dr. Jackson's reliance was reasonable under the circumstances; and,

Seventh, as a direct result of such representation, Dr. Jackson sustained damage.

Ordinarily, an opinion is not considered a representation of fact. An opinion is a person's belief that a fact exists, a statement regarding a future event, or a judgment about quality, value, authenticity, or similar matters. However, NuVasive's opinion is considered a representation of fact if Dr. Jackson proves that NuVasive claimed to have special knowledge about the projections that Dr. Jackson did not have and intended that he would rely on NuVasive's representations regarding the projections.

**AUTHORITY**:  *Hewlett v. Hewlett*, 845 S.W.2d 717, 720 (Mo. Ct. App. 1993); Missouri Approved Instruction (Civil) 23.05. **END]**

**[DEFENDANT'S PROPOSAL:** You must decide the following issue: Whether or not NuVasive fraudulently induced Dr. Jackson to enter the 2014 Agreement.

To prevail on a claim of fraudulent inducement, Dr. Jackson must prove all of the following by a preponderance of the evidence:

First, NuVasive made a false, material representation to Dr. Jackson;

Second, NuVasive had knowledge of its falsity or ignorance of its truth;

Third, NuVasive intended Dr. Jackson to act upon the representation in a manner reasonably contemplated by NuVasive;

Fourth, Dr. Jackson was ignorant of the falsity of the representation;

Fifth, Dr. Jackson relied on the representation;

Sixth, Dr. Jackson's reliance was reasonable under circumstances; and

Seventh, Dr. Jackson suffered proximate injury.[1]

Misrepresentation of a material fact by silence can only constitute fraud where the silent party has a duty to speak; no such duty arises "when the other party has knowledge of the facts."[2] "To constitute fraud, the alleged misrepresentation must relate to a past or existing fact."[3] "Mere statements of opinion, expectations and predictions for the future are insufficient to authorize a recovery for fraudulent misrepresentation."[4]

**END]**

---

[1] *Prime Aid Pharm. Corp. v. Express Scripts, Inc.*, 2017 WL 2021082, at *1, 3 (E.D. Mo. May 12, 2017); *see also Dancin Development, L.L.C. v. NRT Missouri, Inc.*, 291 S.W.3d 739, 743–44 (Mo. Ct. App. 2009).

[2] *Centerre Bank*, 765 S.W.2d at 284 (citing *Taylor v. Western Casualty & Surety Co.*, 523 S.W.2d 582, 586 (Mo. Ct. App. 1975)).

[3] *Trotter's Corp. v. Ringleader Restaurants, Inc.*, 929 S.W.2d 935, 940 (Mo. Ct. App. 1996).

[4] *Arnott v. Kruse*, 730 S.W.2d 597, 600 (Mo. Ct. App. 1987).

4.      **BREACH OF CONTRACT**

You must decide the following issue: Whether or not Dr. Jackson breached the 2014 Agreement by asserting patents in violation of his covenant not to sue.

A contract is a legally binding agreement between two or more parties.  Each party to the contract must perform according to the agreement's terms.  A party's failure to perform a contractual duty constitutes breach of contract.  The 2014 Agreement is a contract.

To prevail on a breach of contract claim, NuVasive must prove by a preponderance of the evidence: (1) the existence and terms of a contract; (2) that NuVasive performed or tendered performance pursuant to the contract; (3) breach of the contract by the Dr Jackson; and (4) damages suffered by NuVasive.[5]

---

[5] *Keveney v. Missouri Military Academy*, 304 S.W. 3d 98, 104 (Mo. 2010) (citing *Howe v. ALD Servs., Inc.*, 941 S.W.2d 645, 650 (Mo. App. 1997)).

## 4.1  [PLAINTIFF'S PROPOSAL: CONTRACT INTERPRETATION

It is my job as Judge to provide to you any meaning of contractual language that I have already interpreted. You must accept the meanings I give you and use them when you decide whether the Asserted Patents are "related intellectual property" under the Helical Flange definition of the 2014 Agreement.

I have interpreted the term "related" in "related intellectual property" to mean "technology that is related to the subject matter at issue, which is "the proprietary helically wound mating and interlocking structures . . . utilized as the means by which closure tops engage polyaxial screws and other spinal implants, instead of threads." Therefore, when determining whether the Asserted Patents are "related intellectual property" under the Helical Flange definition, you must decide whether the Asserted Patents are specifically directed to Dr. Jackson's proprietary helically wound mating and interlocking structures utilized as the means by which closure tops engage polyaxial screws and other spinal implants, instead of threads..  However, an Asserted Patent merely mentioning or depicting a helical flange, flange form, guide and advancement structure, or incorporating by reference the `689 Helical Flange patent (from the 2014 Agreement) is insufficient to bring a patent that is not specifically directed to Dr. Jackson's proprietary helically wound mating and interlocking structure within the scope of the Helical Flange definition.

**AUTHORITY**: D.I. 261, pg. 13; D.I. 283 at 9.  **END]**

**[DEFENDANT'S POSITION:**

Defendant's position is that Plaintiff's proposal is not necessary and may confuse the jury. **END]**

16

5.    **<u>BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING</u>**

You must decide the following issue: Whether or not Dr. Jackson breached the implied covenant of good and fair dealing for the 2014 Agreement.

A covenant of good faith and fair dealing is implied in every contract.[6] To prevail on breach of the covenant of good faith and fair dealing, NuVasive must prove that Dr. Jackson exercised discretion he was given under the agreement in a way that evaded the spirit of the agreement or to deny NuVasive an expected benefit of the agreement.[7]

     <mark>[**PLAINTIFF'S PROPOSAL:**</mark> There can be no breach of the implied covenant if the parties expressly addressed the matter at issue in the contract.  <mark>**END]**[8]</mark>

---

[6] *Koger v. Hartford Life Ins. Co.*, 28 S.W.3d 405, 412 (Mo. Ct. App. 2000).

[7] *Id.*

[8] **AUTHORITY**: *Glenn v. HealthLink HMO, Inc.*, 360 S.W.3d 866, 877 (Mo. Ct. App. 2012); *Koger v. Hartford Life Ins. Co.*, 28 S.W.3d 405, 412 (Mo. Ct. App. 2000).

17

6.      **CLAIM FOR UNJUST ENRICHMENT**

You must decide the following issue: Whether or not Dr. Jackson was unjustly enriched by **[DEFENDANT'S PROPOSAL:** receiving a $30 million payment pursuant to **END]** the 2014 Agreement.

To prevail on unjust enrichment, NuVasive must prove (1) it conferred a benefit on Dr. Jackson; (2) Dr. Jackson appreciated the benefit; and (3) Dr. Jackson accepted and retained the benefit under inequitable and/or unjust circumstances.[9]

**[PLAINTIFF'S PROPOSAL:** Even if a benefit is 'conferred' and 'appreciated,' if no injustice results from Dr. Jackson's retention of the benefit, then there is no cause of action for unjust enrichment.[10] **END]**

---

[9] *Howard v. Turnbull,* 316 S.W.3d 431,436 (Mo. Ct. App. 2010).

[10] *Id.* (citation omitted).

7.    **DAMAGES**

If you find in favor of either party on its claim for damages, then you must award that party such sum as you believe will fairly and justly compensate that party for any damages you believe the party sustained as a direct result of the occurrence mentioned in the evidence.

NuVasive seeks damages from Dr. Jackson under more than one legal theory.  However, each item of damages may be awarded only once, regardless of the number of theories alleged.

If you find for NuVasive on its breach of contract claim, you will only decide damages on that claim and will not need to address NuVasive's claims for damages related to breach of the implied covenant of good faith and fair dealing or unjust enrichment.[11]

[**PLAINTIFF'S PROPOSAL:**   If you do not find breach of contract, but decide that NuVasive has proved both its claims for breach of the implied covenant of good faith and fair dealing and unjust enrichment, the same damages that resulted from both claims can be awarded only once.[12]  **END]**

**AUTHORITY**:  MAI 4.01

---

[11] Pretrial Tr. at 10 ("I think that the issue here is that the breach of contract remedy, and the implied covenant and unjust enrichment claims are exclusive, right. So if we win on breach of contract, and the case is over, there would be, therefore, no unjust enrichment, no implied covenant of good faith and fair dealing so -- because they would not have the right to bring the suit in the first instance. And Defendant, NuVasive, would be entitled to its cost of defense, cost of fees. And that's our claim.");

[12] *Host v. BNSF Ry. Co.*, 460 S.W.3d 87, 98 (Mo. Ct. App. 2015) ("However, because a plaintiff submitting on both theories "is entitled to only one recovery for his injuries ... caution should be exercised in instructing the jury so as to avoid a duplicative or overlapping damage verdict."").

96999010.3

8. **DELIBERATION AND VERDICT**

**8.1 INTRODUCTION**

That concludes the part of my instructions explaining the rules for considering some of the testimony and evidence. Now let me finish up by explaining some things about your deliberations in the jury room, and your possible verdicts.

Once you start deliberating, do not talk to the jury officer, or to me, or to anyone else except each other about the case. If you have any questions or messages, you must write them down on a piece of paper, sign them, and then give them to the jury officer. The officer will give them to me, and I will respond as soon as I can. I may have to talk to the lawyers about what you have asked, so it may take me some time to get back to you. Any questions or messages normally should be sent to me through your foreperson, who by custom of this Court is juror No. 1.

One more thing about messages. Do not ever write down or tell anyone how you stand on your votes. For example, do not write down or tell anyone that you are split 4-4, or 6-2, or whatever your vote happens to be. That should stay secret until you are finished.

**AUTHORITY**:     *Sprint Commc'ns Co. L.P. v. Comcast Cable Commc'ns*, LLC, No. 1:12-cv-01013-RGA (D. Del. Feb. 5, 2015), D.I. 264 (final jury instructions) Instruction 5.1, at 25; *Bio-Rad Labs., Inc. v. 10X Genomics, Inc.*, No. 1:15-cv-00152 (D. Del. Nov. 13, 2018), D.I. 470 (final jury instructions) Instruction 7.1, at 37.

## 8.2  UNANIMOUS VERDICT

Your verdict must represent the considered judgment of each juror. In order for you as a jury to return a verdict, it is necessary that each juror agree to the verdict. Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another and to deliberate with a view towards reaching an agreement, if you can do so consistent with your individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion, if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the purpose of returning a verdict. Remember at all times that you are not partisans. You are judges of the facts. Your sole interest is to seek the truth from the evidence in the case.

A form of verdict has been prepared for you. You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in, date and sign the form. You will then return to the courtroom and your foreperson will give your verdict.

It is proper to add the caution that nothing said in these instructions and nothing in the form of verdict is meant to suggest or convey in any way or manner any intimation as to what verdict I think you should find. What the verdict shall be is the sole and exclusive duty and responsibility of the jury.

**AUTHORITY**:   *Sprint Commc'ns Co. L.P. v. Comcast Cable Commc'ns, LLC*, No. 1:12-cv-01013-RGA (D. Del. Feb. 5, 2015), D.I. 264 (final jury instructions) Instruction 5.2, at 26; *Bio-Rad Labs., Inc. v. 10X Genomics, Inc.*, No. 1:15-cv-00152 (D. Del. Nov. 13, 2018), D.I. 470 (final jury instructions) Instruction 8, at 38.

21

**8.3  DUTY TO DELIBERATE**

Now that all the evidence is in and the arguments are completed, you are free to talk about the case in the jury room. In fact, it is your duty to talk with each other about the evidence, and to make every reasonable effort you can to reach unanimous agreement. Talk with each other, listen carefully and respectfully to each other's views, and keep an open mind as you listen to what your fellow jurors have to say. Try your best to work out your differences. Do not hesitate to change your mind if you are convinced that other jurors are right and that your original position was wrong.

But do not ever change your mind just because other jurors see things differently, or just to get the case over with. In the end, your vote must be exactly that—your own vote. It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience.

No one will be allowed to hear your discussions in the jury room, and no record will be made of what you say. So you should all feel free to speak your minds.

Listen carefully to what the other jurors have to say, and then decide for yourself.

**AUTHORITY**:    *Sprint Commc'ns Co. L.P. v. Comcast Cable Commc'ns, LLC*, No. 1:12-cv-01013-RGA (D. Del. Feb. 5, 2015), D.I. 264 (final jury instructions) Instruction 5.3, at 27; *Bio-Rad Labs., Inc. v. 10X Genomics, Inc.*, No. 1:15-cv-00152 (D. Del. Nov. 13, 2018), D.I. 470 (final jury instructions) Instruction 9, at 39.

### 8.4  SOCIAL MEDIA

During your deliberations, you must not communicate with or provide any information to anyone by any means about this case. You may not use any electronic device or media, such as the telephone, a cell phone, smart phone, iPhone, blackberry or computer, the internet, any internet service, any text or instant messaging service, any internet chat room, blog, or platform such as Facebook, Instagram, LinkedIn, YouTube or Twitter to communicate to anyone any information about this case or to conduct any research about this case until I accept your verdict. In other words, you cannot talk to anyone on the phone, correspond with anyone, or electronically communicate with anyone about this case. You can only discuss the case in the jury room with your fellow jurors during deliberations.

**AUTHORITY**:       *Sprint Commc'ns Co. L.P. v. Comcast Cable Commc'ns, LLC*, No. 1:12-cv-01013-RGA (D. Del. Feb. 5, 2015), D.I. 264 (final jury instructions) Instruction 5.4, at 28; *Bio-Rad Labs., Inc. v. 10X Genomics, Inc.*, No. 1:15-cv-00152 (D. Del. Nov. 13, 2018), D.I. 470 (final jury instructions) Instruction 10, at 40.

23

**8.5  COURT HAS NO OPINION**

Let me finish up by repeating something that I said to you earlier. Nothing that I have said or done during this trial was meant to influence your decision in any way. You must decide the case yourselves based on the evidence presented.

**AUTHORITY**:      *Sprint Commc'ns Co. L.P. v. Comcast Cable Commc'ns, LLC*, No. 1:12-cv-01013-RGA (D. Del. Feb. 5, 2015), D.I. 264 (final jury instructions) Instruction 5.5, at 29; *see Bio-Rad Labs., Inc. v. 10X Genomics, Inc.*, No. 1:15-cv-00152 (D. Del. Nov. 13, 2018), D.I. 470 (final jury instructions) Instruction 11, at 41.