IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ROGER P. JACKSON, M.D., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 21-53 (RGA) |
| | ) |
| NUVASIVE, INC., | ) |
| | ) |
| Defendant. | ) |

**PLAINTIFF'S MOTION FOR JUDGMENT AS A MATTER OF LAW**

Plaintiff respectfully submits that this case is the exception to the reality that most cases that reach this stage before this Court are not good candidates for a successful motion for judgment as a matter of law. This case is not the typical case before this Court, and Plaintiff respectfully requests that the Court grant its motion to avoid the substantial prejudice that Plaintiff will suffer if NuVasive's legally incognizable counterclaims that are seeking $13.9MM are presented to the jury. Plaintiff submits that the law and the facts are clear the NuVasive's theories of liability of those two claims, and its unitary theory of damages on those claims are not recognized under the law of Missouri.

**Implied Covenant:** First, with respect to NuVasive's counterclaim for implied covenant of good faith and fair dealing, there are several reasons why the claim cannot survive. Most acutely, NuVasive's theory of liability directly overlaps with its express theory of breach of contract. It's implied covenant theory is exactly the situation that the implied covenant cannot cover. NuVasive's theory is nothing more than an attempt to deputize the jury to find some nebulous "bad faith" actions of Plaintiff. *Zubres Radiology v. Providers Ins. Consultants*, 276 S.W.3d 335, 340 (Mo. Ct. App. 2009) ("The covenant of good faith and fair dealing is not "'an overflowing cornucopia of wished-for legal duties.'" (citation omitted). When asked at the jury

1

instruction charge conference, NuVasive's counsel could not identify the basic theory of their claim. NuVasive's attempt later that evening did nothing to assuage the concerns that NuVasive's claim is precisely the type of hazy implied covenant claim that is not allowed. NuVasive stated that its theory is: "Dr. Jackson has breached the implied covenant of good faith and fair dealing by subjectively and in bad faith implementing and applying the definition of Helical Flange in the enforcement of his patent portfolio in a way that evades the spirit of the 2014 Agreement and/or denies NuVasive the expected benefit of the 2014 Agreement." That description does not in any way identify a specific area of discretion provided to Dr. Jackson under the contract which he abused to evade the spirit of the agreement. Rather, it is a claim that if NuVasive loses its direct claim, the contract should have said something else. NuVasive will win or lose on its express breach of contract counterclaim if that claim is presented to the jury, and it cannot have a legally impermissible second bite at the apple with the jury on its unformulated implied covenant claim.

**Unjust Enrichment:** NuVasive's unjust enrichment claim also cannot be allowed to go to the jury. There was no enrichment, and NuVasive's own expert agrees. NuVasive cannot legally meet the elements of the claim because both sides agree that the royalty stream of the 2008 Agreement was worth more than the $30MM dollars that Dr. Jackson received for the buyout of that Agreement. Tr. at 862:23-24 ("My opinion would be if you adjust Dr. Becker's analysis and use the 11 percent discount rate, it would be 3 million. If you just adjust for that 30 million buyout value and apply that to his figures, it would be the .7 to the 6.8 million.").

**Damages:** Finally, NuVasive's only legal theory of harm and damages on its unjust implied covenant and enrichment claims is legally absurd. Multiple NuVasive witness testified that the damages from that claim accrued from the mere threat of legal dispute and the accompanying distraction. Jonatan Spangler testified:

2

> **Q. How would you describe NuVasive's expected benefit under the 2014 agreement?**
>
> **A. The benefit is freedom to pursue our commercial efforts without distraction, without the friction in acrimony of litigation, what we see here.**

Tr. at 729;

> Q. In your role as chief patent counsel at NuVasive, would you have signed off on the 2014 agreement if you thought Dr. Jackson could still sue NuVasive for patent infringement on its spinal implant products?
>
> A. Absolutely not.
>
> Q. Why do you say that?
>
> A. Because the reason we were doing it, it was really multiple-fold. One, primarily, it was to, again, have freedom to pursue the design latitude to have a best-in-class solution and to **not get brought down with the distraction, financial, you know, risk and acrimony of litigation.** And it also made up for the underpayment, the inadvertent underpayment that we found out on the international side.

730-31; *see also* Tr. at 727. NuVasive's expert Mr. Pampinella parroted that theory of damages.

Crucially, it is undisputed that NuVasive has no direct claim for actual attorney's fees damages for the claims related to the implied covenant or unjust enrichment claims. It is undisputed that NuVasive has also not attempted to quantify the harm of the mere threat or "distraction" of a legal claim, and to the extent NuVasive offers a theory of $13.9 million in damages, that damages figure is not proximately tied to the factual basis for the alleged harm. The only basis NuVasive has ever argued is the threat of lawsuit and distraction.

> Q. Well, you just says the damage was because they were forced to defend a lawsuit.
>
> A. And deal with all the distractions and everything that goes along with that, yes.
>
> **Q. Where in your report is your opinion quantification of damages about the cost to NuVasive of distraction?**
>
> **A. It's not that.** It's simply based upon they paid for something they didn't receive.

3

97088596.2

> Q. Yeah. But you just testified that NuVasive was harmed by distraction, correct?
>
> A. I'm saying that's an element of this. I'm saying the fact is they paid for something they did not get because Dr. Jackson came back and asserted patents against them, which is contrary to what they believed they negotiated for."

Tr. at 605-06; *id.* at 605.

For the reasons stated below, Plaintiff moves under Federal Rule of Civil Procedure 50(a) for judgment as a matter of law ("JMOL") that it has not breached the covenant not to sue in the 2014 Agreement, has not breached the implied covenant of good faith and fair dealing, and was not unjustly enriched. Plaintiff further moves for JMOL on the grounds that the damages NuVasive seeks are not supported. Plaintiff further moves for JMOL on the grounds that NuVasive's counterclaims for breach of the implied covenant of good faith and fair dealing and unjust enrichment are barred by the statute of limitations.

### A. Legal Standard

Judgment as a matter of law is appropriate if "the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for [a] party" on an issue. Fed. R. Civ. P. 50(a)(1). *Sprint Commc'ns Co. L.P. v. Comcast IP Holdings, LLC*, No. 12-1013-RGA, 2015 WL 4720576, at *2 (D. Del. Aug. 7, 2015), *aff'd sub nom. Sprint Commc'ns Co., L.P. v. Comcast Cable Commc'ns, LLC,* 675 F. App'x 974 (Fed. Cir. 2017). To prevail, "a party must show that the jury's findings, presumed or express, are not supported by substantial evidence or, if they were, that the legal conclusion(s) implied [by] the jury's verdict cannot in law be supported by those findings." *Id.* (quoting *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1348 (Fed. Cir. 1998) (alterations in original) (internal quotation marks omitted)). "'Substantial' evidence is such relevant evidence from the record taken as a whole as might be accepted by a reasonable mind as adequate to support the

finding under review." *Id.* (quoting *Perkin-Elmer Corp. v. Computervision Corp.*, 732 F.2d 888, 893 (Fed. Cir. 1984)).

### B. Argument

#### 1. Dr. Jackson is Entitled to Judgment As a Matter of Law on NuVasive's Counterclaim for Breach of the Implied Covenant of Good Faith and Fair Dealing

In addition to its counterclaim for breach of contract, NuVasive seeks to recover on what it characterizes as a mutually exclusive theory – breach of the implied covenant of good faith and fair dealing. But the evidence at trial confirms NuVasive's claim here is merely a second attempt to recover under the 2014 Agreement. Because NuVasive failed to admit substantial evidence that Dr. Jackson exercised any discretion under the 2014 Agreement in a manner as to evade the spirit of the transaction and deprive NuVasive of the benefit of its bargain, this claim fails as a matter of law.

"Missouri law implies a covenant of good faith and fair dealing in every contract." *Farmers' Elec. Coop., Inc. v. Missouri Dep't of Corr.,* 977 S.W.2d 266, 271 (Mo.1998). "This good faith requirement extends to the manner in which a party employs discretion conferred by a contract." *BJC Health Sys. v. Columbia Cas. Co.*, 478 F.3d 908, 914 (8th Cir. 2007) (citing *Mo. Consol. Health Care Plan v. Cmty. Health Plan,* 81 S.W.3d 34, 45 (Mo.Ct.App.2002)). "There can be no breach of the implied promise or covenant of good faith and fair dealing where the contract expressly permits the actions being challenged, and the defendant acts in accordance with the express terms of the contract." *Arbors at Sugar Creek Homeowners Ass'n v. Jefferson Bank & Trust Co.*, 464 S.W.3d 177, 185 (Mo. 2015); *Glenn v. HealthLink HMO, Inc.*, 360 S.W.3d 866, 877 (Mo. Ct. App. 2012); *Koger v. Hartford Life Ins. Co.*, 28 S.W.3d 405, 412 (Mo. Ct. App. 2000).

5

"To establish a violation of the covenant of good faith and fair dealing, it is not enough for a plaintiff to show that a party invested with discretion made an erroneous decision." *Id.* "Instead, the plaintiff must show that the party exercised its discretion 'in such a manner as to evade the spirit of the transaction or so as to deny [the other party] the expected benefit of the contract.'" *Id.* (quoting *Mo. Consol. Health Care Plan*, 81 S.W.3d at 46). This said, the "covenant of good faith and fair dealing does not establish a 'general reasonableness requirement.'" *Id.* (quoting *Schell v. LifeMark Hospitals of Missouri,* 92 S.W.3d 222, 230 (Mo.Ct.App.2002)).

To establish a submissible case of bad faith, then, a party must prove the other party's conduct was "directed toward evading the spirit of the contract or denying [the party] the benefit of its bargain." *Id.*  NuVasive has failed to introduce any evidence, let alone substantial admissible evidence that Dr. Jackson acted in bad faith in pursuing his claims in this lawsuit.

NuVasive's theory is that that Dr. Jackson breached the implied covenant of good faith and fair dealing by subjectively and in bad faith implementing and applying the definition of Helical Flange in the enforcement of his patent portfolio in a way that evades the spirit of the 2014 Agreement and/or denies NuVasive the expected benefit of the 2014 Agreement. NuVasive has not presented any evidence that Dr. Jackson exercised discretion under the 2014 agreement in such a manner as to evade the spirit of the contract, and because NuVasive has failed to admit any such evidence, Dr. Jackson is entitled to judgment as a matter of law.

Dr. Jackson is also entitled to judgment as a matter of law on NuVasive's claim for breach of the implied covenant of good faith and fair dealing because there is an express agreement (the 2014 Agreement) dealing with the same subject matter, and there can be no breach of the implied covenant if the parties expressly addressed the matter at issue in the contract. *Johnson v. Missouri-Kansas-Texas R. Co.*, 216 S.W.2d 499, 502 (Mo. 1949) ("Of course such a covenant may not be

implied, if there is an express covenant dealing with the same subject matter, or any expressed intention to the contrary."); *Glenn*, 360 S.W.3d at 877. NuVasive argues that if Dr. Jackson did not expressly breach the covenant not to sue, then he breached the implied covenant of good faith and fair dealing. If NuVasive were correct, and it is not, every party that loses a dispute over a contract's meaning might be liable for breach of the implied covenant of good faith and fair dealing. This is not and cannot be the case.

NuVasive's theory of damages in connection with this claim appears to be that it was harmed by the threat of this litigation, though it has failed to propound any evidence of the actual cost or value of that alleged injury. Even assuming NuVasive had introduced evidence of such damages, they would not be recoverable. "A claim for breach of the implied covenant of good faith and fair dealing is a contract action." *Amoroso v. Truman State Univ.*, 683 S.W.3d 298, 304 (Mo. Ct. App. 2024). "The beginning point for any analysis of a claim for breach of the covenant of good faith and fair dealing is to recognize that it is a contract action, and the damages associated with a breach of contract arise from the terms of the contract." *Id.* (quoting *Rock Port Mkt., Inc. v. Affiliated Foods Midwest Coop., Inc.*, 532 S.W.3d 180, 188 (Mo. Ct. App. 2017). "Thus, the measure of damages in a claim for breach of the implied covenant of good faith and fair dealing is the contract measure of damages." *Id.*

Section 6.04 of the 2014 Agreement provides: "IN NO EVENT, WHETHER AS A RESULT OF TORT, BREACH OF CONTRACT, STRICT LIABILITY OR ANY OTHER LEGAL THEORY OR OTHERWISE, SHALL EITHER PARTY BE LIABLE FOR ANY SPECIAL, CONSEQUENTIAL, INCIDENTAL OR PUNITIVE DAMAGES TO THE OTHER."

"'Actual damages are compensatory and are measured by the loss or injury sustained' as a direct result of the wrongful act." *Curators of Univ. of Missouri v. Suppes*, 583 S.W.3d 49, 61 (Mo.

Ct. App. 2019) (quoting *Stiffelman v. Abrams,* 655 S.W.2d 522, 531 (Mo. banc 1983)). "Consequential damages 'are those damages naturally and proximately caused by the commission of the breach and those damages that reasonably could have been contemplated by the defendant at the time of the parties' agreement.'" *Id.* (quoting *Ullrich v. CADCO, Inc.,* 244 S.W.3d 772, 779 (Mo.Ct.App. 2008)).

But the threat of suit is not and cannot be a breach of the covenant not to sue. As a result, any alleged injury from the threat of suit is not an injury sustained as the direct result of a breach of a covenant not to sue. Accordingly, those damages, at best, are consequential damages, which are barred by Section 6.04 of the 2014 Agreement.

NuVasive's claim for $13.9 million in damages is also unsupported by the evidence. NuVasive's claim for damages is unsupported because it is unreliable, and not tied to the facts of the case because NuVasive seeks the same amount of damages for its claim based on harm that NuVasive allegedly suffered from Dr. Jackson's assertion of the Asserted Patents in litigation, but NuVasive seeks the same amount of damages regardless of the ultimate result of Dr. Jackson's claim for patent infringement. NuVasive's request for damages also seeks an impermissible windfall. Therefore Dr. Jackson is entitled to judgment as a matter of law on NuVasive's request for damages on its claim for breach of the implied covenant of good faith and fair dealing.

### 2. Dr. Jackson is Entitled to Judgment as a Matter of Law on NuVasive's Counterclaim for Unjust Enrichment

Under Missouri Law, if a claimant has entered into an express contract for the very subject matter for which he seeks recovery, unjust enrichment does not apply, and the claimant's rights are limited to the express terms of the contract. *NTD I, LLC v. Alliant Asset Mgmt. Co., LLC*, 362 F. Supp. 3d 664, 681–82 (E.D. Mo. 2019) (*citing Howard v. Turnbull,* 316 S.W.3d 431, 436 (Mo. Ct. App. W.D. 2010). "Missouri law does not permit recovery in quantum meruit or unjust

enrichment when the plaintiff's relationship with the defendant is governed by an existing contract." *32nd St. Surgery Ctr., LLC v. Right Choice Managed Care*, 820 F.3d 950, 957 (8th Cir. 2016) (citation and quotation omitted); *see also See Steinberg v. Fleischer*, 706 S.W.2d 901, 906 (Mo. Ct. App. 1986) (making clear that quantum meruit and breach of contract are inconsistent remedies if pursued for the same damages).

Pursuant to this Court's May 31, 2024 Order, there is no dispute that the 2014 Agreement is a valid, enforceable, and unambiguous contract. D.I. 261 at 8 ("At oral argument, the parties agreed that, in relation to the issues addressed in this opinion, the 2014 Agreement is unambiguous, there are no disputed factual issues. . .. I conclude that it is unambiguous."). Accordingly, NuVasive's counterclaim for unjust enrichment is barred by Missouri law and a jury verdict on this claim could not be supported. *32nd St. Surgery Ctr., LLC*, 820 F.3d at 957. As a result, Dr. Jackson is entitled to judgment as a matter of law on this claim.

Even assuming the claim were not barred as a matter of law, Dr. Jackson would nonetheless be entitled to judgment because NuVasive cannot prove Dr. Jackson obtained any benefit from NuVasive, that Dr. Jackson appreciated any such benefit, or that Dr. Jackson accepted and retained any benefit under inequitable or unjust circumstances. No reasonable juror could find that Dr. Jackson received and appreciated a benefit under the 2014 Agreement which bought out Dr. Jackson's rights to an ongoing royalty stream under the 2008 Agreement. The evidence shows that Dr. Jackson actually received less money from NuVasive under the 2014 Agreement than he would have if the 2008 Agreement had remained in place. As demonstrated by Dr. Jackson's expert witness, Brian C. Becker, had the parties not entered into the 2014 Agreement, NuVasive would have been required to continue paying the 2008 Agreement Royalties, which would have been substantially larger than the $30 million paid under the 2014 Agreement.

There is also no evidence from which a reasonable juror could find that, to the extent Dr. Jackson received any benefit under the 2014 Agreement, Dr. Jackson accepted and retained such benefit under unjust circumstances. If any party to the 2014 Agreement acted in an unjust or inequitable manner, it was NuVasive because it fraudulently induced Dr. Jackson to enter into the 2014 Agreement by presenting him with false revenue and royalty projections. No reasonable juror could find that any payment to Dr. Jackson under the 2014 Agreement was unjust or inequitable.

Given the evidence, no reasonable jury would not have a legally sufficient evidentiary basis to find for NuVasive on this claim and Dr. Jackson is entitled to judgment as a matter of law. Fed. R. Civ. P. 50(a)(1).

### 3. Dr. Jackson is Entitled to Judgment as a Matter of Law on NuVasive's Claims for Damages to the Extent the Damages Sought Reflect an Alleged Overpayment Under the 2014 Agreement

Regardless of how NuVasive has tailored its claim and its request for relief, what it is really seeking is the equitable relief of contract reformation based on a mutual mistake. The Court has already ruled that the 2014 Agreement did not grant NuVasive freedom forever from Dr. Jackson. D.I. 261 at 19. However, if NuVasive loses its breach of contract claim, and it should, NuVasive should not be permitted to nonetheless seek damages on the basis that it allegedly overpaid Dr. Jackson under the 2014 Agreement.

First, as discussed above, the evidence supports a finding that NuVasive underpaid for the undisputed rights it had under the 2008 Agreement when it agreed to pay Dr. Jackson $30 million in connection with the 2014 Agreement. This alone precludes a finding that NuVasive has suffered any compensable damages, even assuming those damages could be an adjustment of the price negotiated and agreed upon in the valid, enforceable, and unambiguous 2014 Agreement.

But also, none of NuVasive's alternative theories of recovery – unjust enrichment or breach of the implied covenant of good faith and fair dealing – enable NuVasive to obtain a revision of the 2014 Agreement's terms. Either NuVasive paid for the rights it alleges it has, and which Dr. Jackson disputes, or it did not. If it did not, it lacks those rights and Dr. Jackson is entitled to damages, not NuVasive.

NuVasive's improper claims for unjust enrichment and breach of the implied covenant of good faith and fair dealing are really a veiled effort to ask the jury to reform the contract, as it believes the contract should say something different other than what it expressly and unambiguously grants. NuVasive damages theory is really just an effort to claw back a portion of what it paid to reflect what it believes should be the corrected scope of the 2014 Agreement. These are not damages proximately resulting from any unfair enrichment or breach of good faith – this is an effort to retroactively renegotiate the consideration and reform the contract—an argument further evidenced by NuVasive's damage expert Mr. Pampinella asserting, "had NuVasive known Dr. Jackson would continue to seek royalty payments even after the 2014 Agreement, it would not have paid the $30 million to Dr. Jackson. Dr. Jackson is liable to NuVasive 'in an amount to make NuVasive whole such that it is compensated for the benefit that it conferred on Dr. Jackson.'" Pampinella Supplemental Report at ¶48.

As such, NuVasive's unjust enrichment theory is a claim for contract reformation[1] and asks the jury to reform the $30M consideration given, which are equitable remedies in nature. As explained in Obermiller,

---

[1] Again, there is no dispute the 2014 Agreement is a binding, unambiguous contract, and there are no facts that support a mutual mistake here, this is not a remedy available to NuVasive and Pampinella's damage assertion is not properly founded in Missouri Contract law. *See Urban Expansion, Inc. v. Fireman's Fund Ins. Co.*, 592 S.W.2d 239, 242 (Mo.App.1979)("A court may reform a written contract when the writing evidencing the contract fails to correctly reflect the agreement. The party seeking reformation must show by clear and convincing evidence that a

> Thus, both reformation based upon mutual mistake and rescission based upon unilateral mistake are equitable remedies. Indeed, these are extraordinary equitable remedies that "should be granted with great caution and only in clear cases of fraud or mistake." *Alea London Ltd. v. Bono–Soltysiak Enters*., 186 S.W.3d 403, 415 (Mo.App. E.D.2006). "Equitable issues that traditionally have been tried to the court shall still be tried to the court." *Leonardi*, 137 S.W.3d at 474. The fact that reformation or rescission, if either of these equitable remedies were granted, might make it easier for OCS to recover under its breach of contract or quantum meruit claims does not somehow convert these equitable claims into legal ones as asserted by OCS. OCS asked the court to use its equitable powers to rewrite (reform) or entirely erase (rescind) the contract. Accordingly, count's two and three of OCS's petition asserted equitable claims properly tried to the court.

*Obermiller,* 319 S.W.3d at 547–48. As such, regardless of how NuVasive frames its claim and request for relief, it is asking for reformation (or possibly recission) of the 2014 Agreement should it lose the breach of contract claim. NuVasive has not and cannot provide any legal support for its contention that these remedies are available as damages for the claims it has submitted. As a result, no jury verdict in NuVasive's favor awarding these damages could be supported in law and Dr. Jackson is entitled to judgment in his favor.

### 4. Dr. Jackson is Entitled to Judgment as a Matter of Law on NuVasive's Counterclaim for Breach of the 2014 Agreement's Covenant Not To Sue

Under Missouri law, a party seeking to recover for breach of contract must prove the following elements: (1) the existence of an enforceable contract between the parties to the action; (2) mutual obligations arising under its terms; (3) the party being sued failed to perform obligations imposed by the contract; and (4) the party seeking recovery was thereby damaged. *Jackson v. Williams, Robinson, White & Rigler, P.C.*, 230 S.W.3d 345, 348 (Mo. Ct. App. 2007). Here, NuVasive has not met its burden of proof, as NuVasive has not shown that Dr. Jackson failed to perform obligations imposed by the contract.

---

mistake was made that was both mutual and common to both parties, and it must appear that both parties did what neither intended to do.").

97088596.2

NuVasive argued Dr. Jackson failed to perform obligations imposed by the contract by breaching the covenant not to sue provision of the 2014 Agreement. The sole basis for this argument is that the Asserted Patents fall under the "any other related intellectual property invented and owned by the Jackson Group" language of the "Helical Flange" definition of § 1.07, and thus Dr. Jackson breached the covenant not to sue by asserting the Asserted Patents in this case. However, NuVasive has failed to provide any evidence not already rejected by the Court to support this argument. As such, judgement as a matter of law is appropriate.

In particular, NuVasive set forth five alleged facts for why the Asserted Patents allegedly fall under the "Helical Flange" definition of the 2014 Agreement—each of which are contrary to the Court's holdings or rules of evidence, and thus fail to provide substantial evidence of NuVasive's claim.  *First*, NuVasive will argue the Asserted Patents were related because they incorporate the '689 Patent by reference. *See* 8/14/24 Trial Tr., 835:1-836:16. However, as the Court held during Summary Judgment, "mere incorporation by reference of the '689 patent is insufficient to bring an otherwise non-Helical-Flange patent within the scope of the Helical Flange definition." D.I. 261, pg. 12.

*Second*, NuVasive will argue that Dr. Jackson's testimony regarding "peripherally related" is sufficient (8/14/24 Trial Tr., 839:4-25)—however this testimony is in direct relation to the "incorporation by reference" section of the '200 Patent, and as such, is also insufficient for the same reason as mere incorporation by reference. *See id.* at 839:7-9 ("can you explain to me why there is reference to an incorporation by reference of the '689 patent? A. It's only peripherally related as one option."); D.I. 261, pg. 12.

*Third*, NuVasive argued that the mention of a helical flange, flange form or guide and advancement structure makes the Asserted Patents "related". *See* 8/14/24 Trial Tr., 836:17-839:3.

However, this is also contrary to the Court's interpretation of its rulings. *See* 8/5/24 Pretrial Conf. Tr., 52:8-14 ("I think in connection with the '689 patent, and the six or eight lines of what's in the briefing, the Defendant described as similar disclosures to what's in the '689 patent. I think what I ruled and the way I interpret what I ruled is that those things by themselves don't turn a non-helical flange patent into "related intellectual property" as described in the contract."); *compare id.*, 834:17-839:3 (*citing* 9:65-10:20 of the '200 Patent) *with* D.I. 210, pg. 28 (*citing* 9:65-10:11 of the '200 Patent).

*Fourth*, NuVasive argued that merely depicting a "helical flange" in FIG. 9 of the '200 Patent is sufficient – yet no reasonable jury could conclude that the guide and advancement structure 152 shown in FIG. 9 is the same as Dr. Jackson's proprietary helical flange technology, as it does not include a "flange," as shown in the chart below.



| '200 Patent (JX032), FIG. 9 | '689 Patent (JX037), FIG. 4. |

Moreover, merely depicting a helical flange, flange form or guide and advancement structure is also insufficient to bring a patent that is not specifically directed to Dr. Jackson's proprietary helically wound mating and interlocking structures within the scope of the Helical Flange definition.

*Fifth*, Mr. Spangler testified as to the "helical flange" technology but failed to provide the jury with substantial evidence to support NuVasive's "related" claim. Mr. Spangler testified as to what NuVasive products included a helical flange (8/14/24 Trial Tr., 721:25-726:18), which fails to provide any relevant evidence for the jury for comparing "each asserted patent to the Helical Flange language in the 2014 Agreement". D.I. 285, pg. 7. Mr. Spangler also testified that the intention behind "other related intellectual property" was to "ensure that if there were other applications that were in this same family, ***that we would have access to that, again, to have freedom to pursue without controversy, our commercial efforts***." 8/14/24 Trial Tr., 732:14-733:24.  This is clear parol evidence that should not be admitted for interpreting the unambiguous language of the 2014 Agreement, is contrary to the Court's interpretation of "related" in the 2014 Agreement, and is contrary to the Court's holding that NuVasive did not receive a "universal," "package" or "portfolio" license from NuVasive. D.I. 261, pg. 12. As such, NuVasive has failed to put forth any substantial evidence to support its breach of contract claim.

Lastly, Dr. Jackson maintains that the relevant test in this case for determining what "related" means is contrary to the Supreme Court's holding in *Markman*, as allowing the question of interpretation of patents to be put to a jury frustrates the need for uniformity in in the treatment of a given patent. *See Markman v. Westview Instruments, Inc.,* 517 U.S. 370, 391 (1996) ("Uniformity would, however, be ill served by submitting issues of document construction to

juries. Making them jury issues would not, to be sure, necessarily leave evidentiary questions of meaning wide open in every new court in which a patent might be litigated, for principles of issue preclusion would ordinarily foster uniformity."); *compare with* D.I. 297 ("Only by evaluating what is "claimed or disclosed" in the asserted patents can the jury determined whether those patents are "related intellectual property" under the Helical Flange definition"), D.I. 285 ("A jury may compare each asserted patent to the Helical Flange language in the 2014 Agreement to determine, as a factual matter, whether Plaintiff has breach the covenant not to sue"). As such, Dr. Jackson reserves the right to appeal a determination that any Asserted Patent is "related" to the Helical Flange based on a jury's improper analysis of what is "claimed and disclosed" in the Asserted Patents. *See Markman*, 517 U.S. at 391 ("we hold that the interpretation of the word "inventory" in this case is an issue for the judge, not the jury.").

Regardless, Dr. Jackson respectfully submits that NuVasive failed to submit any evidence to support the claim for breach of the covenant not to sue that is not contrary to the Court's holdings or rules of evidence. As there is no substantial evidence for a reasonable jury to conclude for NuVasive, Dr. Jackson is entitled to judgment as a matter of law.

> **C.  Dr. Jackson is Entitled to Judgment as a Matter of Law on All of NuVasive's Counterclaims, Because They are Barred by the Statute of Limitations.**

Finally, Dr. Jackson is entitled to judgment as a matter of law that NuVasive's claims for breach of the implied covenant of good faith and fair dealing and unjust enrichment are barred by the statute of limitations. Missouri law provides a five-year statute of limitations for all actions upon contracts, obligations or liabilities, express or implied. Mo.Rev.Stat. § 516.120(4) (2000). Suits based on agreements (1) that are not in writing or (2) are not for the payment of money must be brought within five years. *Id.* Unjust enrichment is based on an implied or quasi-contractual obligation and is also subject to the five-year statute of limitations. *Royal Forest Condo. Owners's*

16

*Ass'n v. Kilgore*, 416 S.W.3d 370, 373 (Mo. App. E.D. 2013). Similarly, because the covenant of good faith and fair dealing is implied in every contract, e.g*., Schell v. LifeMark Hospitals of Missouri, 92 S.W.3d 222, 229 (Mo. Ct. App. 2002)*, claims for breach of that implied covenant are also governed by the 5-year statute of limitations.

It is undisputed that NuVasive filed its counterclaims on March 11, 2022. The evidence shows NuVasive knew well before March 11, 2017 that Dr. Jackson was reviewing patents, applications and claims to determine what would be assigned to NuVasive, and knew that Dr. Jackson was taking the position at that time that NuVasive was not free to make and sell the accused products without obtaining additional rights beyond those it had obtained in the 2014 Agreement. Prior to March 11, 2017, Dr. Jackson and his representatives communicated with NuVasive regarding Dr. Jackson's patents that Dr. Jackson asserted were outside the scope of the 2014 Agreement. NuVasive's claims were not brought within the statute of limitations and are therefore barred. No reasonable juror could find that NuVasive was not aware, or should not have been aware of its claims before March 11, 2017, and thus no reasonable juror could find that NuVasive's claims were brought within the statute of limitations.

For this reason also, Dr. Jackson is entitled to judgment as a matter of law in his favor.

**D.     Conclusion**

For the foregoing reasons, Dr. Jackson respectfully requests that the court grant judgment as a matter of law on breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, damages, and statute of limitations.

<table>
<tr><td>

OF COUNSEL:

Thomas L. Gemmell
POLSINELLI PC
150 N. Riverside Plaza, Suite 3000
Chicago, IL 60606
Phone: (312) 819-1900
tgemmell@polsinelli.com

Darren E. Donnelly
POLSINELLI LLP
Three Embarcadero Center, Suite 2400
San Francisco, CA  94111
Phone: (650) 461-7700
ddonnelly@polsinelli.com

Aaron M. Levine
Bobbie J. Horocofsky
POLSINELLI PC
1000 Louisiana St., 64th Floor
Houston, TX 77002
Phone: (713) 374-1600
alevine@polsinelli.com
bhorocofsky@polsinelli.com

Kevin R. Davis
POLSINELLI LLP
2049 Century Park East, Suite 2900
Los Angeles, CA 90067
Phone: 310-556-1801
krdavis@polsinelli.com

August 15, 2024

</td><td>

POLSINELLI PC

*/s/ Stephen J. Kraftschik*
Stephen J. Kraftschik (#5623)
222 Delaware Avenue, Suite 1101
Wilmington, DE 19801
(302) 252-0920
skraftschik@polsinelli.com
*Attorneys for Plaintiff Roger P. Jackson, M.D.*

</td></tr>
</table>

97088596.2

## CERTIFICATE OF SERVICE

I hereby certify that on August 15, 2024, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on August 15, 2024, upon the following in the manner indicated:

| | |
|---|---|
| Daniel M. Silver<br>Alexandra M. Joyce<br>MCCARTER & ENGLISH, LLP<br>Renaissance Centre<br>405 N. King Street, 8th Floor<br>Wilmington, Delaware 19801<br>(302) 984-6300<br>dsilver@mccarter.com<br>ajoyce@mccarter.com<br>*Attorneys for Defendant NuVasive, Inc.* | BY ELECTRONIC MAIL |
| Colin G. Cabral<br>James R. Anderson<br>PROSKAUER ROSE LLP<br>One International Place<br>Boston, MA  02110-2600<br>(617) 526-9600<br>ccabral@proskauer.com<br>jaanderson@proskauer.com<br>*Attorneys for Defendant NuVasive, Inc.* | BY ELECTRONIC MAIL |
| Jessica M. Griffith<br>Seth H. Victor<br>PROSKAUER ROSE LLP<br>2029 Century Park East, Suite 2400<br>Los Angeles, CA  90067-3010<br>(310) 284-4563<br>jgriffith@proskauer.com<br>svictor@proskauer.com<br>*Attorneys for Defendant NuVasive, Inc.* | BY ELECTRONIC MAIL |

/s/ *Stephen J. Kraftschik*
_____
Stephen J. Kraftschik (#5623)

97088596.2