## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

ROGER P. JACKSON, M.D.,

        Plaintiff,

        v.

NUVASIVE, INC.,

        Defendant.

C.A. No. 21-53-RGA



PUBLIC VERSION FILED: January 3, 2025

**NUVASIVE, INC.'S ANSWERING BRIEF IN OPPOSITION TO ROGER P. JACKSON, M.D.'S RENEWED MOTION FOR PARTIAL SUMMARY JUDGMENT AND <u>MOTION TO EXCLUDE PATENT DAMAGES OPINIONS</u>**

Dated: December 17, 2024

OF COUNSEL:

Colin G. Cabral
James R. Anderson
PROSKAUER ROSE LLP
One International Place
Boston, MA 02110
(617) 526-9600
ccabral@proskauer.com
jaanderson@proskauer.com


Jessica M. Griffith
PROSKAUER ROSE LLP
2029 Century Park East
Los Angeles, CA 90067
(310) 557-2900
jgriffith@proskauer.com

Daniel M. Silver (#4758)
Alexandra M. Joyce (#6423)
MCCARTER & ENGLISH, LLP
Renaissance Centre
405 N. King Street, 8th Floor
Wilmington, Delaware 19801
(302) 984-6300
dsilver@mccarter.com
ajoyce@mccarter.com

*Counsel for Defendant NuVasive, Inc.*

## <u>TABLE OF CONTENTS</u>

SUMMARY OF THE ARGUMENT ............................................................................ 1

ARGUMENT ........................................................................................................... 2

I.  GENUINE ISSUES OF MATERIAL FACT PRECLUDE DR. JACKSON'S MOTION FOR PARTIAL SUMMARY JUDGMENT OF INFRINGEMENT.................. 2

II.  THE PURCELL REFERENCE IS PRIOR ART TO THE '292 PATENT ....................... 7

III.  THE ASSERTED CLAIMS OF THE '932, '200, AND '444 PATENTS ARE INDEFINITE. .......................................................................................................... 8

IV.  MR. PAMPINELLA'S PATENT DAMAGES OPINIONS ARE ADMISSIBLE........... 12

    A.  Mr. Pampinella's Patent Infringement Damages Opinion Is Based on a Well-Established Approach. ................................................................... 13

    B.  Mr. Pampinella's Utilization of Independent, Third-Party Data Collection and Analysis Tools Was Tied to the Facts of the Case and Is Admissible........... 15

    C.  At Most, Dr. Jackson's Remaining Arguments Go to Credibility and Weight, Rather than Admissibility. ...................................................... 17

CONCLUSION..................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

C<small>ASES</small>

*Acceleration Bay LLC v. Activision Blizzard Inc.*,
2019 WL 4194060 (D. Del. Sept. 4, 2019)...........................................................................20

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)..................................................................................................................2

*Apple Inc. v. Motorola, Inc.*,
757 F.3d 1286 (Fed. Cir. 2014)..........................................................................................15, 20

*Bai v. L & L Wings, Inc.*,
160 F.3d 1350 (Fed. Cir. 1998)................................................................................................2

*C.R. Bard, Inc. v. Advanced Cardiovascular Sys., Inc.*,
911 F.2d 670 (Fed. Cir. 1990) ..................................................................................................3

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)................................................................................................................12

*CloudofChange, LLC v. NCR Corp.*,
2021 WL 11549625 (W.D. Tex. Nov. 1, 2021) .....................................................................16

*Commonwealth Sci. & Indus. Rsch. Org. v. Cisco Sys., Inc.*,
809 F.3d 1295 (Fed. Cir. 2015)..............................................................................................15

*Courtesy Prods., L.L.C. v. Hamilton Beach Brands, Inc.*,
2015 WL 7295436 (D. Del. Nov. 18, 2015) .......................................................................9, 10

*Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*,
424 F.3d 1293 (Fed. Cir. 2005).................................................................................................6

*Ethicon Endo–Surgery, Inc. v. U.S. Surgical Corp.*,
149 F.3d 1309 (Fed. Cir. 1998)................................................................................................2

*Exmark Mfg. Co. Inc. v. Briggs & Stratton Power Prods. Grp., LLC*,
879 F.3d 1332 (Fed. Cir. 2018)..............................................................................................15

*Fail-Safe L.L.C. v. A.O. Smith Corp.*,
744 F. Supp. 2d 870 (E.D. Wis. 2010)...................................................................................17

*GPNE Corp. v. Apple, Inc.*,
2014 WL 1494247 (N.D. Cal. Apr. 16, 2014) .......................................................................17

*Hardy v. United States*,
   141 Fed. Cl. 1 (2018) ...........................................................................17

*IPXL Holdings, L.L.C. v. Amazon.com, Inc.*,
   430 F.3d 1377 (Fed. Cir. 2005)................................................1, 8–11

*Kyocera Wireless Co. v. President Elecs., Ltd.*,
   179 F. App'x 53 (Fed. Cir. 2006) .......................................................5

*Limelight Networks, Inc. v. Akamai Techs., Inc.*,
   572 U.S. 915 (2014)........................................................................3, 4

*Lucent Techs., Inc. v. Gateway, Inc.*,
   580 F.3d 1301 (Fed. Cir. 2009)..........................................................14

*M2M Sols. LLC v. Enfora, Inc.*,
   167 F. Supp. 3d 665 (D. Del. 2016) (Andrews, J.) ...............................15

*MasterMine Software, Inc. v. Microsoft Corp.*,
   874 F.3d 1307 (Fed. Cir. 2017)............................................................9

*Monec Holding AG v. Motorola Mobility, Inc.*,
   2014 U.S. Dist. LEXIS 123898 (D. Del. Sep. 5, 2014) ..........................3

*Mfg. Res. Int'l, Inc. v. Civiq Smartscapes, LLC*,
   2019 WL 4198194 (D. Del. Sept. 4, 2019)...................................14, 19

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
   572 U.S. 898 (2014)............................................................................8

*Oracle Am. Inc. v. Google Inc.*,
   2012 WL 877125 (N.D. Cal. Mar. 15, 2012).....................................16

*PersonalWeb Techs. LLC v. Int'l Bus. Machs. Corp.*,
   2017 WL 3476082 (N.D. Cal. Aug. 14, 2017) ...................................19

*Realtek Semiconductor Corp. v. LSI Corp.*,
   2014 WL 46997 (N.D. Cal. Jan. 6, 2014) ..........................................16

*Rembrandt Data Techs., LP v. AOL, LLC*,
   641 F.3d 1331 (Fed. Cir. 2011).....................................................10, 12

*ResQNet.com, Inc. v. Lansa, Inc.*,
   594 F.3d 860 (Fed. Cir. 2010)............................................................14

*Rotec Indus., Inc. v. Mitsubishi Corp.*,
   215 F.3d 1246 (Fed. Cir. 2000)............................................................3

*Sasso v. Warsaw Orthopedic, Inc.*,
    45 N.E.3d 835 (Ind. Ct. App. 2015)..........................................................................18

*St. Claire Intellectual Prop. Consultants, Inc. v. Sony Corp.*,
    2003 WL 25299214 (D. Del. Feb. 21, 2003) ............................................................8

*UltimatePointer, L.L.C. v. Nintendo Co.*,
    816 F.3d 816 (Fed. Cir. 2016)..................................................................................10

*Union Carbide Corp. v. Am. Can Co.*,
    724 F.2d 1567 (Fed. Cir. 1984)..................................................................................5

*ViaTech Techs., Inc. v. Adobe, Inc.*,
    2023 WL 5975219 (D. Del. Sept. 14, 2023) ............................................................16

*Virnetx, Inc. v. Cisco Sys., Inc.*,
    767 F.3d 1308 (Fed. Cir. 2014)................................................................................15

*Wordtech Sys., Inc. v. Integrated Networks Sols., Inc.*,
    609 F.3d 1308 (Fed. Cir. 2010)................................................................................15

## SUMMARY OF THE ARGUMENT

1.      NuVasive has raised genuine issues of material fact with respect to whether Dr. Jackson can carry his burden on infringement.  Dr. Jackson's entire argument on infringement consists of only two conclusory sentences.  He did not identify any act(s) of infringement or address the elements of 35 U.S.C. §§ 271(a), (b), (c), or (f).  NuVasive has also raised affirmative defenses to Dr. Jackson's infringement claims.  Dr. Jackson has not challenged most of NuVasive's invalidity defenses, which, if sustained, would moot Dr. Jackson's infringement claims.

2.      Dr. Jackson's motion related to NuVasive's '292 patent invalidity defenses should be denied for two reasons: (1) Dr. Jackson admits that U.S. Patent No. 7,377,923 ("Purcell") is prior art; and (2) Dr. Jackson's argument that "Purcell's Figure 13 embodiment [is] necessary to NuVasive's invalidity theory" is simply wrong.  NuVasive's expert relies on two different figures in Purcell, as well as other prior art, for which the priority date has not been challenged

3.      Dr. Jackson moves for summary judgment that no claims are invalid as indefinite. Summary judgment should be granted *against* Dr. Jackson on this issue.  The asserted claims of the '932, '200, and '444 patents recite method steps in apparatus claims, in a plain violation of *IPXL Holdings, L.L.C. v. Amazon.com, Inc.*, 430 F.3d 1377 (Fed. Cir. 2005).  Dr. Jackson's experts cannot even agree on when infringement occurs, providing further support for the conclusion that these asserted claims are indefinite.  The Court should grant summary judgment for NuVasive because these patents are invalid as a matter of law.

4.      The opinions of NuVasive's damages expert, James Pampinella, are admissible because they are the product of a reliable methodology that has been endorsed by this Court and many others.  Dr. Jackson's disagreements with Mr. Pampinella's conclusions go to the weight of the evidence, not its admissibility, and can be explored during cross-examination at trial.

## ARGUMENT

"Summary judgment is improper 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Bai v. L & L Wings, Inc.*, 160 F.3d 1350, 1353 (Fed. Cir. 1998) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In determining whether there is a genuine issue of material fact, "the evidence must be viewed in a light most favorable to the party opposing the motion, with doubts resolved in favor of the opponent." *Ethicon Endo–Surgery, Inc. v. U.S. Surgical Corp.*, 149 F.3d 1309, 1315 (Fed. Cir. 1998).

## I.    GENUINE ISSUES OF MATERIAL FACT PRECLUDE DR. JACKSON'S MOTION FOR PARTIAL SUMMARY JUDGMENT OF INFRINGEMENT

Dr. Jackson moves for partial summary judgment of infringement on a subset of the asserted patents and accused products. But his renewed motion ignores critical points, including: (1) Dr. Jackson's argument consists of only two conclusory sentences and improperly attempts to incorporate by reference hundreds of pages of documents, expert reports, and witness testimony, without ever identifying an act of infringement or addressing the elements of 35 U.S.C. §§ 271(a), (b), (c), or (f), which have been asserted by Dr. Jackson; (2) Dr. Jackson has not alleged that a single actor makes or uses the entire bone screw assembly; (3) the Court has already found that the accused BOT Implant products are licensed, which is not addressed in Dr. Jackson's renewed papers; (4) NuVasive has raised an affirmative defense of invalidity that applies across all of the asserted claims (on multiple grounds); and (5) the absence of expert non-infringement opinions on certain claims does not mean that Dr. Jackson has carried his burden to show infringement.

*First*, Dr. Jackson's renewed motion purports to seek a finding of infringement under §§ 271(a), (b), (c), and (f), but the briefing includes no argument directed to the statutory elements or any of those infringement theories. Dr. Jackson argues in a single sentence that "the representative Reline 1601XXXX family of Accused Products literally satisfies each and every

limitation of the asserted claims of" five of the eight asserted patents.  D.I. 207 at 10.  There is no discussion of *any* of the other accused products, apart from one additional conclusory assertion: "Dr. Errico's declaration and Expert Reports set forth his uncontested analysis with respect to the other Representative Products."  *Id.*  This is a naked attempt to evade briefing limits in the Local Rules.  *See Monec Holding AG v. Motorola Mobility, Inc.*, 2014 U.S. Dist. LEXIS 123898, at *3 (D. Del. Sep. 5, 2014) ("This court has recognized the impropriety of including legal analyses in charts attached as exhibits to the briefing, as opposed to including them in the briefing itself, for purposes of circumventing page limitations.") (collecting cases).

Dr. Jackson's conclusory arguments are not enough to support summary judgment.  *See C.R. Bard, Inc. v. Advanced Cardiovascular Sys., Inc.*, 911 F.2d 670, 675 (Fed. Cir. 1990) (reversing grant of summary judgment "[v]iewing the evidence in this case in a light most favorable to the nonmoving party, and resolving reasonably inferences in [the nonmoving party]'s favor").  For example, Dr. Jackson has put forth no evidence related to infringement under § 271(f).  Dr. Jackson appears to concede that NuVasive does not make the complete invention claimed by certain of the asserted patents, and therefore cannot "be held liable under § 271(a) for 'making' or 'selling' less than a complete invention."  *Rotec Indus., Inc. v. Mitsubishi Corp.*, 215 F.3d 1246, 1252 n.2 (Fed. Cir. 2000).  Moreover, Dr. Jackson does not address whether he is asking that NuVasive be held liable for direct or indirect infringement of the asserted claims.  Nor does he specify the actual act of alleged infringement.  The Court should reject Dr. Jackson's failure to come forward with basic facts necessary to show infringement.

*Second*, certain of Dr. Jackson's infringement theories fail because he has not alleged that a single actor directly infringed the claims by making or using the whole bone screw assembly.  *See Limelight Networks, Inc. v. Akamai Techs., Inc.*, 572 U.S. 915, 921 (2014) ("[O]ur case law

leaves no doubt that inducement liability may arise 'if, but only if, there is direct infringement.'") (cleaned up).  For example, Dr. Jackson has alleged that NuVasive infringes the '711 patent indirectly because the asserted claims are not infringed until a surgeon "inserts the longitudinal connecting member into the receiver channel during a procedure." *E.g.*, D.I. 212, Jackson Ex. A-1, Errico Report ¶ 457.  But there is no single direct infringer because the surgeon does not practice each claim element during the surgery.  In fact, Dr. Jackson's technical expert testified that in the claimed "medical implant assembly," one element is performed by the surgeon (the "polyaxial bone screw [is attached] to a longitudinal connecting member"), while a separate element ("and then rotated to a second orientation") is performed by the manufacturer.  D.I. 216, Jackson Ex. 24, Errico Tr. at 78:4–79:20.  Dr. Errico also testified that he did not even know the identity of the manufacturer.  *Id.* at 79:21–25.  The same issue infects the asserted claims of the '866, '200, '444, and '273 patents (and potentially others) because each of them claim bone anchor assemblies secured to a longitudinal rod (by a surgeon) where the pressure insert is rotated from a first orientation to a second orientation (by the manufacturer).  *Id.* at 186:17–189:10 ("Q. The surgeon doesn't rotate the pressure insert within the receiver bore.  Right?  A. That is correct.  Q. That's true for all of the accused products.  Right?  [Objection]  A.  Yes.  Yes.").[1]

*Third*, the Court has already found that NuVasive has a license to make, use, and sell the BOT Implant products.  But the BOT Implant products are still included within the categories of accused products in Dr. Jackson's renewed motion.  In other words, Dr. Jackson has moved for summary judgment on products that do not infringe.  He has done nothing to correct that error.

---

[1] This divided infringement problem is compounded by the fact that it is not even clear when infringement of certain of these claims occurs, for the reasons discussed in Section III.

*Fourth*, NuVasive has affirmative defenses that apply to each one of the asserted claims, which preclude a finding of summary judgment of infringement.  Indeed, NuVasive has raised invalidity as an affirmative defense to all infringement claims.  *See* D.I. 201 at ¶ 219.  NuVasive has also put forward expert testimony concerning the invalidity of each of the asserted claims under at least 35 U.S.C. §§ 103, 112.  *See* Declaration of Wade Fallin, filed herewith, at ¶¶ 11–13.

*Fifth*, Dr. Jackson's motion rests on the flawed premise that there are "uncontested technical issues" because NuVasive's technical expert did not offer an opinion on every issue raised by Dr. Jackson's technical expert.  NuVasive does not have the burden to show non-infringement, and the absence of expert opinion on specific claim elements is not the same as the absence of a genuine factual dispute.  *See Kyocera Wireless Co. v. President Elecs., Ltd.*, 179 F. App'x 53, 54 (Fed. Cir. 2006) ("[E]xpert evidence is not always necessary to resolve questions of patent infringement.") (citing *Union Carbide Corp. v. Am. Can Co.*, 724 F.2d 1567, 1573 (Fed. Cir. 1984))).  There are multiple grounds upon which there are genuine disputes of material fact sufficient to defeat summary judgment on the issue of infringement.

Further, Dr. Jackson's claim that the technical issues are uncontested is simply incorrect. For example, the independent asserted claims of the '866, '200, '444, and '273 patents all require a "U-shaped" or "rod receiving" channel configured to receive an elongate connecting rod. However, Dr. Errico testified that he did not know whether the receiver channels in the accused products were configured to receive the elongate rod.  D.I. 216, Jackson Ex. 24, Errico Tr. at 155:23–156:14 (A: "[I]n this particular drawing it looks like there's a little gap between the U-body and – and the rod. . . . I don't know if it's just an artistic rendering or whether it's not, if we

had a physical part here and locked it down, whether we'd see that.").[2]  The question of whether the medical implant assembly infringes is similar to the one presented in *Cross Medical*, where the Federal Circuit "conclude[d] that there is a genuine issue of material fact as to whether surgeons infringe by making the claimed apparatus." *Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1312–14 (Fed. Cir. 2005).  Indeed, "a reasonable juror could conclude that the apparatus is not made because . . . there is no contact between the receiver member and the bone," as required by the claim language.  *Id.* at 1313.  The same is true here.  Dr. Errico's uncertainty about whether the components of the accused products are configured to (or do) fit together, as required by the asserted claims, creates a genuine dispute of material fact on infringement that should be put to the jury.

As Dr. Jackson notes, NuVasive identified missing claim elements in its response to Dr. Jackson's Interrogatory No. 22.  D.I. 217, Jackson Ex. 54 at 5–14.  Dr. Jackson faults the interrogatory responses because they "do not identify any evidence," D.I. 207 at 8 n.9, but the evidence of non-infringement is that the accused products lack the claimed features—no more is necessary at this stage.  The parties disagree that the claim elements are present in the accused products.  This precludes summary judgment because "the device must meet all of the structural limitations" in order to infringe.  *Cross Med.*, 424 F.3d at 1312–14.  NuVasive should be permitted to present its non-infringement defenses to the jury, both through the affirmative testimony of its fact witnesses and cross-examination of Dr. Jackson's technical experts.

---

[2] Dr. Errico was asked these questions in the context of a Surgical Technique Guide for the VuePoint product, but when asked whether the other Accused Products would function the same way, testified "I don't know."  D.I. 216, Jackson Ex. 24, Errico Tr. at 158:3–22.

6

## II.    THE PURCELL REFERENCE IS PRIOR ART TO THE '292 PATENT

Dr. Jackson argues that the Purcell reference "is not prior art to the asserted '292 patent because Purcell's Figure 13 embodiment, necessary to NuVasive's invalidity theories, is not entitled to a priority date before the filing of the '292 patent." D.I. 207 at 27. This argument fails for two reasons.

*First*, Dr. Jackson admits that the Purcell reference is prior art as to the subject matter disclosed in Purcell's first-filed provisional, which includes Figures 1–9 and their accompanying disclosure. In fact, Dr. Jackson admits that the '292 patent is prior art entitled to a priority date no earlier than June 18, 2003. D.I. 207 at 27. He also admits that the Purcell reference claims priority from a provisional application that was filed on May 22, 2003. *Id.* There is no genuine dispute that the May 22, 2003 Purcell provisional application provides written description and enablement support for Figures 1–9 and the accompanying disclosure of the Purcell patent—those sections are virtually mirror images of one another. *Compare* D.I. 216, Jackson Ex. 33, *with* D.I. 216, Jackson Ex. 32; D.I. 216, Jackson Ex. 26, Fallin Tr. at 92:4–93:16. There is also no genuine dispute that, as to those teachings (which make up the bulk of the reference), Purcell qualifies as prior art under pre-AIA § 102(e) as of May 22, 2003 and therefore pre-dates the filing of the '292 patent.

*Second*, contrary to Dr. Jackson's assertion, Figure 13 of Purcell is not "necessary" to NuVasive's invalidity theories as to the '292 patent. Mr. Fallin's expert report identifies the disputed element in two different embodiments shown in two different figures of the Purcell reference, as well as in the Schlapfer '090 reference, for which the priority date is not challenged. *See* D.I. 216, Jackson Ex. 28, Purcell Invalidity Chart, at 5, 12; D.I. 216, Jackson Ex. 29, Schlapfer '090 Invalidity Chart, at 5. Mr. Fallin confirmed at his deposition that the "radiused upper surface" in Schlapfer and the un-challenged embodiment of Purcell align with Dr. Errico's understanding of the meaning of that claim term. D.I. 216, Jackson Ex. 26, Fallin Tr. at 90:5–92:3.

Dr. Jackson does not address any of NuVasive's arguments or evidence concerning the obviousness of the '292 patent over the prior art. *See*, *e.g.*, D.I. 216, Jackson Ex. 27, Fallin Report § XV; Jackson Exs. 28, 29. Those arguments raise numerous disputed issues of material fact about what the references show and whether those disclosures render the asserted claims of the '292 patent invalid as obvious. Accordingly, Dr. Jackson is not entitled to summary judgment that NuVasive's theories of invalidity with respect to the '292 patent fail as a matter of law.[3] *See St. Claire Intellectual Prop. Consultants, Inc. v. Sony Corp.*, 2003 WL 25299214, at *1 (D. Del. Feb. 21, 2003) (denying summary judgment on validity where "conflicting expert testimony" raised "genuine issues of material fact regarding . . . obviousness").

## III.    THE ASSERTED CLAIMS OF THE '932, '200, AND '444 PATENTS ARE INDEFINITE.

Dr. Jackson argues that the asserted claims of the '932, '200, and '444 patents are not indefinite under *IPXL* and its progeny because the asserted claims are limited to language "describing the capabilities" of the claimed system and because, according to Dr. Jackson, "such claims are not invalid unless a determination of infringement is unclear." D.I. 207 at 29 (citing *IPXL Holdings, L.L.C. v. Amazon.com, Inc.*, 430 F.3d 1377 (Fed. Cir. 2005)). He is wrong on both fronts. These asserted claims are indefinite because they "fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014).

When a claim recites "a system and the method for using that system, it does not apprise a person of ordinary skill in the art of its scope" and is indefinite under 35 U.S.C. § 112. *IPXL*

---

[3] Insofar as Dr. Jackson's requested relief is limited to judgment that Purcell "is not prior art to U.S. Patent No. 9,808,292 *for the subject matter disclosed in connection with Purcell's Figure 13 embodiment*," D.I. 205, Proposed Order ¶ 7 (emphasis added), it would have no impact on NuVasive's claims or defenses.

*Holdings, L.L.C.*, 430 F.3d at 1384.    Dr. Jackson ignores the distinction between "the impermissible practice of combining apparatus and method limitations," on the one hand, and "'functional limitations,' in which the drafter properly defines something by what it does rather than what it is," on the other.    *Courtesy Prods., L.L.C. v. Hamilton Beach Brands, Inc.*, 2015 WL 7295436, at *4 (D. Del. Nov. 18, 2015) (citation omitted).

The asserted claims of the '932, '200, and '444 patents impermissibly combine the functional language of "capability" with a method step.    *See* Fallin Declaration ¶ 13, Fallin Invalidity Report, §§ XI.C, XIII.C, XIV.C; Fallin Reply Invalidity Report, ¶¶ 91–94.    These are not "apparatus claims with proper functional language."    *Cf. MasterMine Software, Inc. v. Microsoft Corp.*, 874 F.3d 1307, 1313 (Fed. Cir. 2017).

Asserted claims 1 and 31 of the '923 patent, for example, recite that the insert is *capable* of being top-loaded: "the [compression] insert is top-load*able* in the receiver in a first orientation" (emphasis added).    That is permissible.    But they also impermissibly recite that the insert is "*then rotated* to a second orientation."    D.I. 215, Jackson Ex. 2 (emphasis added).    The issue is even more stark with respect to asserted claims 1 and 18 of the '200 patent, where the claim then requires the steps of installing and then rotating the pressure insert: "the pressure insert *being installed* into a first position . . . *wherein upon rotation of the pressure insert* . . . the insert upwardly-facing surface *is rotated* under the receiver downwardly-facing surface."    D.I. 215, Jackson Ex. 6, '200 patent, Claim 1 (emphasis added); *see also id.*, Claim 18 and D.I. 215, Jackson Ex. 7, '444 patent, Claim 1 (similar).

This District has rejected nearly identical language as indefinite under *IPXL*.    In *Courtesy Products*, a claim for a "beverage brewing system" recited a number of components as claim limitations, including "a beverage brewing machine" and "a plurality of . . . brew baskets."    2015

9

WL 7295436, at *5. The claim then recited "the brew baskets *being inserted* into the location in the beverage brewing machine." *Id.* (emphasis added). The court found the claim indefinite because, "[l]ike the system claim in *IPXL*," the "*system*" claim also recited the method step of "*inserting* a brew basket." *Id.* (emphasis added); *see also Rembrandt Data*, 641 F.3d 1331, 1339 (Fed. Cir. 2011) (claim indefinite for reciting four apparatus elements ("buffer means, fractional encoding means, second buffer means, and trellis encoding means") and one method element ("transmitting the trellis encoded frames")).

The "being installed" and "rotation" method steps in the asserted claims of the '923, '200, and '444 patents give rise to the same indefiniteness issue as the "insertion" language that invalidated the claims at issue in *Courtesy Products*. 2015 WL 7295436, at *5 ("The court concludes that a person of ordinary skill in the art would not understand whether the claims at bar are infringed by an apparatus capable of heating water and having brew baskets inserted or when a person actually uses the beverage brewing system to heat water and inserts a brew basket.").

Dr. Jackson's expert witnesses admit that it is "unclear" from the language of these asserted claims "whether infringement occurs when one creates an infringing system, or whether infringement occurs when the user actually uses the system in an infringing manner." *UltimatePointer, L.L.C. v. Nintendo Co.*, 816 F.3d 816, 826 (Fed. Cir. 2016) (cleaned up). Dr. Jackson's invalidity expert, Dr. Oxland, contends that "one of ordinary skill in the art would not be confused as to when infringement occurs, as it plainly occurs when the claimed components of the assembly are combined." D.I. 214, Jackson Ex. B-1, Oxland Rebuttal Report, ¶ 795 ('932 patent), ¶ 798 ('200 patent), ¶ 803 ('444 patent). But this assertion is by itself confusing. Are the components of the assembly combined in an infringing manner when the insert is merely placed

in the receiver?  Or are they combined only after the insert is rotated from the first position to the second position?

Dr. Jackson's experts disagree on the answers to these questions.  At his deposition, Dr. Oxland testified that "when [the pressure insert] is in that locked position, that's when there would be infringement of that claim," *i.e.*, *after* the pressure insert has been rotated to the second position. D.I. 216, Jackson Ex. 25, Oxland Tr. at 178:4–8.  Yet, Dr. Jackson's infringement expert, Dr. Errico, came to a different conclusion, testifying that direct infringement occurs when the insert is installed in the first position *but not yet rotated* into the second position.  *See* D.I. 216, Jackson Ex. 24, Errico Tr. at 190:23–192:18 ("[Q.] We've taken the insert and installed it in the first position but have not yet rotated it into the second position.  Has Claim 1 [of the '444 patent] been directly infringed?  A. Yeah, I think then that – then you've instructed the surgeon how to do the rest.  I think that's direct and indirect."); *see also id.* at 191:25–192:7 (stating his response would be the same for the other asserted patents).

The doctrine articulated in *IPXL* was intended to address the problem that has arisen here. *See IPXL*, 430 F.3d at 1384 (finding claim indefinite where it was unclear whether infringement occurred "when one creates a system that allows" a user to perform certain functionality or "when the user actually uses the input means" and performs the functionality).

Contrary to Dr. Jackson's suggestion, the case law does not require that the claims "identify or specify users (*e.g.*, surgeons) performing the purported steps."  D.I. 207 at 29 n.19; *see MasterMine Software, Inc.*, 874 F.3d at 1314 (Federal Circuit "also applied [the *IPXL*] doctrine in [*Rembrandt Data*] where, unlike the claims in *IPXL Holdings* and *Katz*, the claims at issue did not claim user action").  That said, Dr. Errico admitted that the challenged claims include not just

elements of a polyaxial screw, but also at least one method step that must be performed by the manufacturer manipulating the previously recited components of the screw.[4]

The inclusion of method steps in the independent claims of the '923, '200, and '444 patents renders them indefinite, and infects the dependent claims as well.[5]  *See* D.I. 216, Jackson Ex. 27, Fallin Invalidity Report, §§ XI.C, XIII.C, XIV.C ("claim language that renders the claims indefinite because it recites both an apparatus and also an action performed by a component of the apparatus"); D.I. 216, Jackson Ex. 31, Fallin Reply Invalidity Report, ¶¶ 91–94 ("the statements in the Oxland Rebuttal Report about whether the claim language recites capabilities of various features or steps that are taken with respect to particular features at particular times highlights the issues that a person of ordinary skill in the art would have in understanding whether infringement has occurred and, if so, when").

Under these circumstances, the Court should exercise its authority to grant summary judgment for NuVasive finding the asserted claims of the '932, '200, and '444 patents invalid as indefinite.  FED. R. CIV. P. 56(f)(1); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986*)* (noting district court's inherent power to enter summary judgment).[6]

## IV.    MR. PAMPINELLA'S PATENT DAMAGES OPINIONS ARE ADMISSIBLE

In an attempt to disqualify the patent damages opinions of NuVasive's expert, James, Pampinella, Dr. Jackson mischaracterizes Mr. Pampinella's citation analysis as the exclusive basis

---

[4] D.I. 216, Jackson Ex. 24, Errico Tr. at 172:13–19 (Claim 31 of the '932 patent "refers to the insertion and rotation of the pressure insert within the receiver.  Correct?  A. That is correct.  Q. And that step is performed by the manufacturer.  Correct?  A. Yes."); *see also id.* at 169:4–11, 171:12–19 ('932 patent); 186:17–187:18; 188:17–189:2 ('200 patent); 189:4–10 ('444 patent).

[5] *See Rembrandt Data*, 641 F.3d at 1339 (finding method element in independent apparatus claim renders independent claim and its dependent claims invalid for indefiniteness).

[6] NuVasive will be filing a cross-motion for summary judgment that the asserted claims are invalid on several grounds, including that the claims are indefinite and invalid under the law of obviousness-type double patenting.

for his opinion as to the royalty rate that a hypothetical negotiation over the asserted patents would have yielded in 2013. D.I. 207 at 30, 40. In reality, Mr. Pampinella's damages opinions are based on far more. They utilize case-specific qualitative assessments and quantitative data, both of which are considered well-regarded and reliable by applicable case law. That alone is grounds for denying Dr. Jackson's motion. Additionally, Dr. Jackson's arguments targeting any purported shortcomings associated with Mr. Pampinella's citation analysis are undermined by the very authority he relies upon, and at most go to weight and credibility. For these reasons, Dr. Jackson's motion to exclude Mr. Pampinella's testimony should be denied.

### A.  Mr. Pampinella's Patent Infringement Damages Opinion Is Based on a Well-Established Approach.

Mr. Pampinella utilized the "market approach" to render his opinion as to the reasonable royalty rate to which the parties would have agreed in a hypothetical negotiation. The "market approach uses two categories of analytical procedures to indicate value": (1) the "collection and analysis of market-derived empirical transactional data . . . regarding the sale or licensing of the subject intangible asset itself and of comparative intangible assets," and (2) "[a]n assessment of the current market conditions . . . and of the changes in market conditions between the dates of the empirical transactional data and the date of the analysis." D.I. 217, Jackson Ex. 41, Rebuttal Expert Report of James E. Pampinella ("Pampinella Rebuttal") at ¶ 88 (citation omitted).)

With regard to the first category of procedures outlined by the market approach, Mr. Pampinella analyzed thirteen of Dr Jackson's license agreements pertaining to the same or similar technologies as those covered by the Asserted Patents, concluding that a cumulative royalty rate of 3.0% of net sales of products making use of all three Asserted Patent families provided a starting point for ascertaining the royalty rate to which the parties to this case would have agreed in a hypothetical negotiation. *Id.* ¶¶ 90–108.

13

Moving then to the second category of valuation procedures, Mr. Pampinella considered each of the remaining *Georgia-Pacific* factors to determine how market conditions pertaining to a hypothetical negotiation would differ from the conditions surrounding the comparable licenses, especially the 2008 Agreement.  When applying those factors, Mr. Pampinella determined that a downward adjustment to the royalty rate starting point was appropriate based on: (1) the fact that the Asserted Patents relate only to convenience, while the 2008 Agreement patents relate to safety (*id.* ¶¶ 56, 123, 125–26, 131); (2) the accused products represent a minor share of NuVasive's product revenue and net revenue (*id.* ¶ 119); (3) it was unlikely that NuVasive would agree to "stack" a full royalty rate on top of the royalty rate it was already committed to paying on net sales pursuant to the 2008 Agreement (*id.* ¶¶ 28, 66–70); and (4) NuVasive agreed to pay Dr. Jackson a $30 million lump sum, representing a 2.7% royalty rate, based on the understanding that NuVasive would not have any further payment obligations to Dr. Jackson with respect to the products in which the Asserted Patents are used (*id.* ¶¶ 12, 49, 66, 131).

To help quantify the downward adjustment warranted by those case-specific facts, Mr. Pampinella performed what are known as "forward citation analyses," which are used to compare the relative importance of the Asserted Patents to those covered by the 2008 and 2014 Agreements. *Id.* ¶¶ 57–65, 132–33.  To perform that analysis, Mr. Pampinella utilized two independent, third-party data collection and analysis tools to compare the relative importance of the asserted patents to those covered by the 2008 and 2014 Agreements.  *Id.*

The reliability of Mr. Pampinella's approach, and his use of qualitative assessments and quantitative data tied to the facts and circumstances of this case, is well-established.  *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1325 (Fed. Cir. 2009) (holding "hypothetical negotiation" is a well-accepted method to apportion the royalty rate); *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d

860, 869 (Fed. Cir. 2010) (endorsing utilization of *Georgia-Pacific* factors to apportion royalty rate); *Mfg. Res. Int'l, Inc. v. Civiq Smartscapes, LLC*, 2019 WL 4198194, at *2–3 (D. Del. Sept. 4, 2019) (Andrews, J.) (finding "[f]orward citation analysis has an academic pedigree that supports it as a reliable methodology").[7]  Dr. Jackson's motion to exclude Mr. Pampinella's patent infringement damages opinions in their entirety ignores all of the qualitative and quantitative facts and circumstances that Mr. Pampinella considered and relied upon in forming his opinions aside from the patent citation analyses.

**B.**    **Mr. Pampinella's Utilization of Independent, Third-Party Data Collection and Analysis Tools Was Tied to the Facts of the Case and Is Admissible.**

"Multiple courts have found forward citation analyses to be reliable."  *Manufacturing Resources*, 2019 WL 4198194, at *2.  As this Court has recognized, forward-citation analyses are generally admissible unless they "fail[] to take into consideration the specific facts of th[e] case."  *Id.*  When an expert "ties his forward citation analysis to a specific comparable license," he has cleared that low bar and his opinion should be admitted because "[a]t base, the question of whether

---

[7] *See also Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1318 (Fed. Cir. 2014) (allowing expert testimony where "application was straightforward and adequately supported by . . . technical experts and [damages expert's] own experience and expertise), *overruled on other grounds by Williamson v. Citrix Online, LLC*, 792 F.3d 1339 (Fed. Cir. 2015); *Wordtech Sys., Inc. v. Integrated Networks Sols., Inc.*, 609 F.3d 1308, 1319–20 (Fed. Cir. 2010) (opinions are admissible when they "account for differences in the technologies and economic circumstances of the contracting parties"); *accord Virnetx, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1331–33 (Fed. Cir. 2014) (excluding expert who relied on "conclusory assertions" akin to a "rule of thumb" that was not case-specific); *Exmark Mfg. Co. Inc. v. Briggs & Stratton Power Prods. Grp., LLC*, 879 F.3d 1332, 1351 (Fed. Cir. 2018) (excluding expert's proposed royalty rate when "plucked . . . out of nowhere"); *Commonwealth Sci. & Indus. Rsch. Org. v. Cisco Sys., Inc.*, 809 F.3d 1295, 1302 (Fed. Cir. 2015) (holding that "abstract recitations . . . and qualitative testimony that an invention is valuable—without being anchored to a quantitative market valuation—are insufficiently reliable"); *M2M Sols. LLC v. Enfora, Inc.*, 167 F. Supp. 3d 665, 677 (D. Del. 2016) (Andrews, J.) (excluding analysis that relied solely on "ambiguous conclusions of technological comparability between the [other] license agreements and the [patents at issue], without any rationale other than undisclosed conversations with [Plaintiff]," as opposed to independent third-party data collection and analysis tool).

the expert is credible or the opinion is correct is generally a question for the fact finder, not the court." *Id.* at *3 (internal quotation marks and citation omitted).

Here, Mr. Pampinella tied his forward citation analysis to specific comparable licenses; namely, the patents covered by the 2008 and 2014 Agreements between Dr. Jackson and NuVasive. Dr. Jackson does not argue otherwise, nor does he even dispute that the 2008 or 2014 Agreements are potentially comparable licenses. This case stands in stark contrast to those relied on in Dr. Jackson's motion, where the expert "d[id] no analysis to a specific comparable license and does not tie the forward citations to the facts of this case." *ViaTech Techs., Inc. v. Adobe, Inc.*, 2023 WL 5975219, at *10 (D. Del. Sept. 14, 2023) (Andrews, J.) (cited D.I. 207 at 39).[8]

The other cases cited by Dr. Jackson provide no basis for excluding Mr. Pampinella's opinions, either. In each of those cases, the expert's forward-citation analyses contained flaws that are simply not present here. For example, in *Realtek Semiconductor Corp. v. LSI Corp.*, the court excluded the expert's forward-citation analysis because she attributed forward citations for non-relevant patents to the patents-in-suit. 2014 WL 46997, at *3–4 (N.D. Cal. Jan. 6, 2014) ("As [plaintiff] points out . . . a vast majority (93%) of the citations attributed to [the defendant's portfolio] come from another patent, which is not one of the patents-in-suit."). Likewise, in *Oracle America Inc. v. Google Inc.*, the court found the forward-citation analysis unreliable because it "fail[ed] to account for the fact the [patent-in-suit] was re-issued twice, and thus fail[ed] to include citation counts to its predecessor patents." 2012 WL 877125, at *2 (N.D. Cal. Mar. 15, 2012). In

---

[8] For similar reasons, *CloudofChange, LLC v. NCR Corp.*, is also distinguishable. 2021 WL 11549625, at *3 (W.D. Tex. Nov. 1, 2021) (excluding expert who sought to identify substantially similar patents to the patents-in-suit by using factors that were not probative of determining similarity). Here, Dr. Jackson does not dispute that the 2008 and 2014 Agreements are sufficiently similar to the Asserted Patents or question Mr. Pampinella's reliance on them to perform his citation analyses.

16

contrast to the expert's excluded in *Realtek* and *Oracle*, Mr. Pampinella did not misattribute any forward citations, nor were any of the patents that he analyzed re-issued.

None of the other out-of-circuit case law that Dr. Jackson cites even addresses the admissibility of a forward-citation analysis (despite his incorrect suggestion to the contrary). D.I. 207 at 39. For example, in *GPNE Corp. v. Apple, Inc.*, the court excluded an expert's testimony because it was based on nothing more "than his 30 years of experience." 2014 WL 1494247, at *5 (N.D. Cal. Apr. 16, 2014) (opinion excluded as "classic *ipse dixit* reasoning" based on "an impermissible black box without sound economic and factual predicates") (cleaned up); *see also Fail-Safe L.L.C. v. A.O. Smith Corp.*, 744 F. Supp. 2d 870, 888 (E.D. Wis. 2010) (excluding opinion based on a single, undated, party-produced PowerPoint slide, where the expert failed to conduct any "'independent' research" to verify the information presented).

Mr. Pampinella's opinion is not a "black box" or *ipse dixit*. He analyzed thirteen different comparable licenses and the unique circumstances surrounding a hypothetical negotiation over the Asserted Patents, and then utilized an independent, third-party data collection and analysis patent platform to arrive at his opinion. Dr. Jackson's own expert was able to replicate Mr. Pampinella's results, D.I. 207 at 32 n.22, further reinforcing the reliability of Mr. Pampinella's approach. *Hardy v. United States*, 141 Fed. Cl. 1, 61 (2018) ("It is well understood that replication is an indicia of reliability."). In short, all of Dr. Jackson's authority supports admitting, rather than excluding, Mr. Pampinella's patent infringement opinions. Dr. Jackson's motion should be denied.

### C. At Most, Dr. Jackson's Remaining Arguments Go to Credibility and Weight, Rather than Admissibility.

All of Dr. Jackson's other supposed issues with Mr. Pampinella's forward citation analyses are not grounds for exclusion; at most, they go to credibility and weight, which must be evaluated by the factfinder.

Dr. Jackson's primary argument is that Mr. Pampinella's Derwent-based patent citation analysis is unreliable because Derwent misidentified the "real" patent owner as licensees of Dr. Jackson's patents, rather than as Dr. Jackson himself.  D.I. 207 at 31–34, 39.  That's simply not true.  As the table from *Dr. Jackson's* damages expert shows, the Derwent output reflects Dr. Jackson as Assignee/Applicant and Inventor for each of the Asserted Patents.  D.I. 217, Jackson Ex. 47.[9]  In addition, neither Dr. Jackson nor his damages expert explain how or why this "misidentification" has any significance at all.  Indeed, any purported misidentification impacts only the number of forward citations attributed to the purported owner ("Strategic Importance") versus all other persons and entities ("Domain Entities"), not the *total number of forward citations* represented by the "Combined Patent Impact" score, which is the metric that Mr. Pampinella relied upon to conduct his analysis.  D.I. 217, Jackson Ex. 41, Pampinella Rebuttal Report ¶ 59.  For example, if 4 forward citations are attributed to Entity A, 6 forward citations to Entity B, and 10 citations to all other persons or entities, the "Strategic Importance" metric will yield 4 or 6 forward citations and the "Domain Influence" metric will yield 16 or 14 forward citations depending upon whether Entity A or B is deemed the "Optimized Assignee."  In every case, however, the "Combined Patent Impact" score will yield 20 forward citations because the "Combined Patent

---

[9] Dr. Jackson contends that the "Optimized Assignees" that Derwent identified were "hallucinations," meaning they were "nonsensical or altogether inaccurate."  D.I. 207 at 32 n.21.  In reality and contrary to Dr. Jackson's assertion, the "Optimized Assignees" field functioned as intended because the "patent[s] do[] not have reassignment information."  D.I. 217, Jackson Ex. 50 at 3.  In addition, Dr. Jackson cannot dispute that he has extensive license and assignment arrangements with Medtronic.  *See* D.I. 215, 2008 Agreement at Schedule 1.10 (1999 Agreement with Medtronic); NuVasive Ex. JJ, submitted herewith, 2013 Agreement with Medtronic (including extensive assignments and cross-licenses with Medtronic).  Medtronic and Warsaw Orthopedic have been corporate affiliates of one another.  *See, e.g.*, *Sasso v. Warsaw Orthopedic, Inc.*, 45 N.E.3d 835, 837 (Ind. Ct. App. 2015).

Impact" score is comprised of "two mutually exclusive forward citation counts," as Dr. Jackson himself concedes. D.I. 207 at 32.

At most, Dr. Jackson has different views on how the data should be interpreted or used. To the extent Dr. Jackson contends that "[a]ll of [the] Derwent computations and resulting royalty opinions are corrupted by the incorrect 'Optimized Assignees,'" D.I. 207 at 34, notwithstanding his failure to explain why the entity citing the patent-at-issue is its owner or another entity has any relevance to the analysis, he can cross-examine Mr. Pampinella on that point at trial. *Mfg. Res.*, 2019 WL 4198194, at *3 ("[A]t base, the question of whether the expert is credible or the opinion is correct is generally a question for the fact finder, not the court.") (cleaned up).

Next, Dr. Jackson takes issue with the fact that Mr. Pampinella relied equally on several "indicators that analyze different aspects of a patent" when utilizing the IPlytics platform, rather than solely on the "technical relevance" factor. D.I. 207 at 34–37 (admitting that forward citations, which is what "technical relevance" tracks, is a "reliable metric [of] patent value"). But as Mr. Pampinella confirmed at his deposition, IPlytics has "seven different cases of relative value that they track," and although he "could have just gone with technical relevance . . . [he] felt for completeness [that he] would include all seven . . . ." D.I. 217, Jackson Ex. 40, Pampinella Tr. at 57:20–25; *see also id.* at 67:14–18. That was a "conservative" choice because had Mr. Pampinella relied only on "technical relevance"—the one factor that Dr. Jackson concedes is reliable—he would have concluded the Asserted Patents had even *less* value. *Id.* at 58:3–7. The weight to be accorded to Mr. Pampinella's decision not to "cherry-pick" the indicator most favorable to NuVasive (*id.* at 58:8) is a credibility determination to be made by the jury at trial, which Dr. Jackson is free to explore through cross-examination. *PersonalWeb Techs. LLC v. Int'l Bus. Machs. Corp.*, 2017 WL 3476082, at *2 (N.D. Cal. Aug. 14, 2017) (refusing to exclude expert

who used a "'conservative' figure" even though he "could have chosen his final number in a more rigorous way" because party would be able to "cross-examine [him] on this choice and the jury will be able to assess the credibility of his opinion").

Lastly, Dr. Jackson contends that "Pampinella's use of IPLytics is also flawed as the values are 'normalized,'" so his decision to sum those values across patents was purportedly improper. D.I. 207 at 37–38. Dr. Jackson's own damages expert, however, never questioned the propriety of this methodology in his reply report.[10] This leaves Dr. Jackson's complaints about IPLytics as naked attorney argument, which Mr. Pampinella should have an opportunity to address at trial. Indeed, as the Federal Circuit has cautioned, it is not for the judge to "evaluate the correctness of conclusions, [or] impose its own preferred methodology." *Apple Inc.*, 757 F.3d at 1314 (Fed. Cir. 2014).[11]

For these reasons, Dr. Jackson's motion to exclude Mr. Pampinella's patent infringement damages opinions should be denied.

## CONCLUSION

For the reasons set forth above, NuVasive respectfully requests that the Court deny (i) Dr. Jackson's motion for partial summary judgment on infringement and portions of its affirmative defense of invalidity; and (ii) Dr. Jackson's motion to exclude certain opinions of NuVasive's damages expert, James Pampinella, related to patent damages.

---

[10] *See generally* D.I. 217, Jackson Ex. 44, Reply Report of Brian C. Becker, dated Jan. 24, 2024.

[11] Dr. Jackson cites *Acceleration Bay LLC v. Activision Blizzard Inc.*, 2019 WL 4194060, at *4 (D. Del. Sept. 4, 2019), for the proposition that an expert's analysis should be excluded when it is "inherently untestable" and "entirely speculative . . . and divorced from the facts of this case." Jackson Br. 38–39. Dr. Jackson's reliance on *Activision* is inapposite, as he does not contend that Mr. Pampinella's analysis is "untestable," "speculative" or "divorced from the facts of the case," but merely that summing normalized values is a methodological flaw.

Dated: December 17, 2024

                                       McCARTER & ENGLISH, LLP

                                       */s/ Daniel M. Silver*

OF COUNSEL:                          Daniel M. Silver (#4758)

                                         Alexandra M. Joyce (#6423)

Colin G. Cabral                     Renaissance Centre

James R. Anderson                405 N. King Street, 8th Floor

PROSKAUER ROSE LLP         Wilmington, Delaware 19801

One International Place          (302) 984-6300

Boston, MA 02110               dsilver@mccarter.com

(617) 526-9600                    ajoyce@mccarter.com

ccabral@proskauer.com

jaanderson@proskauer.com      *Counsel for Defendant NuVasive, Inc.*

Jessica M. Griffith

PROSKAUER ROSE LLP

2029 Century Park East

Los Angeles, CA 90067

(310) 557-2900

jgriffith@proskauer.com

21

## <u>CERTIFICATE OF SERVICE</u>

The undersigned counsel hereby certifies that true and correct copies of the foregoing document were caused to be served on December 17, 2024 on the following counsel in the manner indicated:

<u>VIA EMAIL:</u>

Stephen J. Kraftschik
POLSINELLI PC
222 Delaware Avenue, Suite 1101
Wilmington, DE 19801
skraftschik@polsinelli.com

Darren E. Donnelly
POLSINELLI LLP
Three Embarcadero Center, St. 2400
San Francisco, CA 94111
ddonnelly@polsinelli.com

Thomas L. Gemmell
POLSINELLI PC
150 N. Riverside Plaza, Ste. 3000
Chicago, IL 60606
tgemmell@polsinelli.com

Aaron Levine
Bobbie J. Horocofsky
POLSINELLI PC
1000 Louisiana Street, Ste. 6400
Houston, TX 77002
alevine@polsinelli.com
bhorocofsky@polsinelli.com

Kevin R. Davis
POLSINELLI PC
2049 Century Park East, Suite 2900
Los Angeles, CA 90067
krdavis@polsinelli.com

*Counsel for Plaintiff*

/s/ *Daniel M. Silver*
Daniel M. Silver (#4758)

ME1 51493996v.1