IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ROGER P. JACKSON, M.D.,

              Plaintiff,

    v.

NUVASIVE, INC.,

              Defendant.

Civil Action No. 21-53-RGA

## MEMORANDUM ORDER

This order resolves a significant dispute about what should be at issue in the upcoming trial.

Plaintiff accused a plethora of Defendant's products of infringement. (D.I. 191 at 14-22; *see* D.I. 169 at 2-3). Defendant responded in part by filing a counterclaim saying all the accused products had been licensed. (D.I. 201 at 18, 40-41). The parties agreed to a stipulation that eight of the accused products would be representative of the rest of the accused products. (D.I. 169). Thereafter, at summary judgment, I ruled that Defendant's products that had a "BOT extension" were licensed. (D.I. 261 at 15). I was unsure about which products met this requirement. (*Id.*). Thus, I asked the parties to tell me whether my ruling "results in any of the accused products being licensed." (D.I. 262). The parties responded with a joint status report. (D.I. 263). In it, they agreed that four products—Precept 882XXXX, Reline 1602XXXX, Reline 1312XXXX, and Armada 827XXXX—"include a BOT extension feature and would be licensed under the Court's [decision]. The Parties disagree on certain other issues." (*Id.* at 1). One of the four "licensed" products—Precept 882XXXX—was a representative product. (*Id.* at 4 of 11). The other three were not. (*Id.*).

At argument on summary judgment motions, I indicated that I would split the litigation into a patent trial and an "all other claims" trial. (D.I. 271 at 1). The parties entered into a stipulation to split the litigation, with the "all other claims" trial to go first. (D.I. 271). We had the "all other claims" trial last August. In connection with that trial, the parties stipulated, Defendant "shall be awarded $337,500 for [Plaintiff's] breach of the 2014 License Agreement associated with the assertion of patents on BOT Implant products." (D.I. 355). As we have gotten closer to the patent trial, the present dispute has moved to the forefront. (D.I. 408 at 1-2; D.I. 414 at 3-4; D.I. 415 at 1). I had a status conference and asked for further briefing.

The parties dispute the impact of the stipulation and the BOT extension ruling on the patent claims. (D.I. 422, 426, 427). Essentially, the dispute boils down to this: Plaintiff says that he can get patent damages for three products that have BOT extensions because they are represented per the stipulation by products that do not have BOT extensions. Plaintiff acknowledges that he cannot proceed with infringement (and therefore with damages) for the Precept 882XXXX; Plaintiff agrees that it also cannot proceed against the Precept 880YYYY, which the Precept 882XXXX represents, even though it is agreed that the Precept 880YYYY does not have a BOT extension. Defendant's position is that, notwithstanding the stipulation, Plaintiff cannot get patent damages for a licensed product that I have determined to be a licensed product. Defendant's position on the one representative product with a BOT extension—the Precept 882XXXX—is that it is licensed; Defendant is relatively indifferent about what happens to the Precept 880YYYY.[1]

---

[1] The backdrop for the legal arguments is that the three licensed represented products include Defendant's big sellers and therefore represent a significant portion of possible damages. The Precept 880YYYY is not a big seller, and Defendant is not giving up much if the Precept 880YYYY remains in the case.

Having reviewed the stipulation, the other relevant documents, and the arguments of the parties, I conclude that Plaintiff has the better of the understanding of the stipulation. It was meant to simplify the patent litigation by making the representative products the only products that mattered for purposes of infringement and invalidity. Thus, even though I have concluded that some of the non-representative products are in fact licensed, the stipulation means that for patent damages purposes, they are unlicensed.

> [I]f Plaintiff proves that a Representative Product infringes a particular claim, then the other members of that Accused Product family . . . are deemed to also infringe that particular claim, and are deemed to have the same structure, function, use, manufacture, or features as the Representative Product. . . . Conversely, if Plaintiff does not prove infringement of that representative exemplar, then the other members of that Accused Product family are deemed not to infringe that particular claim.

(D.I. 169 at 2). The language is unambiguous that for purposes of infringement, only the representative products matter.

A licensed product does not infringe. 35 U.S.C. § 271 (infringement limited to those who act "without authority"). There is no reason why the determination that a representative product is not licensed and therefore could infringe if it practices the patent shouldn't carry over to the products it represents.

The stipulation of representativeness is an agreement that "seek[s] to avoid the significant expenditure of time and resources [associated with patent litigation]." (D.I. 169 at 1). It also carries the risks of any agreement, one of which is that a party will commit itself to something that it will later wish it had not.

There remains the issue of whether I should enforce the stipulation. The parties seem to agree (D.I. 426 at 4; D.I. 427 at 1) that a Third Circuit case states the relevant law.

> [The] decision to bind a party to its stipulation [involves the exercise of discretion]. In general, courts encourage parties to enter into stipulations to promote judicial economy by narrowing the issues in dispute during litigation. Allowing parties easily to set aside or

> modify stipulations would defeat this purpose, wasting judicial resources and undermining future confidence in such agreements. Thus, it is a well-recognized rule of law that valid stipulations entered into freely and fairly, and approved by the court, should not be lightly set aside. However, in spite of the severe limitations placed on withdrawing stipulations, they are not absolute, and courts can grant parties relief from them.

*Waldorf v. Shuta*, 142 F.3d 601, 616 (3d Cir. 1998) (citations omitted and cleaned up).

Defendant does not offer any strong arguments in favor of withdrawing the stipulation. Defendant raises five arguments in its last letter. (D.I. 426).

The first argument is that the stipulation does not matter because I made a ruling on a breach of contract claim that is contrary to the stipulated patent facts. That argument carries little weight because the stipulation did not purport to apply to the breach of contract claim.

The second argument is that Plaintiff is collaterally estopped by the breach of contract ruling. I do not think this is accurate. Collateral estoppel requires a "prior adjudication." There is no "prior adjudication." The patent claims and the breach of contract claim are parts of the same case. The stipulation was entered into before the "prior adjudication." The "prior adjudication" does not undo the stipulation. Rather, the patent claims are controlled by the stipulation. The breach of contract claim was not.

The third argument is that continuing the patent lawsuit against the BOT extension products is a further breach of the 2014 contract. I do not think this is the case. To the extent the 2014 contract and the stipulation conflict, the stipulation controls.

The fourth argument is essentially a combination of the first three arguments, relabeled as "manifest injustice." I do not think that there is a "manifest injustice." Both sides in this case are represented by sophisticated, experienced counsel. There is no manifest injustice in holding them to their bargain. By Defendant's logic, any time subsequent events made the bargain look

like a bad bargain for one side, that side could get released from the bargain. That cannot be right.

The fifth argument is that there would be no unfairness to Plaintiff if Defendant withdrew from the stipulation.[2] There are two responses to that. One, the parties made a deal, which involved risks, and now Defendant wants to be released from parts of the deal that have turned out badly for it. Two, the trial is scheduled for the month after next, and the parties have litigated the case since December 2023 based on a certain set of assumptions. Defendant says Plaintiff could easily add the Precept 880YYYY back into the case. Maybe, maybe not. But even if that is true, I do not think that is a good reason to modify the stipulation.

IT IS SO ORDERED this 21st day of February 2025.[3]

United States District Judge

---

[2] For reasons I don't understand, Defendant insists that it is not seeking to withdraw from the stipulation. (D.I. 426 at 4-5). Defendant does not say what it thinks it should be called when a party seeks a release from portions of a stipulation that it says it should no longer be bound by.

[3] I think I am making the right decision here. Nonetheless, I encourage the parties to think about a verdict form (or some other means) that makes a jury award of damages transparent as to what is awarded for the "licensed" products so that if it turns out I am making the wrong decision, there will not need to be a retrial on damages.